# EXHIBIT B.1

Skip to Main Content  Logout  My Account  Search Menu  New Civil Search  Refine Search  Back
Location : All Courts

# REGISTER OF ACTIONS
### CASE NO. 1527367

| | |
|---|---|
| W.T. Bell International, Inc. vs. Hunting Titan, Ltd. and Hunting Titan, Inc. §<br>§<br>§<br>§<br>§<br>§ | Case Type: **CV - Civil Case - Other**<br>Date Filed: **04/07/2015**<br>Location: **278th District Court** |

---

## PARTY INFORMATION

| | | Attorneys |
|---|---|---|
| **Defendant** | **BRADLEY, RICHARD W.** | **Ryan Homeyer**<br>*Retained*<br>713-226-1200(W) |
| | | Scarlett Collings<br>*Retained*<br>713-226-1200(W) |
| **Defendant** | **Hunting Titan, Inc.** | **Ryan Homeyer**<br>*Retained*<br>713-226-1200(W) |
| | | JASON SAUNDERS<br>*Retained*<br>713-335-3020(W) |
| | | MANCE MICHAEL PARK<br>*Retained*<br>936-291-6660(W) |
| | | Scarlett Collings<br>*Retained*<br>713-226-1200(W) |
| **Defendant** | **Hunting Titan, Ltd.** | **Ryan Homeyer**<br>*Retained*<br>713-226-1200(W) |
| | | JASON SAUNDERS<br>*Retained*<br>713-335-3020(W) |
| | | MANCE MICHAEL PARK<br>*Retained*<br>936-291-6660(W) |
| | | Scarlett Collings<br>*Retained*<br>713-226-1200(W) |
| **Plaintiff** | **W.T. Bell International, Inc.** | **TERRY JOSEPH**<br>*Retained*<br>713-355-4200(W) |
| | | HOLLY H. BARNES<br>*Retained*<br>713-355-4200(W) |

---

## EVENTS & ORDERS OF THE COURT

**OTHER EVENTS AND HEARINGS**

| | |
|---|---|
| 04/07/2015 | **Original Petition (OCA)** |
| 04/07/2015 | **Civil Case Information Sheet** |

| | |
|---|---|
| 04/07/2015 | **Request** |
| 04/07/2015 | **Citation Issued** |
| 05/11/2015 | **Motion to Transfer** |
| 05/12/2015 | **Answer** |
| 05/14/2015 | **Notice** |
| 05/29/2015 | **Motion to Quash** |
| 05/29/2015 | **Motion to Quash** |
| 06/08/2015 | **Notice** |
| 06/26/2015 | **Response** |
| 07/20/2015 | **Reply        Doc ID# 1** |
| 07/23/2015 | **Rule 11 Agreement** |
| 07/24/2015 | **Reply        Doc ID# 2** |
| 07/27/2015 | **Motion to Transfer  (9:00 AM) ()** |
| 07/28/2015 | **Order** |
| 08/21/2015 | **Counterclaim** |
| 09/04/2015 | **Notice** |
| 09/11/2015 | **Answer** |
| 09/11/2015 | **Answer** |
| 10/01/2015 | **Protective Order** |
| 10/20/2015 | **Amended Answer** |
| 10/20/2015 | **Request** |
| 10/21/2015 | **Citation Issued** |
| 10/23/2015 | **Amended Petition** |
| 10/23/2015 | **Notice of Hearing** |
| 10/26/2015 | **Citation Returned Served** |
| 11/02/2015 | **Notice of Hearing** |
| 11/02/2015 | **Motion to Compel        Doc ID# 3** |
| 11/02/2015 | **Proposed Order** |
| 11/02/2015 | **Notice of Hearing** |
| 11/12/2015 | **Motion to Quash** |
| 11/13/2015 | **Original Answer** |
| 11/23/2015 | **Motion to Compel  (9:00 AM) ()** |
| 11/25/2015 | **Motion for Summary Judgment** |
| 12/11/2015 | **Original Answer** |
| 12/14/2015 | **Appearance of Counsel        Doc ID# 4** |
| 12/14/2015 | **Motion for Continuance** |
| 12/14/2015 | **Proposed Order** |
| 12/14/2015 | **Notice of Hearing** |
| 12/16/2015 | **Response** |
| 12/17/2015 | **Motion Hearing  (1:30 PM) ()** |
| 12/17/2015 | **Affidavit** |
| 12/17/2015 | **Order** |
| 12/28/2015 | **Motion to Compel  (9:00 AM) ()** |
| 12/28/2015 | **Motion to Quash** |
| 01/19/2016 | **Notice** |
| 01/25/2016 | **Motion Hearing  (9:00 AM) ()** |
| 02/11/2016 | **Motion to Compel        Doc ID# 5** |
| 02/12/2016 | **Subpoena** |
| 02/15/2016 | **Special Exceptions** |
| 02/15/2016 | **Amended Answer** |
| 02/15/2016 | **Motion to Quash** |
| 02/16/2016 | **Amended Answer** |
| 02/16/2016 | **Special Exceptions** |
| 02/19/2016 | **Special Exceptions** |
| 02/19/2016 | **Motion to Quash** |
| 02/22/2016 | **Hearing  (9:00 AM) ()** |
| 02/22/2016 | **Order** |
| 03/11/2016 | **Reporters Certification to Deposition** |
| 03/28/2016 | **Hearing  (9:00 AM) ()** |
| 04/01/2016 | **Amended Petition** |
| 04/20/2016 | **Motion for Continuance** |
| 04/20/2016 | **Order** |
| 04/21/2016 | **Motion** |
| 04/21/2016 | **Proposed Order** |
| 04/25/2016 | **Defendant's Original Answer** |
| 04/25/2016 | **Certificate of Deposition** |
| 04/26/2016 | **Hearing  (1:30 PM) ()** |

---

**FINANCIAL INFORMATION**

|  |  |  |  |
|---|---|---|---|
| **Counter-Plaintiff** Hunting Titan, Inc. | | | |
| Total Financial Assessment | | | 136.00 |
| Total Payments and Credits | | | 136.00 |
| **Balance Due as of 04/29/2016** | | | **0.00** |

| | | | | |
|---|---|---|---|---|
| 05/12/2015 | Transaction Assessment | | | 60.00 |
| 05/12/2015 | E-Filing Payment | Receipt # DC-12779 | Hunting Titan, Inc. | (60.00) |
| 08/21/2015 | Transaction Assessment | | | 60.00 |
| 08/21/2015 | E-Filing Payment | Receipt # DC-13875 | Hunting Titan, Inc. | (60.00) |
| 10/20/2015 | Transaction Assessment | | | 16.00 |
| 10/20/2015 | E-Filing Payment | Receipt # DC-14454 | Hunting Titan, Inc. | (16.00) |

**Counter-Respondent** W.T. Bell International, Inc.

| | | | |
|---|---|---|---|
| Total Financial Assessment | | | 268.00 |
| Total Payments and Credits | | | 268.00 |
| **Balance Due as of 04/29/2016** | | | **0.00** |

| | | | |
|---|---|---|---|
| 04/07/2015 | Transaction Assessment | | 252.00 |
| 04/07/2015 | E-Filing Payment | Receipt # DC-12380 | W.T. Bell International, Inc. | (252.00) |
| 04/07/2015 | Transaction Assessment | | 16.00 |
| 04/07/2015 | E-Filing Payment | Receipt # DC-12384 | W.T. Bell International, Inc. | (16.00) |

# EXHIBIT B.2

| CLERK OF THE COURT | PLAINTIFF OR ATTORNEY FOR PLAINTIFF |
|---|---|
| **ROBYN FLOWERS, District Clerk**<br>1100 University Ave, Suite 209<br>Huntsville, Texas 77340<br>(936) 436-4972 | **TERRY JOSEPH**<br>**2000 BERING DR SUITE 700**<br>**HOUSTON TX 77057**<br>**713-355-4200** |

## CAUSE NO. 1527367

### THE STATE OF TEXAS
### CITATION FOR PERSONAL SERVICE

**NOTICE TO DEFENDANT:** "You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by Ten O'clock (10:00) A.M. on the Monday next following the expiration of twenty (20) days after you were served this citation and petition, a default judgment may be taken against you."

**TO:** **HUNTING TITAN, INC.- - - DEFENDANT**
**450 GEARS ROAD, SUITE 200, HOUSTON, TEXAS 77067 C/O REGISTERED AGENT CSC LAWYERS 211 E. 7TH STREET, SUITE 620 AUSTIN, TX 78701**

**GREETINGS:** You are hereby commanded to appear before the 278th District Court of Walker County, Texas, to be held at the Courthouse of said County in Huntsville, Walker County, Texas, by filing a written answer to Original Petition (OCA) at or before Ten o'clock (10:00) A.M. on the Monday next after the expiration of twenty (20) days after the date of service hereof, a copy of **PLAINTIFF'S ORIGINAL PETITION.** Which accompanies this citation in Cause Number 1527367, filed on the docket of said Court on this date: **April 07, 2015** , and styled,

**W.T. BELL INTERNATIONAL, INC. VS. HUNTING TITAN, LTD. AND HUNTING TITAN, INC.**

The officer executing this writ shall serve the same according to the requirements of law, and the mandates thereof, and make due return as the law directs.

Issued and given under my hand and seal of said Court at Huntsville, Texas, this date: **April 07, 2015**

**ROBYN FLOWERS, DISTRICT CLERK**

WALKER COUNTY, TEXAS

By: _____ Deputy

### SERVICE OF CITATION RETURN

Came to hand on the _17th_ day of _April_ , 2015 , at _7:00_ o'clock _A_.M.
and, executed at _____ , _____ , County, Texas, on the _____ day of
_____ , 201___ at _____ o'clock ___M., by delivering to the within-named defendant, in person,
a true copy of this Citation.

_____ County, Texas

_____ Constable/Deputy

### Verification of Return (If not served by Peace Officer)

My name is _____ , my date of birth is _____ , and my address is _____
_____ , I declare under penalty of perjury that the foregoing is true and correct.
Executed in _____ County, State of _____ , on the _____ day of _____ , 20 _____

_____ ,Declarant

Certified Process Server ID # _____ , Expiration date _____

On this day personally appeared _____ known to me to be the person whose name is subscribed on the foregoing instrument and who has stated: upon penalty of perjury, I attest that the foregoing instrument has been executed by me in this cause pursuant to the TRCP. I am over the age of 18 years and I am not a party to or interested in the outcome of this suit, and have been authorized by the Walker County Courts to serve process.

Subscribed and sworn to me on this the _____ day of _____ , 20 ___ .

_____ Notary Public

DELIVERED:
ON: _4/17/15_
BY: _____ SCH _____
@: _7:15_ am pm

1527367
Cause No. _____

| | | |
|---|---|---|
| W.T. Bell International, Inc., | § | **IN THE DISTRICT COURT OF** |
| | § | |
| Plaintiff, | § | |
| | § | **WALKER COUNTY, TEXAS** |
| v. | § | |
| | § | Walker County - 278th District Court |
| Hunting Titan, Ltd. and Hunting Titan, Inc., | § | _____ **JUDICIAL DISTRICT** |
| | § | |
| Defendants. | § | |
| | § | |
| | § | |

## PLAINTIFF'S ORIGINAL PETITION

TO THE HONORABLE COURT:

Plaintiff W.T. Bell International, Inc. ("Plaintiff" or "WTBI") complains of Defendants, Hunting Titan, Ltd. and Hunting Titan, Inc. (collectively "Titan") through this Original Petition, and for its causes of action would respectfully show the following:

### I. DISCOVERY CONTROL PLAN

1.       Plaintiff intends that discovery be conducted under Level 2 of Civil Procedure Rule 190.2 and affirmatively pleads that this suit is not governed by the expedited-actions process in Rule 169 of the Tex. R. Civ. Proc. because Plaintiffs seek damages in excess of $100,000.

### II. PARTIES

2.       Plaintiff, W.T. Bell International, Inc., is a Texas corporation whose principal place of business is located at 2534B FM 1375 E., Huntsville, Texas 77340.

3.     Defendant, Hunting Titan, Ltd., has a place of business at 2 Northpoint Drive, Suite 400, Houston, Texas 77060-3236.

4.     Defendant, Hunting Titan, Inc., does business as "Hunting Titan," and has a place of business at 450 Gears Road, Suite 200, Houston, Texas 77067.

5.     Defendants can be served through their registered agent, CT Corporation System, 1999 Bryan St., Suite 900, Dallas, TX 75201.

### III. JURISDICTION

6.     This Court has personal and subject matter jurisdiction over the case because Defendants have conducted business in this State and because the amount in controversy is in excess of the minimum jurisdictional limits of the Court and in excess of $1,000,000.

### IV. VENUE

7.     Venue is proper in Walker County, Texas under the general venue rule is CIV. PRAC. & REM. CODE § 15.002(a)(1) because all or a substantial part of the events giving rise to the claim occurred in Walker County.

### V. FACTS

#### A.  Background

8.     WTBI's business is designing, manufacturing, selling, and testing of jet cutters, severing tools, and firing heads used in oil field applications. WTBI tests and markets its jet cutters, severing tools, and firing heads for use by a wide variety of oil field service companies and operators.

9.     Oil and gas wells owned by operators (e.g., Chevron, Exxon Mobil, etc.), employ service companies (e.g., Schlumberger, Weatherford, etc.) who use explosive jet cutters to cut

PLAINTIFF'S ORIGINAL PETITION

tubulars. The jet cutters are generally lowered via wireline inside the tubular and detonated at the appropriate depth. The cuts are precise and saw-like in nature. Jet cutters are used either when there is a problem in the well, or after the well stops producing and has to be plugged and abandoned. Jet cutters are typically sold in a range of sizes depending upon the application.

10.     When larger diameter jet cutters cannot be used, due to well restrictions, service companies use explosive severing tools to sever down-hole tubulars. Like jet cutters, the severing tools are generally lowered via a wireline inside the tubular and detonated at the appropriate depth. Severing tools have much larger explosive loads and tend to sever or blow the pipe in two rather than make a clean cut like a jet cutter. Severing tools are used either when there are problems in the well or after the well stops producing and has to be plugged and abandoned.

11.     Until recently, Titan had been one of WTBI's primary customers and distributors of its jet cutters and severing tools. Titan has been a WTBI customer and distributor since at least 2003.

### B. WTBI Owned Technology

12.     WTBI has developed unique designs for jet cutters (for both tubing and casing) and severing tools, which are described and claimed in U.S. Patent Application Nos. 13/506,691, 14/120,528 and 14/605,829 and U.S. Patent No. 8,939,210 (the "WTBI Applications and Patent").

13.     In mid-2003, WTBI began manufacturing jet cutters and severing tools for and at the request of Titan because Titan did not have the capability to manufacture jet cutters and severing tools itself.

PLAINTIFF'S ORIGINAL PETITION

14.     WTBI applied for its U.S. Bureau of Alcohol, Tobacco, Firearms and Explosives High Explosives Manufacturing License, which it secured in June 2003. Titan then began placing orders for the Jet Cutters and Severing Tools with WTBI in the second half of 2003. Titan and WTBI had no written license agreement.

15.     WTBI was constantly developing new products and improvements to the jet existing cutters and severing tools. These WTBI Developments are wholly owned, operated, developed, conceived of, and reduced to practice by WTBI.

16.     Until November 2014, Titan continued to order WTBI's products. At all times, Titan knew and was actually or constructively aware that WTBI had no contractual obligations to Titan with respect to new product developments or new technologies that WTBI developed and provided to Titan, including, specifically and without limitation, know-how leading to new products, designs, and/or manufacturing techniques.

17.     The confidential and proprietary information and know-how related to WTBI's jet cutters and severing tools were developed by and are owned by WTBI. The newly conceived and created add-on to the jet cutter and severing tool was also developed by and is owned by WTBI.

18.     Each order that Titan made to WTBI for WTBI's jet cutters or severing tools was made with knowledge that Titan was ordering a WTBI product for distribution.

19.     Because WTBI and Titan were in a confidential relationship, WTBI provided Titan access to certain trade secrets and confidential/proprietary information regarding WTBI's products, developments, expected developments and business information. The WTBI trade secrets and confidential/proprietary information includes testing results, product design specifications, drawings, business plans and other similar information.  But for this confidential relationship, Titan could not have obtained WTBI's confidential and proprietary information.

20.     Titan never compensated WTBI for any new product development or marketing beyond buying products from WTBI. However, Titan wrote WTBI in 2012 and requested a meeting to discuss a possible purchase of the product improvements WTBI has made since 2002. Titan never made an actual offer to purchase WTBI or its intellectual property.

### C. Titan's Tortious Interference and Unfair Competition

21.     Beginning in or around 2009, WTBI was approached by major oil services companies, Schlumberger and Weatherford, regarding a purchase of WTBI.

22.     WTBI began negotiations with Schlumberger in 2009 for the sale of WTBI's business, including the WTBI developments. During that time, and over the course of several meetings, Schlumberger requested and received a substantial amount of information from WTBI under a confidentiality agreement. Schlumberger then discussed the potential acquisition with Titan, which at the time was one of WTBI's largest customers.

23.     Titan's representatives, with actual knowledge of WTBI's business relationship and potential contract with Schlumberger, misrepresented to Schlumberger that the purchase of WTBI required Titan's approval, and would make Schlumberger unable to lawfully make and sell WTBI's jet cutters and severing tools.

24.     As a direct result of Titan's unlawful and tortious communications, Schlumberger withdrew from the negotiations with WTBI. As a direct result of Titan's interference, WTBI suffered actual damage.

25.     In 2014, Weatherford also approached WTBI about buying its business. Weatherford's interest was clear from the beginning, as it and WTBI entered a non-binding letter of intent and 90-day option period for Weatherford to conduct due diligence. The letter of intent valued the business, including the WTBI Applications and the WTBI Developments, at $23

Million. A copy of the Letter of Intent is attached hereto as Exhibit A. Weatherford conducted its due diligence, including several meetings with Titan. After the meetings with Titan, and because of misrepresentations made by Titan at those meetings, Weatherford decided not to proceed with its efforts to purchase WTBI. Titan misrepresented to Weatherford that a sale to Weatherford would affect intellectual property (IP) rights owned by Titan.

26.     Titan intentionally asserted rights it does not have with regard to WTBI, with the intention of blocking the sales of products and the company. As a direct result of Titan's unlawful and tortious communications, Weatherford withdrew from the negotiations with WTBI. As a direct result of Titan's interference, WTBI suffered actual damage.

## VI. CAUSES OF ACTION

### A.     *Declaratory Judgment that Titan has no Rights in WTBI's Intellectual Property*

27.     Plaintiff repeats and re-alleges all preceding paragraphs as if set forth fully herein.

28.     Titan misrepresented to Weatherford that it had rights in WTBI's intellectual property, specifically with respect to the jet cutters. Weatherford declined to purchase WTBI due to a "difference of opinion regarding some IP shared between Hunting Titan and WTBI."

29.     WTBI and Titan did not share IP at the time Weatherford declined to purchase WTBI. Titan intentionally misrepresented that it had rights in WTBI's IP to Weatherford to interfere with the sale of WTBI to Weatherford.

30.     Without a declaratory judgment confirming that Titan does not have any rights in WTBI's IP, Titan will continue to interfere with prospective and actual business relations by falsely asserting that it has rights in WTBI's IP.

### B.     *Tortious Interference with Prospective Business Relations*

31.     Plaintiff repeats and re-alleges all preceding paragraphs as if set forth fully herein.

PLAINTIFF'S ORIGINAL PETITION

32.     There was a reasonable probability that WTBI would have entered into a business relationship with Weatherford, as evidenced by the letter of intent and good faith negotiations between the parties, prior to Titan's involvement.

33.     Titan intentionally interfered with the relationship by making false, misleading, and material misrepresentations of fact to Weatherford with the intent that Weatherford rely on the statements and not move forward with the purchase of WTBI.

34.     Titan's conduct was independently tortious or unlawful based upon the above intent to misrepresent material facts to Weatherford for the purpose of inducing Weatherford to rely on the statements and not move forward with the transaction.

35.     The interference proximately caused WTBI's injury, as Weatherford did in fact rely on the statements and did not move forward with the transaction following the misrepresentations.

36.     As a result of the interference, WTBI suffered actual damage or losses of not less than $23 Million.

37.     Titan also intentionally interfered with WTBI's prospective sale to Schlumberger, despite having actual knowledge that its statements were false and misleading and made to Schlumberger with the intent to keep Schlumberger from moving forward with the proposed transaction with WTBI.

38.     Titan's interference between WTBI and Schlumberger proximately caused WTBI's injury, as Schlumberger did in fact rely on the statements and did not move forward with the purchase of WTBI.

39.     As a result of the interference, WTBI suffered actual damage or losses of not less than $23 Million.

40. WTBI is entitled to recover the damages cause by Titan due to the intentional interference with WTBI's prospective business relationships with both Schlumberger and Weatherford.

C. **Unfair Competition**

41. Plaintiff repeats and re-alleges all preceding paragraphs as if set forth fully herein.

42. Titan's actions are contrary to honest dealing and also contrary to honest practice in industrial and commercial matters, such that Titan's actions give rise to a civil cause of action.

43. With knowledge of WTBI's ownership and development of products and knowledge of WTBI's lack of any obligation to Titan with respect to those products, Titan acted to thwart WTBI's right to fairly compete with Titan in the jet cutter and severing tools market through efforts to mislead third parties about WTBI's rights in the technologies and products it was selling. Titan made these statements with actual or constructive knowledge that they were false, misleading and designed to prevent WTBI from entering into the market to compete against Titan.

44. Titan also made statements to Weatherford and Schlumberger with actual or constructive knowledge that they were false, misleading and designed to prevent Weatherford or Schlumberger from purchasing WTBI, thereby preventing it from entering into the market to compete with Titan.

45. Titan made these statements with the specific intent that WTBI would rely on them and act to not sell its assets or company to Weatherford and not expand its customers beyond Schlumberger and Titan.

46. In addition, because of the confidential relationship between Titan and WTBI, Titan also received confidential and proprietary information from WTBI. Titan knew or should

PLAINTIFF'S ORIGINAL PETITION

have known the information provided by WTBI was a trade secret and the disclosure was made in confidence.

47.    Titan breached the confidential relationship with WTBI, used the trade secret and confidential information provided by WTBI to develop and manufacture its own cutters, and has sold those cutters developed with WTBI's trade secret and confidential information to unfairly compete with WTBI in the market.

48.    Defendants' unfairly competitive actions have proximately caused WTBI damages of not less than $23 Million.

### D.    *Negligent Misrepresentation*

49.    Plaintiff repeats and re-alleges all preceding paragraphs as if set forth fully herein.

50.    During its business relationship with WTBI, Titan made statements to WTBI that misrepresented facts in a manner that were intended to ultimately benefit Titan's commercial position. The misrepresentations were made by Titan in response to Schlumberger's interest in purchasing WTBI's assets or company. Titan further demanded WTBI cease negotiations to sell WTBI to Schlumberger based on its misrepresentations.

51.    WTBI relied to its detriment upon the misrepresentations made by Titan. As a result of its reliance, WTBI lost its potential sale to Schlumberger.

### E.    *Breach of Confidential Relationship*

52.    Plaintiff repeats and re-alleges all preceding paragraphs as if set forth fully herein.

53.    Because WTBI and Titan had a confidential relationship, WTBI provided Titan with necessary trade secret and confidential/proprietary information about the plans, history, quality control values, or developments being undertaken by WTBI. WTBI also provided trade secret and confidential/proprietary information to Titan as a result of negotiations for Titan to

PLAINTIFF'S ORIGINAL PETITION

purchase WTBI. WTBI provided the information with the understanding that the information was to be kept confidential.

54.     But for the confidential relationship, Titan could not have obtained WTBI's trade secret and confidential/proprietary information.

55.     Titan breached the confidential relationship by stealing WTBI's trade secret and confidential/proprietary information, which it now uses to manufacture, market, and sell products called SPECTRA2 Cutters. On information and belief, the development of Titan's SPECTRA2 cutters was based on confidential and proprietary information disclosed by WTBI to Titan as a result of the confidential relationship.

56.     Titan has acted in bad faith and used the confidential and proprietary information obtained from WTBI in breach of the confidential relationship.

57.     As a result of Titan's theft, misuse, and disclosure of WTBI's trade secret and confidential/proprietary information, WTBI has been damaged in an amount equal to WTBI's lost sales and/or Titan's profits from its sales based upon the information obtained through the confidential relationship.

## VII.   ATTORNEYS' FEES

58.     WTBI is entitled to an award of attorney's fees pursuant to TEX. CIV. PRAC. & REM. CODE § 37.001 *et seq.* and/or 38.001 *et seq.*

## VIII.   EXEMPLARY DAMAGES

59.     The tortious interference of WTBI's prospective business relations, unfair competition, and breach of confidentiality referenced herein was outrageous, malicious, and morally culpable conduct. Titan is therefore liable for exemplary damages as a result of its conduct.

PLAINTIFF'S ORIGINAL PETITION

## IX. DEMAND FOR JURY

60.     Plaintiff demands a trial by jury.

## X.   REQUEST FOR DISCLOSURE

61.     Under Rule 194 of the Texas Rules of Civil Procedure, Plaintiff request that Defendants disclose, within fifty (50) days of the service of this request, the information or material described in Rule 194.2(a)-(f), specifically:

a.      The correct names of the parties to the lawsuit;

b.      The name, address, and telephone number of any potential parties;

c.      The legal theories and, in general, the factual bases of the responding party's claims or defenses;

d.      The amount and any method of calculating economic damages;

e.      The name, address, and telephone number of persons having knowledge of relevant facts, and a brief statement of each identified person's connection with the case;

f.      For any testifying expert:

   i.   The expert's name, address, and telephone number;

   ii.  The subject matter on which the expert will testify;

   iii. The general substance of the expert's mental impressions and opinions and a brief summary of the basis for them, or if the expert is not retained by, employed by, or otherwise subject to the control of the responding party, documents reflecting such information;

   iv.  If the expert is retained by, employed by, or otherwise subject to the control of the responding party:

PLAINTIFF'S ORIGINAL PETITION

       1. All documents, tangible things, reports, models, or data compilations that have been provided to, reviewed by, or prepared by, or for the expert in anticipation of the expert's testimony; and

       2. The expert's current resume and bibliography.

62. In addition to the above requests, pursuant to Rule 190 and 192.1, Plaintiff requests that Defendants produce, within fifty (50) days of service of the discovery requests, answers and materials in response to Plaintiff's First Set of Interrogatories, First Set of Request for Production, and First Set of Requests for Admission, which are being served on Defendants contemporaneously with Plaintiff's Original Petition.

## XI. PRAYER

**WHEREFORE**, Plaintiff prays that Defendants be cited to appear and answer and that

W.T. Bell International, Inc., has judgment against Defendants for the following:

    a) declaratory judgment that Titan does not have any rights in WTBI's intellectual property;

    b) a finding that Titan has tortiously interfered with WTBI's prospective business relationship with Schlumberger, causing damage to WTBI;

    c) a finding that Titan has tortiously interfered with WTBI's prospective business relationship with Weatherford, causing damage to WTBI;

    d) a finding that Titan has made negligent misrepresentations, causing damage to WTBI;

    e) a finding that Titan has breached its confidential relationship with WTBI, causing damage to WTBI;

    f) a finding that Titan is liable for unfair competition by making knowingly false representations to prospective purchasers of WTBI, and breaching the confidential relationship with WTBI;

    g) all actual, consequential, enhanced, and punitive damages resulting from Titan's tortious conduct;

**PLAINTIFF'S ORIGINAL PETITION**

h)  all pre-judgment and post-judgment interest as allowed by law; and

i)  all other relief, at law and in equity, to which they may be entitled.

Respectfully submitted,

/s/Guy E. Matthews
Guy E. Matthews
Texas Bar No. 13207000
gmatthews@matthewsfirm.com
Terry Joseph
Texas Bar No. 11029500
tjoseph@matthewsfirm.com
Terry McCutcheon
Texas Bar No. 24039045
tmccutcheon@matthewsfirm.com
John D. Holman
Texas Bar No. 24082232
jholman@matthewsfirm.com
David M. Lodholz
Texas Bar No. 24070158
dlodholz@matthewsfirm.com
MATTHEWS, LAWSON, McCUTCHEON & JOSEPH
PLLC
2000 Bering Dr., Suite 700
Houston, Texas 77057
Telephone: (713) 355-4200
Facsimile: (713) 355-9689

Bennie D. Rush
Texas Bar No. 17400425
bennie@bdrushlaw.com
LAW OFFICES OF BENNIE D. RUSH, P.C.
1300 11ᵗʰ Street, Suite 300
Huntsville, TX 77340

ATTORNEYS FOR PLAINTIFF W.T. BELL
INTERNATIONAL, INC.

PLAINTIFF'S ORIGINAL PETITION

# EXHIBIT B.3

Cause No. 1527367

| | | |
|---|---|---|
| W.T. BELL INTERNATIONAL, INC. | § | IN THE DISTRICT COURT OF |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| | § | |
| VS. | § | WALKER COUNTY, TEXAS |
| | § | |
| | § | |
| HUNTING TITAN, LTD. AND | § | |
| HUNTING TITAN, INC., | § | |
| | § | |
| *Defendants.* | § | 278TH JUDICIAL DISTRICT |

_____

**DEFENDANTS HUNTING TITAN, LTD. AND HUNTING TITAN, INC.'S ORIGINAL
ANSWER, SPECIAL EXCEPTIONS, AND REQUEST FOR DISCLOSURES**
_____

Subject to Defendants Hunting Titan, Ltd. and Hunting Titan, Inc.'s Motion to
Transfer Venue, Defendants Hunting Titan, Ltd. and Hunting Titan, Inc. ("Defendants") file
this Original Answer, Special Exceptions, and Request for Disclosures and respectfully show
the Court as follows:

## I.     GENERAL DENIAL

1.      Defendants generally deny each and every allegation set forth in the Plaintiff
W.T. Bell International, Inc.'s ("WTBI" or "Plaintiff") Original Petition (the "Petition"), and
demand strict proof thereof.  Defendants reserve the right to amend this pleading before trial
of this cause on the merits.

## II.     AFFIRMATIVE DEFENSES

2.      Defendants assert the following affirmative defenses:

a.      Plaintiff's claims are barred, in whole or in part, by the statute of
limitations.

1

b.     Plaintiff's claims are barred, in whole or in part, by laches.

c.     Plaintiff's claims are barred, in whole or in part, by estoppel and/or quasi-estoppel.

d.     Plaintiff's claims are barred, in whole or in part, by justification.

e.     Plaintiff's claims are barred, in whole or in part, by waiver.

f.     Plaintiff's claims are barred, in whole or in part, by its failure to state a claim upon which relief can be granted.

g.     Plaintiff's claims are barred, in whole or in part, because its alleged damages were caused and/or contributed to by third parties not under Defendants' control.

h.     Plaintiff's claims are barred, in whole or in part, by a superseding and/or intervening cause.

i.     Plaintiff's claims are barred, in whole or in part, by the proportionate responsibility provisions of Chapter 33 of the Texas Civil Practices and Remedies Code.

j.     Plaintiff's claims are barred, in whole or in part, by privilege.

k.     Plaintiff's claims are barred against Hunting Titan, Ltd. because this entity has merged into Hunting Titan, Inc., and is therefore an improper party.

### III.     SPECIAL EXCEPTIONS

3.     Pursuant to Rules 90 and 91 of the Texas Rules of Civil Procedure, Defendants assert the following special exceptions to the Petition. *See Centennial Ins. Co. v. Comm. Union Ins. Co*., 803 S.W.2d 479, 483 (Tex. App.—Houston [14th Dist.] 1991, no writ) (holding that "only after special exceptions have been sustained and a party has been given an opportunity to amend its pleadings may a case be dismissed for failure to state a cause of

2

action").   Accordingly, Defendants ask the Court to order Plaintiff to re-plead to cure its

pleading defects:

**A.**      **Declaratory Judgment**

4.      Defendants specially except to Plaintiff's claim for declaratory judgment in

paragraphs 28 – 30 of the Petition because it fails to state a cause of action under Texas law

and fails to give fair notice identifying the nature and issues surrounding this controversy.

*See Moseley v. Hernandez*, 797 S.W.2d 240, 242 ("A special exception is the appropriate

vehicle for urging that the plaintiff has failed to plead a cause of action . . .."); *see also*

*Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 897 (Tex. 2000) ("Texas follows a

'fair notice standard' for pleading, which looks to whether the opposing party can ascertain

from the pleading the nature and basic issues of the controversy and what testimony will be

relevant").

5.      In paragraph 30, Plaintiff seeks a declaratory judgment from the Court

"confirming that [Defendants do] not have any rights in WTBI's IP."  There is no justiciable

conflict because Defendants have not placed the question of whether they have any rights in

"WTBI's IP" at issue.   Instead, Plaintiff unilaterally places the issue in controversy by

alleging that Defendants intentionally misrepresented that they had rights to WTBI's

intellectual property in order to manufacture a claim for declaratory judgment. But the

Petition does not give fair notice of what "WTBI IP" Defendants supposedly claim they have

rights in, or when, where, or to whom these claims were made.   There is therefore no

"uncertainty and insecurity with respect to rights, status, and other legal relations" that needs

to be adjudicated.   *See* TEX. CIV. PRAC. & REM. CODE § 37.002(b).   As such, Plaintiff should

be required to re-plead the allegations in paragraphs 28-30 because no controversy exists as to

whether Defendants have rights in "WTBI's IP," and Plaintiff has thereby failed to state a cause of action.

6.      Plaintiff should also be ordered to re-plead the allegations in paragraphs 28-30 because Plaintiff's request for declaratory judgment concerning Defendants' rights to "WTBI's IP" is vague and fails to give fair notice of the specific intellectual property at issue. Plaintiff's request also fails to specify which intellectual property rights Defendants claim. Without further specification, this Court will be unable to adjudicate each party's rights, and Defendants will be unable to seek proper evidence and testimony regarding this issue. Plaintiff should be ordered to re-plead the allegations in paragraphs 28-30 to give Defendants fair notice of its request for declaratory judgment.

**B.      Tortious Interference with Prospective Business Relations**

7.      Defendants specially except to Plaintiff's claim for tortious interference with prospective business relations with Weatherford as set out in paragraphs 31-36 of the Petition because Plaintiff has done nothing more than plead its tortious interference claim in general terms. In paragraph 33, Plaintiff has not pled any facts in support of the allegation that Defendants "intentionally interfered" with Plaintiff's prospective relationship with Weatherford, nor has Plaintiff pled any facts specifying what false and misleading statements were made by Defendants, who made these statements, when and where these statements were made, and to whom these statements were made.  Further, Plaintiff fails to plead any facts in paragraph 35 supporting the conclusory allegation that Weatherford actually relied on any statements made by Defendant when deciding not to move forward with the transaction at issue.  As such, Plaintiff should be ordered to re-plead the allegations in paragraphs 31-36 to give Defendants fair notice of its tortious interference with prospective business relations claim.

8.      Defendants specially except to Plaintiff's claim for tortious interference with prospective business relations with Schlumberger as set out in paragraphs 37-39 of the Petition because Plaintiff has failed to plead all of the elements of this cause of action, and because Plaintiff has done nothing more than plead its tortious interference claim in general terms.  First, Plaintiff has failed to plead that there was a reasonable probability that WTBI would have entered into a business relationship with Schlumberger, nor does Plaintiff plead any facts evidencing the same.  *See Richardson-Eagle, Inc. v. William M. Mercer, Inc.*, 213 S.W.3d 469, 475 (discussing the elements of tortious interference with prospective business relations).  Additionally, paragraph 37 is entirely devoid of facts supporting the allegation that Defendants intentionally interfered with WTBI's prospective sale to Schlumberger, as well as facts specifying the contents of any false or misleading statements that Defendants allegedly made, who made these statements, when and where these statements were made, and to whom these statements were made.  Further, paragraph 38 does not contain a single fact supporting the allegation that Schlumberger relied on any statements made by Defendants when deciding not to move forward with the transaction at issue.  Plaintiff should be ordered to re-plead the allegations in paragraphs 37-39 so that it states each element of its claim for tortious interference with prospective business relations with Schlumberger, and so that Defendants are put on fair notice of the same.

## C.      **Unfair Competition**

9.      Defendants specially except to Plaintiff's claim for unfair competition as detailed in paragraphs 41 – 48 of the Petition because Plaintiff fails to plead a viable cause of action. Under Texas law, unfair competition is an *area of law* that encompasses various causes of action, such as misappropriation, "palming off," and trade-secret law.  *See U.S. Sporting Products, Inc. v. Johnny Stewart Game Calls, Inc.*, 865 S.W.2d 214, 217 (Tex.

App.—Waco 1993), *writ denied* (Mar. 30, 1994) (noting the difference between unfair competition as a general area of law and the specific causes of action that it subsumes). Under federal law, the tort of unfair competition refers to the use of "another's good will with the public to gain a competitive advantage in the market place." *Clark v. Dillard's, Inc.*, 2015 WL 1346099, at *8 (Tex. App.—Dallas Mar. 25, 2015, no. pet. h.) (citing *Nat'l Bank of Commerce v. Shaklee Corp.*, 503 F.Supp. 533, 541 (W.D. Tex. 1980)). "Unfair competition" is also a term that is at times used interchangeably with the recognized tort of common law misappropriation. *See BP Auto., L.P. v. RML Waxahachie Dodge, L.L.C.*, 448 S.W.3d 562, 572 (Tex. App.—Houston [1st Dist.] 2014), *reh'g overruled* (Dec. 2, 2014) (listing the elements of "unfair competition or common law misappropriation").

10.     Plaintiff fails to plead a cognizable cause of action for unfair competition.  In paragraph 42, Plaintiff claims that "[Defendants'] actions are contrary to honest dealing and also contrary to honest practice in industrial and commercial matters, such that [Defendants'] actions give rise to a civil cause of action."  Plaintiff subsequently repeats its allegations that Defendants misled third parties in order to prevent WTBI from being able to compete with Defendants in paragraphs 43 – 45.  The allegations in paragraphs 42 – 45 do not support a claim for unfair competition under Texas law because Plaintiff neither alleges that Defendants used Plaintiff's good will with the public to gain a competitive advantage, nor that Defendants misappropriated Plaintiff's product in competition with Plaintiff, thereby gaining a special advantage.   In paragraphs 46 – 47, Plaintiff alleges that Defendants gained and used knowledge of Plaintiff's trade secrets through a "confidential relationship".  These allegations appear to attempt to plead a claim for trade secret misappropriation, and any claim is thereby displaced by the Texas Uniform Trade Secrets Act ("TUTSA").  *See* TEX. CIV. PRAC. & REM.

6

CODE § 134.007(a) ("this chapter displaces conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret").  In any event, Plaintiff's defective pleadings have left Defendants guessing as to the precise cause of action that Plaintiff is attempting to assert.  Accordingly, Plaintiff has failed to state a viable claim, and should be ordered to re-plead this cause of action.

11.     Defendants also specially except to Plaintiff's claim for unfair competition as detailed in paragraphs 41 – 48 of the Petition because Plaintiff has not pled facts that provide Defendant fair notice of the issues surrounding the unfair competition claim.  Paragraphs 43 - 45 allege that Defendants made misleading statements, but do not describe with specificity any statements that Defendants allegedly made to mislead Weatherford and Schlumberger.  Namely, Plaintiffs fail to explain what statements were made by Defendants, who made the statements, when and where the statements were made, and to whom the statements were made.  Additionally, paragraphs 46 – 47 only make vague references to a "confidential relationship" between Defendants and WTBI, but allege no specific facts supporting the existence of said relationship.  Paragraphs 46 – 47 also lack facts specifying the proprietary information that Plaintiff alleges Defendants used to develop and manufacture its own products.  Plaintiff should be ordered to re-plead its unfair competition claim so that Defendants are put on fair notice of the facts and circumstances surrounding this claim.

**D.     Negligent Misrepresentation**

12.     Defendants specially except to Plaintiff's claim for negligent misrepresentation set forth in paragraphs 49 - 51 of the Petition because Plaintiff has only pled this cause of action in general terms.  Paragraph 50 alleges that Defendants made statements to Plaintiff that misrepresented facts in a manner that was ultimately intended to benefit Defendants' commercial position.  Instead of pleading specific facts detailing the misrepresentations that

Defendants made, Plaintiff merely makes conclusory allegations that Defendants "made statements to WTBI that misrepresented facts" during its business relationship with WTBI.  In paragraph 51, Plaintiff goes on to conclude that it relied to its detriment on these misrepresentations, and that this reliance caused Plaintiff to lose "its potential sale to Schlumberger."  These statements are not backed by factual allegations.  Namely, Plaintiff fails to specify what misrepresentations were made by Defendants, who made the representations, when and where these misrepresentations were made, and to whom these misrepresentations were made.  It follows that none of these statements from the Petition puts Defendants on fair notice of the nature and issues surrounding this claim.  As such, Plaintiff should be ordered to re-plead its cause of action for negligent misrepresentation.

13.     Defendants also specially except to Plaintiff's claim for negligent misrepresentation set forth in paragraphs 49  - 51 of the Petition because Plaintiff has failed to plead all of the requisite elements of negligent misrepresentation.  Specifically, Plaintiff fails to plead that the alleged misrepresentations were made *for the guidance of others*.  *See McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests*, 991 S.W.2d 787, 791 (Tex. 1999) (listing the elements of negligent misrepresentation).  Additionally, Plaintiff fails to plead that its reliance on Defendants' alleged misrepresentations was *justifiable*.  *See id*. Accordingly, Plaintiff should be ordered to re-plead its cause of action for negligent misrepresentation.

## E.     Confidential Relationship

14.     Defendants specially except to Plaintiff's claim for breach of confidential relationship set forth in paragraphs 52 – 57 of the Petition because Plaintiff has pled this cause of action in general terms and has failed to put Defendants on notice of the nature and basic issues surrounding this claim.  To start, Plaintiff's Petition insinuates that Defendants have

somehow misused Plaintiff's trade secrets, but it fails to plead whether or not Plaintiffs are asserting a claim under TUTSA. If Plaintiffs are claiming misappropriation of trade secrets, then other claims in the Petition are likely displaced by operation of law under TUTSA. *See* TEX. CIV. PRAC. & REM. CODE § 134.007(a). If not, then the Petition fails to give fair notice of the legal basis for a claim of "breach of confidential relationship" that does not fall under TUTSA.

15.     Further, in paragraph 53, Plaintiff alleges that Plaintiff and Defendants established a "confidential relationship" without pleading specific facts supporting the allegation that such a relationship ever existed. In paragraph 55, Plaintiff makes the conclusory allegation that Defendants used the alleged confidential relationship to steal trade secrets and develop its own line of products. Plaintiff pleads no facts that support this claim, but rather states that "[o]n information and belief," the development of Defendants' line of products was the result of Defendants' misuse of Plaintiff's proprietary information. Plaintiff also fails to disclose the basis of this "confidential relationship." As such, Defendants are not put on notice of precisely, or even generally, what proprietary information and/or trade secrets they are accused of misusing. Plaintiff should be required to re-plead its claim for breach of confidential relationship and allege facts that put Defendants on notice of the nature and issues surrounding this claim.

## IV.     <u>REQUEST FOR DISCLOSURES</u>

16.     Pursuant to Rule 194 of the Texas Rules of Civil Procedure, Plaintiff is required to disclose, within thirty (30) days of service of this request, the information or material described in Rule 194.2.

WHEREFORE, PREMISES CONSIDERED, Defendants Hunting Titan, Ltd. and Hunting Titan, Inc. pray that Plaintiff takes nothing by way of this suit against them, that the Court grant judgment in their favor, that they recover their costs and attorney's fees expended in this cause, and that they recover all other and further relief to which they may be entitled. Subject to a ruling on Defendants Hunting Titan, Ltd. and Hunting Titan, Inc.'s Motion to Transfer Venue, Defendants also respectfully request that the Court sustain Defendants' Special Exceptions and order Plaintiff to amend its Original Petition.  If the pleading defect is not one that Plaintiff can cure by amendment, Defendants request that the Court dismiss any incurable causes of action with prejudice.

Respectfully Submitted,

By:   _/s/ Charles S. Baker_

    Charles S. Baker
    *Attorney in Charge*
    cbaker@lockelord.com.
    Texas State Bar No. 01566200
    Matthew G. Reeves
    mreeves@lockelord.com
    Texas State Bar No. 00791498
    Ryan Homeyer
    rhomeyer@lockelord.com
    Texas State Bar No. 24092534
    LOCKE LORD LLP
    600 Travis, Suite 2800
    Houston, TX 77002
    Telephone: (713) 226-1200
    Facsimile:  (713) 223-3717

    Mance Michael Park
    mpark@parkdurham.com
    Texas State Bar No. 15469500
    Park & Durham
    1 Financial Plaza, Suite 530
    Huntsville, Texas 77340
    Telephone: (936) 291-6660

**ATTORNEYS FOR DEFENDANTS HUNTING  TITAN, LTD. AND HUNTING TITAN, INC.**

## <u>CERTIFICATE OF SERVICE</u>

      I hereby certify that a true and correct copy of the above and foregoing document was served via email upon the following counsel on May 12, 2015:

Guy E. Matthews
Terry Joseph
Terry McCutcheon
John D. Holman
David M. Lodholz
Matthews, Lawson, McCutcheon & Joseph PLLC
2000 Bering Dr., Suite 700
Houston, Texas 77057

Bennie D. Rush
bennie@bdrushlaw.com
Law Offices of Bennie D. Rush, P.C.
1300 11th Street, Suite 300
Huntsville, Texas 77340

                                            _/s/ Ryan Homeyer_____
                                            Ryan Homeyer

# EXHIBIT B.4

Cause No. 1527367

| | | |
|---|---|---|
| W.T. Bell International, Inc. | § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiff, | § | |
| | § | WALKER COUNTY, TEXAS |
| v. | § | |
| | § | |
| Hunting Titan, Ltd. and Hunting Titan, Inc., | § | 278th JUDICIAL DISTRICT |
| | § | |
| Defendants. | § | |
| | § | |
| | § | |

## PROPOSED ORDER DENYING DEFENDANT'S MOTION TO TRANSFER VENUE

On this day, came to be heard, in the above numbered and styled cause, Defendant's Motion to Transfer Venue and W.T. Bell International, Inc.'s response thereto; and after considering the pleadings, the motions, the evidence, the response, and the argument of counsel, if any, this Court is of the opinion that the Defendant's Motion to Transfer Venue is without merit, and

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that Defendant's Motion to Transfer Venue is hereby **DENIED.**

All other relief not expressly requested herein is denied.

Signed on _____July 28_____, 2015.

_____
Judge Presiding

FILED
TIME 4
28 DAY OF JULY 20 15
ROBYN FLOWERS
District Clerk Walker County
By_____
Deputy

A TRUE COPY I CERTIFY UNDER MY HAND
AND SEAL OF OFFICE.
ROBYN FLOWERS CLERK DISTRICT COURT
WALKER COUNTY, TEXAS.
BY_____ DEPUTY.

# EXHIBIT B.5

Cause No. 1527367

| | | |
|---|---|---|
| W.T. BELL INTERNATIONAL, INC. | § | IN THE DISTRICT COURT OF |
| | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| Plaintiff/Counter-Defendant, | § | |
| | § | |
| | § | |
| v. | § | |
| | § | |
| HUNTING TITAN, LTD. AND HUNTING | § | WALKER COUNTY, TEXAS |
| TITAN, INC., | § | |
| | § | |
| Defendants/Counter- | § | |
| Plaintiffs/Third-Party | § | |
| Plaintiffs, | § | |
| | § | |
| | § | |
| v. | § | |
| | § | |
| | § | |
| WILLIAM T. BELL | § | |
| | § | |
| Third-Party Defendant. | § | 278TH JUDICIAL DISTRICT |
| | § | |

_____

**DEFENDANTS HUNTING TITAN, LTD. AND HUNTING TITAN, INC.'S FIRST AMENDED ANSWER, SPECIAL EXCEPTIONS, COUNTERCLAIM, AND THIRD-PARTY CLAIM**

_____

Defendants Hunting Titan, Ltd. and Hunting Titan, Inc. (collectively, "Titan") file this First Amended Answer, Special Exceptions, Counterclaim and Third-Party Claim:

**<u>GENERAL DENIAL</u>**

1.      Titan generally denies each and every allegation set forth in Plaintiff W.T. Bell International, Inc.'s ("WTBI" or "Plaintiff") Original Petition (the "Petition"), and demand

1

strict proof thereof.  Titan reserves the right to amend this pleading before trial of this cause on the merits.

## **AFFIRMATIVE DEFENSES**

2.      Titan asserts the following affirmative defenses:

a.      WTBI's claims are barred, in whole or in part, by the statute of limitations.

b.      WTBI's claims are barred, in whole or in part, by laches.

c.      WTBI's claims are barred, in whole or in part, by estoppel and/or quasi-estoppel.

d.      WTBI's claims are barred, in whole or in part, by justification.

e.      WTBI's claims are barred, in whole or in part, by waiver.

f.      WTBI's claims are barred, in whole or in part, by its failure to state a claim upon which relief can be granted.

g.      WTBI's claims are barred, in whole or in part, because its alleged damages were caused and/or contributed to by third parties not under Titan's control.

h.      WTBI's claims are barred, in whole or in part, by a superseding and/or intervening cause.

i.      WTBI's claims are barred, in whole or in part, by the proportionate responsibility provisions of Chapter 33 of the Texas Civil Practices and Remedies Code.

j.      WTBI's claims are barred, in whole or in part, by privilege.

k.      WTBI's claims are barred against Hunting Titan, Ltd. because this entity has merged into Hunting Titan, Inc., and is therefore an improper party.

## **SPECIAL EXCEPTIONS**

3.     Pursuant to Rules 90 and 91 of the Texas Rules of Civil Procedure, Titan asserts the following special exceptions to the Petition.  *See Centennial Ins. Co. v. Comm. Union Ins. Co.*, 803 S.W.2d 479, 483 (Tex. App.—Houston [14th Dist.] 1991, no writ) (holding that "only after special exceptions have been sustained and a party has been given an opportunity to amend its pleadings may a case be dismissed for failure to state a cause of action").  Accordingly, Titan asks the Court to order WTBI to re-plead to cure its pleading defects:

**A.     Declaratory Judgment**

4.     Titan specially excepts to WTBI's claim for declaratory judgment in paragraphs 28 – 30 of the Petition because it fails to state a cause of action under Texas law and fails to give fair notice identifying the nature and issues surrounding this controversy. *See Moseley v. Hernandez*, 797 S.W.2d 240, 242 ("A special exception is the appropriate vehicle for urging that the plaintiff has failed to plead a cause of action . . .."); *see also Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 897 (Tex. 2000) ("Texas follows a 'fair notice standard' for pleading, which looks to whether the opposing party can ascertain from the pleading the nature and basic issues of the controversy and what testimony will be relevant").

5.     In paragraph 30, WTBI seeks a declaratory judgment from the Court "confirming that [Defendants do] not have any rights in WTBI's IP."  There is no justiciable conflict because Titan has not placed the question of whether it has any rights in "WTBI's IP" at issue.  Instead, WTBI unilaterally places the issue in controversy by alleging that Titan intentionally misrepresented that it had rights to WTBI's intellectual property in order to manufacture a claim for declaratory judgment. But the Petition does not give fair notice of what "WTBI IP" Titan supposedly claims it has rights in, or when, where, or to whom these

3

claims were made.  There is therefore no "uncertainty and insecurity with respect to rights, status, and other legal relations" that needs to be adjudicated.  *See* TEX. CIV. PRAC. & REM. CODE § 37.002(b).  As such, WTBI should be required to re-plead the allegations in paragraphs 28-30 because no controversy exists as to whether Titan has rights in "WTBI's IP," and WTBI has thereby failed to state a cause of action.

6.    WTBI should also be ordered to re-plead the allegations in paragraphs 28-30 because WTBI's request for declaratory judgment concerning Titan's rights to "WTBI's IP" is vague and fails to give fair notice of the specific intellectual property at issue.  WTBI's request also fails to specify which intellectual property rights Titan claims. Without further specification, this Court will be unable to adjudicate each party's rights, and Titan will be unable to seek proper evidence and testimony regarding this issue.  WTBI should be ordered to re-plead the allegations in paragraphs 28-30 to give Titan fair notice of its request for declaratory judgment.

**B.**    **Tortious Interference with Prospective Business Relations**

7.    Titan specially excepts to WTBI's claim for tortious interference with prospective business relations with Weatherford as set out in paragraphs 31-36 of the Petition because WTBI has done nothing more than plead its tortious interference claim in general terms. In paragraph 33, WTBI has not pled any facts in support of the allegation that Titan "intentionally interfered" with WTBI's prospective relationship with Weatherford, nor has WTBI pled any facts specifying what false and misleading statements were made by Titan, who made these statements, when and where these statements were made, and to whom these statements were made.  Further, WTBI fails to plead any facts in paragraph 35 supporting the conclusory allegation that Weatherford actually relied on any statements made by Titan when deciding not to move forward with the transaction at issue.  As such, WTBI should be ordered

4

to re-plead the allegations in paragraphs 31-36 to give Titan fair notice of its tortious interference with prospective business relations claim.

8.     Titan specially excepts to WTBI's claim for tortious interference with prospective business relations with Schlumberger as set out in paragraphs 37-39 of the Petition because WTBI has failed to plead all of the elements of this cause of action, and because WTBI has done nothing more than plead its tortious interference claim in general terms.  First, WTBI has failed to plead that there was a reasonable probability that it would have entered into a business relationship with Schlumberger, nor does WTBI plead any facts evidencing the same.  *See Richardson-Eagle, Inc. v. William M. Mercer, Inc.*, 213 S.W.3d 469, 475 (discussing the elements of tortious interference with prospective business relations). Additionally, paragraph 37 is entirely devoid of facts supporting the allegation that Titan intentionally interfered with WTBI's prospective sale to Schlumberger, as well as facts specifying the contents of any false or misleading statements that Titan allegedly made, who made these statements, when and where these statements were made, and to whom these statements were made.  Further, paragraph 38 does not contain a single fact supporting the allegation that Schlumberger relied on any statements made by Titan when deciding not to move forward with the transaction at issue.   WTBI should be ordered to re-plead the allegations in paragraphs 37-39 so that it states each element of its claim for tortious interference with prospective business relations with Schlumberger, and so that Titan is put on fair notice of the same.

**C.     <u>Unfair Competition</u>**

9.     Titan specially excepts to WTBI's claim for unfair competition as detailed in paragraphs 41 – 48 of the Petition because WTBI fails to plead a viable cause of action. Under Texas law, unfair competition is an *area of law* that encompasses various causes of

action, such as misappropriation, "palming off," and trade-secret law.  *See U.S. Sporting Products, Inc. v. Johnny Stewart Game Calls, Inc.*, 865 S.W.2d 214, 217 (Tex. App.—Waco 1993), *writ denied* (Mar. 30, 1994) (noting the difference between unfair competition as a general area of law and the specific causes of action that it subsumes).  Under federal law, the tort of unfair competition refers to the use of "another's good will with the public to gain a competitive advantage in the market place."  *Clark v. Dillard's, Inc.*, 2015 WL 1346099, at *8 (Tex. App.—Dallas Mar. 25, 2015, no. pet. h.) (citing *Nat'l Bank of Commerce v. Shaklee Corp.*, 503 F.Supp. 533, 541 (W.D. Tex. 1980)).  "Unfair competition" is also a term that is at times used interchangeably with the recognized tort of common law misappropriation.  *See BP Auto., L.P. v. RML Waxahachie Dodge, L.L.C.*, 448 S.W.3d 562, 572 (Tex. App.—Houston [1st Dist.] 2014), *reh'g overruled* (Dec. 2, 2014) (listing the elements of "unfair competition or common law misappropriation").

10.  WTBI fails to plead a cognizable cause of action for unfair competition.  In paragraph 42, WTBI claims that "Titan's actions are contrary to honest dealing and also contrary to honest practice in industrial and commercial matters, such that Titan's actions give rise to a civil cause of action."  WTBI subsequently repeats its allegations that Titan misled third parties in order to prevent WTBI from being able to compete with Titan in paragraphs 43 – 45.  The allegations in paragraphs 42 – 45 do not support a claim for unfair competition under Texas law because WTBI neither alleges that Titan used WTBI's good will with the public to gain a competitive advantage, nor that Titan misappropriated WTBI's product in competition with WTBI, thereby gaining a special advantage.  In paragraphs 46 – 47, WTBI alleges that Titan gained and used knowledge of WTBI's trade secrets through a "confidential relationship".  These allegations appear to attempt to plead a claim for trade secret

6

misappropriation, and any claim is thereby displaced by the Texas Uniform Trade Secrets Act ("TUTSA").   *See* TEX. CIV. PRAC. & REM. CODE § 134.007(a) ("this chapter displaces conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret").   In any event, WTBI's defective pleadings have left Titan guessing as to the precise cause of action that WTBI is attempting to assert.   Accordingly, WTBI has failed to state a viable claim, and should be ordered to re-plead this cause of action.

11.     Titan also specially excepts to WTBI's claim for unfair competition as detailed in paragraphs 41 – 48 of the Petition because WTBI has not pled facts that provide Titan fair notice of the issues surrounding the unfair competition claim.   Paragraphs 43 - 45 allege that Titan made misleading statements, but do not describe with specificity any statements that Titan allegedly made to mislead Weatherford and Schlumberger.   Namely, WTBI fails to explain what statements were made by Titan, who made the statements, when and where the statements were made, and to whom the statements were made.   Additionally, paragraphs 46 – 47 only make vague references to a "confidential relationship" between Titan and WTBI, but allege no specific facts supporting the existence of said relationship.   Paragraphs 46 – 47 also lack facts specifying the proprietary information that WTBI alleges Titan used to develop and manufacture its own products.   WTBI should be ordered to re-plead its unfair competition claim so that Titan is put on fair notice of the facts and circumstances surrounding this claim.

**D.**     **Negligent Misrepresentation**

12.     Titan specially excepts to WTBI's claim for negligent misrepresentation set forth in paragraphs 49 - 51 of the Petition because WTBI has only pled this cause of action in general terms.   Paragraph 50 alleges that Titan made statements to WTBI that misrepresented facts in a manner that was ultimately intended to benefit Titan's commercial position.   Instead of pleading specific facts detailing the misrepresentations that Titan allegedly made, WTBI

7

merely makes conclusory allegations that Titan "made statements to WTBI that misrepresented facts" during its business relationship with WTBI.  In paragraph 51, WTBI goes on to conclude that it relied to its detriment on these misrepresentations, and that this reliance caused it to lose "its potential sale to Schlumberger."  These statements are not backed by factual allegations.  Namely, WTBI fails to specify what misrepresentations were made by Titan, who made the representations, when and where these misrepresentations were made, and to whom these misrepresentations were made.  It follows that none of these statements from the Petition puts Titan on fair notice of the nature and issues surrounding this claim.  As such, WTBI should be ordered to re-plead its cause of action for negligent misrepresentation.

13.     Titan also specially excepts to WTBI's claim for negligent misrepresentation set forth in paragraphs 49  - 51 of the Petition because WTBI has failed to plead all of the requisite elements of negligent misrepresentation.  Specifically, WTBI fails to plead that the alleged misrepresentations were made *for the guidance of others*.  *See McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests*, 991 S.W.2d 787, 791 (Tex. 1999) (listing the elements of negligent misrepresentation).  Additionally, WTBI fails to plead that its reliance on Titan's alleged misrepresentations was *justifiable*.  *See id*.  Accordingly, WTBI should be ordered to re-plead its cause of action for negligent misrepresentation.

**E.     Confidential Relationship**

14.     Titan specially excepts to WTBI's claim for breach of confidential relationship set forth in paragraphs 52 – 57 of the Petition because WTBI has pled this cause of action in general terms and has failed to put Titan on notice of the nature and basic issues surrounding this claim.  To start, WTBI's Petition insinuates that Titan has somehow misused WTBI's trade secrets, but it fails to plead whether or not WTBI is asserting a claim under TUTSA.  If

WTBI is claiming misappropriation of trade secrets, then other claims in the Petition are likely displaced by operation of law under TUTSA. *See* Tex. Civ. Prac. & Rem. Code § 134.007(a).  If not, then the Petition fails to give fair notice of the legal basis for a claim of "breach of confidential relationship" that does not fall under TUTSA.

15.     Further, in paragraph 53, WTBI alleges that WTBI and Titan established a "confidential relationship" without pleading specific facts supporting the allegation that such a relationship ever existed.  In paragraph 55, WTBI makes the conclusory allegation that Titan used the alleged confidential relationship to steal trade secrets and develop its own line of products.  WTBI pleads no facts that support this claim, but rather states that "[o]n information and belief," the development of Titan's line of products was the result of Titan's misuse of WTBI's proprietary information.  WTBI also fails to disclose the basis of this "confidential relationship."  As such, Titan is not put on notice of precisely, or even generally, what proprietary information and/or trade secrets they are accused of misusing.  WTBI should be required to re-plead its claim for breach of confidential relationship and allege facts that put Titan on notice of the nature and issues surrounding this claim.

16.     WHEREFORE, PREMISES CONSIDERED, Titan prays that WTBI takes nothing by way of this suit against them, that the Court grant judgment in Titan's favor, that Titan recovers its costs and attorney's fees expended in this cause, and that Titan recovers all other and further relief to which they may be entitled.  Titan also respectfully requests that the Court sustain its Special Exceptions and order WTBI to amend its Original Petition.  If the pleading defect is not one that WTBI can cure by amendment, Titan requests that the Court dismiss any incurable causes of action with prejudice.

## COUNTERCLAIM AND THIRD-PARTY CLAIM

17.     Hunting Titan, Inc. ("Titan") files this Counterclaim against W.T. Bell International, Inc. ("WTBI") and third-party William T. Bell ("Bell").  Titan files this suit against WTBI and Bell because they have willfully and flagrantly breached their contractual obligations to Titan, and are illegally competing against Titan and selling products that they have no right to sell. In support of these claims, Titan respectfully shows the Court as follows:

## I.     DISCOVERY CONTROL PLAN

18.     Discovery in this case should be conducted under Level 2, Rule 190.3 of the Texas Rules of Civil Procedure.

## II.     PARTIES

19.     Counter-Plaintiff Hunting Titan, Inc. is a Texas corporation with its principal place of business located at 450 Gears Road, Houston, Texas 77067.

20.     Counter-Defendant W.T. Bell International, Inc. is a Texas corporation with its principal place of business located in Houston, TX.

21.     Third-Party Defendant William T. Bell is an individual who may be served with process at 8811 Emmott Road, Suite 1900, Houston, Texas 77040, or wherever he may be found.

## III.     JURISDICTION

22.     This Court has personal jurisdiction over Titan's claims because WTBI and Bell do business and reside in Texas, have multiple offices in Texas, have employees in Texas, and/or otherwise have minimum contacts in and/or with the State of Texas.

23.     This Court has subject matter jurisdiction because the amount in controversy exceeds this Court's minimum jurisdictional requirement.

## IV.     FACTUAL BACKGROUND

24.     Among other things, Titan's business involves the sale of jet cutters and severing tools used by oil field service companies and operators.  These service companies use explosive jet cutters to cut tubular goods when oil companies encounter problems with a well, or when a well has to be plugged and abandoned after it stops producing.  Likewise, severing tools are used by oil field service companies for similar purposes when jet cutters, which are larger in diameter, cannot be used.

25.     This controversy centers around three agreements (the "Agreements") entered into between Titan's predecessor in interest, Titan Completion Products, Ltd. ("TCP"), WTBI's predecessor in interest, Specialty Completion Products, Ltd. ("SCP"), and Bell in July 2002 relating to the sale of substantially all of the assets of SCP to TCP.  In particular, on or about July 15, 2002, TCP, SCP, and Bell executed an Asset Purchase Agreement (the "APA"), a true and correct copy of which is attached hereto as Exhibit A. On the same date, TCP entered into two separate Manufacturing and License Agreements - one with SCP (the "SCP MLA"), and one with Bell (the "Bell MLA"), true and correct copies of which are attached as Exhibit B, and Exhibit C, respectively.

26.     The APA, among other things, called for the sale to TCP of substantially all of the assets owned by SCP related to SCP's product line of jet cutters and severing tools branded as the SPECTRA product line.[1]  It is undisputed that as a result of the APA, TCP became the owner of the all of the assets and technology owned by SCP with respect to SCP's line of jet cutters and severing tools.

27.     Additionally, under Section 5.15 of the APA, SCP and Bell granted to TCP an exclusive right of first refusal for all new products developed by SCP, Bell, and their affiliates after July 15, 2002.  Importantly, the APA also contained a covenant against competition

---

[1] *See* Exhibit A.

(Section 5.06) preventing SCP and Bell from directly or indirectly competing against TCP for a period of five years after the Manufacturing and License Agreements terminated, and prohibiting Bell and SCP from disclosing or using any of TCP's confidential information.

28.    In addition to the foregoing restrictions provided in the APA, both the SCP MLA and the Bell MLA granted a license to SCP to manufacture the SPECTRA products only to Schlumberger and no other third party.   The SCP MLA and Bell MLA further prohibited SCP from reselling or transferring these products except as to Schlumberger.

29.    Upon information and belief, in August 2002 Mr. Bell founded WTBI.   He, along with along his colleague James G. Rairigh, became the primary owners of WTBI and through today have been principally responsible for managing its day-to-day operations, including the design and manufacturing of the SPECTRA line of jet cutters and severing tools sold by Titan.   Originally, the plan was for SCP to continue to provide the SPECTRA jet cutters and severing tools to TCP for six months after closing (July 15, 2002) and, thereafter, TCP would take over SCP's operations.   Instead, both parties agreed that SCP would continue to manufacture those products past the six-month period.   Eventually, in July 2003, WTBI took over SCP's manufacturing operations, and also purchased all of SCP's remaining assets, thereby becoming the successor-in-interest to SCP and its duties and obligations under both the APA and the SCP MLA.

30.    Over the course of the next eleven (11) years, WTBI acted as and became SCP's successor in interest.   WTBI never made any representation implying that it and SCP were distinct and separate entities.   Rather, WTBI and TCP (and later Titan) carried on such that everything was "business as usual" between the parties.   WTBI continued to supply Titan with SCP products, and Titan continued to pay WTBI.   In fact, WTBI was paid millions of

dollars for the manufacture and sale of those products under the name "WTBI," including royalty payments under the APA that SCP was originally entitled to receive.  At no point in time did WTBI ever claim that is was not the successor-in-interest to SCP until very recently, when a dispute arose between the parties that resulted in WTBI and Bell filing a lawsuit against Titan in Federal Court in Houston on September 15, 2014.  Due to this dispute, Titan ceased purchasing WTBI products in early 2015, and instead began selling its own proprietary line of cutter tools.

31.     In May, 2015, WTBI and an industrial explosives company, DynaEnergetics U.S., Inc. (a subsidiary of Dynamic Materials Corporation), announced that the two parties had entered into a distribution agreement (the "Distribution Agreement") under which DynaEnergetics became the exclusive distributor of WTBI's jet cutter and severing tool products, in clear violation of Titan's right of first refusal provided for under Section 5.15 of the APA.  Additionally, by entering into the Distribution Agreement, both WTBI and Bell have violated the terms of the APA's covenant against competition and confidentiality provision, as DynaEnergetics will be acting in direct competition with Titan.  WTBI and Bell are also in violation of the SCP MLA and Bell MLA by allowing DynaEnergetics to resell WTBI's products.

## V.     CONDITIONS PRECEDENT

32.     All conditions precedent to bringing this suit and to obtaining relief sought herein have been satisfied or have occurred.

## VI.     CAUSES OF ACTION

### A.     *Breach of Contract - Bell*

33.     Titan repeats and re-alleges all of the preceding paragraphs as if set forth fully herein.

13

34.     By executing both the APA and the Bell MLA, Bell and Titan entered into enforceable contracts.

35.     Titan is a proper party to sue for breach of the APA and the Bell MLA.

36.     Titan has performed, tendered performance of, or is otherwise excused from performing all of its requisite contractual obligations under the Agreements.

37.     By entering into the exclusive Distribution Agreement with DynaEnergetics, Bell breached the covenant against competition, right of first refusal, and confidentiality provisions of the APA.  Bell also breached the licensing provisions contained in the Bell MLA, which prohibits Bell from reselling, leasing or otherwise transferring cutters and severing tools to any third parties except as to Schlumberger Limited.

38.     Bell's breach of the APA and Bell MLA has caused Titan injury.

### B.     *Breach of Contract - WTBI*

39.     Titan repeats and re-alleges all of the preceding paragraphs as if set forth fully herein.

40.     By executing both the APA and the WTBI MLA, WTBI and Titan entered into enforceable contracts.

41.     Titan is a proper party to sue for breach of the APA and the WTBI MLA.

42.     Titan has performed, tendered performance of, or is otherwise excused from performing all of its requisite contractual obligations under the Agreements.

43.     By entering into the exclusive Distribution Agreement with DynaEnergetics, WTBI breached the covenant against competition, right of first refusal, and confidentiality provisions included in the APA.  WTBI also breached the licensing provisions contained in the WTBI MLA, which prohibits WTBI from reselling, leasing or otherwise transferring cutters and severing tools to any third parties except as to Schlumberger Limited.

14

44.     WTBI's breach of the APA and WTBI MLA has caused Titan injury.

**C.      *Attorney's fees***

*45*.     In addition to damages caused by WTBI and Bell's breaches of contract, Titan is also entitled to recover any and all reasonable and necessary attorney's fees incurred as a result of WTBI and Bell's conduct.

**D.      *Injunctive Relief***

46.     Titan repeats and re-alleges all of the preceding paragraphs as if set forth fully herein.

47.     By the unlawful conduct of WTBI and Bell, Titan has suffered and continues to suffer immediate and irreparable harm that cannot be adequately compensated by an award of damages.

48.     Titan is entitled to obtain injunctive relief to force WTBI and Bell to refrain from continuation of such unlawful conduct.

49.     Titan has established a probable right to the relief sought.

50.     By the actual and potential unlawful conduct of WTBI and Bell, Titan will suffer immediate and irreparable harm that cannot be compensated by an award of damages in that Bell and WTBI will disclose Titan's confidential information, Titan will lose the exclusive use of its confidential information – and consequently the value and potential value of this information will be permanently harmed, WTBI and Bell will make use of Titan's confidential information to Titan's detriment and to improperly compete with Titan, WTBI and Bell will destroy goodwill developed by Titan with its customers, and Titan will suffer monetary damages that are difficult if not impossible to quantify.  In addition, if Bell and WTBI are allowed to continue to compete with Titan in violation of their non-compete obligations, Titan will suffer immediate and irreparable harm that cannot be compensated by

an award of damages.  WTBI and Bell will destroy the goodwill developed by Titan and its customers, and Titan will suffer monetary damages that are difficult if not impossible to quantify.

51.     Titan is entitled to a temporary and permanent injunction pursuant to Texas Civil Practice and Remedies Code §§ 65.011(1)-(2).  A court should grant an injunction to preserve the subject matter of the suit until it is resolved by a judgment.  *City of Dallas v. Wright*, 36 S.W.2d 973, 975 (Tex. 1931); *see also Vannerson v. Vannerson*, 857 S.W.2d 659, 674 (Tex.App.—Houston [1st Dist.] 1993, writ denied).  Titan requests an injunction to prevent WTBI and Bell from continuing to improperly compete with Titan and its affiliates, and to prevent WTBI and Bell from benefitting from any disclosure and use of Titan's confidential information.

52.     Unless Bell and WTBI are restrained and enjoined from undertaking and maintaining its conduct and activities described above, Titan will continue to suffer irreparable harm for which Titan has no adequate remedy at law.  Accordingly, Titan requests that the Court immediately and temporarily restrain Bell, WTBI, and all those acting in concert with them from:

    a.    engaging or investing in, or owning, controlling, managing, or participating in the ownership, control or management of, or rendering services or advice to, any business engaged, or which WTBI and Bell reasonably know is undertaking to be engaged, in the design, development, manufacture, marketing, and sale of cutters and severing tools (the "Business");

    b.    soliciting, or assisting in the solicitation of, any person to whom WTBI sold or provided any products or services related to the Business on, or during the two (2) year period prior to, the date of the closing, for the purpose of obtaining the patronage of such person for the purchase of any products or services competitive with the Business;

    c.    soliciting, or assisting in the solicitation of, any person employed by Titan (as an employee, independent contractor or otherwise), to

16

terminate such employment, whether or not such employment is pursuant to a contract and whether or not such employment is at will; and

d.      using, disclosing or revealing to any person any confidential information of Titan's.

53.     Upon information and belief, if WTBI and Bell are allowed to continue competing against Titan, Titan will continue to be adversely impacted until it will be very difficult, if not impossible, to restore the status quo.

54.     The harm done by issuing the injunctive relief prayed for herein does not outweigh the substantial loss to be caused by the continued unlawful acts of WTBI and Bell.

55.     The injunctive relief prayed for herein will do no more than restore the parties to the status as it existed prior to WTBI's and Bell's actual and threatened unlawful conduct.

56.     WTBI's and Bell's unlawful conduct is clearly actionable and the injunctive relief prayed for herein is reasonably calculated to abate such conduct.

57.     Once Titan's confidential information is used and disclosed, there is no adequate remedy at law that could address such damages.  The losses to Titan cannot be presently ascertained or readily calculated.

58.     In order to preserve the status quo and the rights of Titan during the pendency of this action, WTBI and Bell should be cited to appear and show cause why they should not be enjoined, during the pendency of this action, from engaging in any of the conduct described above.

59.     At this time, Titan respectfully requests the following relief:

a.      A Temporary Restraining Order be issued, restraining WTBI and Bell and any and all others acting in concert with them from engaging in any of the conduct discussed above;

b.      A Temporary Injunction be issued, after notice to WTBI and Bell and an evidentiary hearing, restraining WTBI and Bell from directly or

17

indirectly engaging in any of the actions discussed above during the pendency of this case; and

    c.    After a final trial of this cause, WTBI and Bell and any and all others acting in concert with them be permanently enjoined from engaging in any of the conduct described above.

60.    Titan is willing and able to post bond in this matter.

## VII.   JURY DEMAND

61.    Titan demands a jury trial and has paid the required fee concurrently with the filing of this Petition.

## VIII.   PRAYER FOR RELIEF

62.    Titan prays that the Court grant its application for Permanent Injunction, and award a judgment for the following:

    a.    Its actual damages;

    b.    Prejudgment interest at the highest rate allowed by law;

    c.    Post-judgment interest at the highest rate allowed by law;

    d.    Costs;

    e.    Attorney's fees; and

    f.    All other relief to which it may be entitled.

Respectfully Submitted,
By: _/s/ Charles S. Baker_

    Charles S. Baker
    Attorney in Charge
    cbaker@lockelord.com.
    Texas State Bar No. 01566200
    Matthew G. Reeves
    mreeves@lockelord.com
    Texas State Bar No. 00791498
    Scarlett Collings
    scarlett.collings@lockelord.com
    Texas State Bar No. 24001906
    Ryan Homeyer
    rhomeyer@lockelord.com
    Texas State Bar No. 24092534
    LOCKE LORD LLP
    600 Travis, Suite 2800
    Houston, TX 77002
    Telephone: (713) 226-1200
    Facsimile:  (713) 223-3717

    Mance Michael Park
    mpark@parkdurham.com
    Texas State Bar No. 15469500
    Park & Durham
    1 Financial Plaza, Suite 530
    Huntsville, Texas 77340
    Telephone: (936) 291-6660

**_ATTORNEYS FOR HUNTING  TITAN, LTD._**
**_AND HUNTING TITAN, INC._**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the above and foregoing document was served on counsel of record on August 21, 2015 via the electronic filing manager, or, if the email address of counsel is not on file with the electronic filing manager, as indicated below: ***Via Email***

Guy E. Matthews
Terry Joseph
Terry McCutcheon
John D. Holman
David M. Lodholz
Matthews, Lawson, McCutcheon & Joseph PLLC
2000 Bering Dr., Suite 700
Houston, Texas 77057

Bennie D. Rush
bennie@bdrushlaw.com
Law Offices of Bennie D. Rush, P.C.
1300 11th Street, Suite 300
Huntsville, Texas 77340

　　　　　　　　　　　　　　　　　　　　　 /s/ Ryan Homeyer
　　　　　　　　　　　　　　　　　　　　Ryan Homeyer

20

# EXHIBIT B.6

Cause No. 1527367

| | | |
|---|---|---|
| W.T. Bell International, Inc., | § | **IN THE DISTRICT COURT OF** |
| | § | |
| Plaintiff/Counter-Defendant, | § | |
| | § | **WALKER COUNTY, TEXAS** |
| v. | § | |
| | § | |
| Hunting Titan, Ltd. and Hunting Titan, Inc., | § | **278th JUDICIAL DISTRICT** |
| | § | |
| Defendants/Counter-Plaintiffs/Third-Party Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | |
| William T. Bell, | § | |
| | § | |
| Third-Party Defendant. | § | |

## COUNTER-DEFENDANT W.T. BELL INTERNATIONAL, INC.'S FIRST ANSWER, DEFENSES, AND SPECIAL EXCEPTIONS

TO THE HONORABLE COURT:

Counter-Defendant W.T. Bell International, Inc. ("WTBI"), by and through its counsel, hereby files this Answer, Defenses and Special Exceptions:

## I.   GENERAL DENIAL

1.   WTBI generally denies each and every allegation set forth in Counter-Plaintiffs Hunting Titan, Ltd. and Hunting Titan, Inc.'s (collectively, "Titan") counterclaim, and demand strict proof thereof. WTBI reserves the right to amend this Answer and Defenses before trial of this cause on the merits.

## II.    SPECIFIC DENIAL

2.      WTBI specifically denies Titan's claim of breach of contract because Titan has not properly pled that WTBI is a successor in interest or a proper party to any contract claim.

3.      WTBI specifically denies that all conditions precedent have been satisfied or have occurred, as Titan alleges in paragraph 32 of its Counterclaims.

## III.    AFFIRMATIVE DEFENSES

4.      WTBI asserts the following affirmative defenses:

a.   Titan's claim is barred, in whole or in part, because WTBI is not a successor in interest to Specialty Completions Products, Ltd.

b.   Titan's claim is barred, in whole or in part, by statute of limitations.

c.   Titan's claim is barred, in whole or in part, by partial performance.

d.   Titan's claim is barred, in whole or in part, by res judicata.

e.   Titan's claim is barred, in whole or in part, by laches.

f.   Titan's claim is barred, in whole or in part, by estoppel and/or quasi-estoppel.

g.   Titan's claim is barred, in whole or in part, by justification and/or privilege.

h.   Titan's claim is barred, in whole or in part, by waiver.

i.   Titan's claim is barred, in whole or in part, by their failure to state a claim upon which relief can be granted.

j.   Titan's claim is barred, in whole or in part, by a superseding and/or intervening cause.

k.   Titan's claim is barred, in whole or in part, by accord and satisfaction.

l.   Titan's claim is barred, in whole or in part, by license.

m.   Titan's claim is barred, in whole or in part, by release.

n. Titan's claim is barred, in whole or in part, by mistake.

o. Titan's claim is barred, in whole or in part, by ratification.

p. Titan's claim is barred, in whole or in part, by failure to mitigate.

## IV.   SPECIAL EXCEPTIONS

5.     Pursuant to Rules 90 and 91 of the Texas Rules of Civil Procedure, and subject to WTBI's Rule 91a Motion to Dismiss, WTBI asserts the following special exceptions to Third-Party Plaintiffs' Claim against WTBI. "Special exceptions may be used to challenge the sufficiency of a pleading…If a party refuses to amend, or the amended pleading fails to state a cause of action, then summary judgment may be granted." *Friesenhahn v. Ryan*, 960 S.W.2d 656, 658 (Tex. 1998). Accordingly, WTBI requests this Court to order Titan to re-plead to cure the following pleading defects:

### A.   Breach of Contract

6.     WTBI specially excepts to Titan's claim for Breach of Contract in paragraphs 39-44 of Titan's Counterclaim because it fails to state a cause of action under Texas law and fails to give fair notice identifying the contract WTBI allegedly breached or the facts and law supporting a cause for breach of contract against WTBI.

7.     In paragraph 40, Titan alleges, "By executing both the APA and the WTBI MLA, WTBI and Titan entered into enforceable contracts." However, WTBI did not exist in any form when the APA and the MLAs were executed – a fact that Titan acknowledges in their pleadings. Therefore, a "WTBI MLA," as pled, cannot factually or legally exist, nor could WTBI have executed the APA. Furthermore, Titan does not plead the existence of a "WTBI MLA" in its facts or any agreement entered into between WTBI and Titan. Titan pleads that two MLAs exist: the Bell MLA and the SCP MLA. And then in pleading their cause for breach of contract against

WTBI, Titan conveniently folds one or both of these MLAs executed by a party other than WTBI into a "WTBI MLA." WTBI is not on fair notice as to the factual or legal basis of the existence of a "WTBI MLA," or how WTBI, without existing, could have executed the APA or any MLA with Titan. Titan has not pled the existence of, or attached to any pleading, any agreement that binds WTBI in a manner as to create liability on it.

8.      In addition, WTBI specifically excepts to Titan's allegations that WTBI is a successor in interest to SCP because Titan has failed to plead a successor in interest theory recognized in the State of Texas or any facts proving WTBI is liable as a successor in interest. Titan merely alleges that "[o]ver the course of…eleven (11) years, WTBI acted as and became SCP's successor in interest." In their response to WTBI's Rule 194 Request for Disclosures, Titan asserted that WTBI is the *"de facto"* successor in interest because it purchased specific assets from SCP's over a decade ago. Texas does not recognize *de facto* successor as a legal theory. Under Texas law, WTBI may not be held responsible or liable for a liability or obligation of SCP unless WTBI expressly assumes the obligation.  Texas Bus. Org. Code 10.254(b).  "In Texas, the successor incurs no liability of the predecessor unless the successor **expressly assumes that liability**." *Lockheed Martin Corp. v. Gordon*, 16 S.W.3d 127, 135 (Tex. App.—Houston [1st Dist.] 2000, pet. denied) (emphasis added).

9.      The "de facto merger" doctrine imposing liability of a corporation on the purchaser of its assets, and the "mere continuation" doctrine imposing liability on successor corporations <u>cannot</u> be applied under Texas law, regardless of the manner in which the assets are acquired.  *Mudgett v. Paxson Mach. Co.*, 709 S.W.2d 755, 758 (Tex. App.—Corpus Christi 1986, <u>writ refused NRE</u>) (Feb. 11, 1987). The legislature eliminated the doctrine of implied successor liability in the codification of a statute as article 5.10 of the Business Corporation Act

– the current version is Tex. Bus. Org. Code Ann. § 10.254. *Motor Components, LLC v. Devon Energy Corp.*, 338 S.W.3d 198, 205 (Tex. App.—Houston [14th Dist.] 2011, no pet.).

10.     WTBI is not on fair notice as to a factual or legal basis supporting Titan's allegation that WTBI is SCP's successor in interest. Absent proof of a written instrument showing that WTBI has *expressly* agreed to be bound by SCP's liabilities and obligations,WTBI cannot be held liable or responsible for a liability or obligation of SCP under Texas law and Titan has failed to state a cause of action for breach of the APA, Bell MLA, or SCP MLA against WTBI.

11.     Titan's allegations in paragraphs 39-44 do not put WTBI on notice as to the factual or legal basis for the breach of contract claim and Titan's petition on this cause of action must be re-pled or dismissed.

## V.     ATTORNEY'S FEES

12.     WTBI is entitled to recover any and all reasonable and necessary attorney's fees incurred as a result of Titan's conduct.

## VI.     PRAYER

13.     WHEREFORE, PREMISES CONSIDERED, Counter-Defendant W.T. Bell International, Inc. denies all allegations against it and pray that Counter-Plaintiffs take nothing by their alleged cause of action against Counter-Defendant, and for all further relief to which it may be justly entitled.

**COUNTER-DEFENDANT'S ANSWER AND DEFENSES**

Respectfully submitted,

/s/*Terry B. Joseph*____
Guy E. Matthews
Texas Bar No. 13207000
gmatthews@matthewsfirm.com
Terry Joseph
Texas Bar No. 11029500
tjoseph@matthewsfirm.com
Terry McCutcheon
Texas Bar No. 24039045
tmccutcheon@matthewsfirm.com
John D. Holman
Texas Bar No. 24082232
jholman@matthewsfirm.com
David M. Lodholz
Texas Bar No. 24070158
dlodholz@matthewsfirm.com
**MATTHEWS, LAWSON, MCCUTCHEON & JOSEPH PLLC**
2000 Bering Dr., Suite 700
Houston, Texas 77057
Telephone: (713) 355-4200
Facsimile:  (713) 355-9689

Bennie D. Rush
Texas Bar No. 17400425
bennie@bdrushlaw.com
**LAW OFFICES OF BENNIE D. RUSH, P.C.**
1300 11th Street, Suite 300
Huntsville, TX 77340

*ATTORNEYS FOR PLAINTIFF W.T. BELL INTERNATIONAL, INC.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the above and foregoing document was

served via email upon the following counsel on September 11, 2015:

Charles S. Baker
Matthew G. Reeves
Scarlett Collings
Ryan Homeyer
LOCKE LORD LLP
600 Travis, Suite 2800
Houston, TX 77002

Mance Michael Park
mpark@parkdurham.com
Park & Durham
1 Financial Plaza, Suite 530
Huntsville, Texas 77340

_/s/Terry B. Joseph_
Terry B. Joseph

# EXHIBIT B.7

Cause No. 1527367

| | | |
|---|---|---|
| W.T. Bell International, Inc., | § | **IN THE DISTRICT COURT OF** |
| | § | |
| Plaintiff/Counter-Defendant, | § | |
| | § | **WALKER COUNTY, TEXAS** |
| v. | § | |
| | § | |
| Hunting Titan, Ltd. and Hunting Titan, Inc., | § | **278th JUDICIAL DISTRICT** |
| | § | |
| Defendants/Counter-Plaintiffs/Third-Party Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | |
| William T. Bell, | § | |
| | § | |
| Third-Party Defendant. | § | |

**THIRD-PARTY DEFENDANT WILLIAM T. BELL'S
FIRST ANSWER, DEFENSES, AND SPECIAL EXCEPTIONS**

TO THE HONORABLE COURT:

Third-Party Defendant William T. Bell ("Bell"), by and through his counsel, hereby files

this Answer, Defenses, and Special Exceptions to the Third Party Claim filed by Third-Party

Plaintiffs Hunting Titan, Ltd. and Hunting Titan, Inc. (collectively, "Titan"):

**I.    GENERAL DENIAL**

1.    Bell generally denies each and every allegation set forth in Titan's Third Party

Claim and demand strict proof thereof. Bell reserves the right to amend this Answer and

Defenses before trial of this cause on the merits.

## II.   SPECIFIC DENIALS

2.      Bell specifically denies that all conditions precedent have been satisfied or have occurred, as Titan alleges in paragraph 32 of its Counterclaims.

## III.   AFFIRMATIVE DEFENSES

3.      Bell asserts the following affirmative defenses:

    a.   Titan's claim is barred, in whole or in part, by a statute of limitations.

    b.   Titan's claim is barred, in whole or in part, by laches.

    c.   Titan's claim is barred, in whole or in part, by res judicata.

    d.   Titan's claim is barred, in whole or in part, by estoppel and/or quasi-estoppel.

    e.   Titan's claim is barred, in whole or in part, by justification and/or privilege.

    f.   Titan's claim is barred, in whole or in part, by waiver and/or acceptance.

    g.   Titan's claim is barred, in whole or in part, by partial performance.

    h.   Titan's claim is barred, in whole or in part, by their failure to state a claim upon which relief can be granted.

    i.   Titan's claim is barred, in whole or in part, by a superseding and/or intervening cause.

    j.   Titan's claim is barred, in whole or in part, by accord and satisfaction.

    k.   Titan's claim is barred, in whole or in part, by license.

    l.   Titan's claim is barred, in whole or in part, by release.

    m.   Titan's claim is barred, in whole or in part, by mistake.

    n.   Titan's claim is barred, in whole or in part, by ratification.

    o.   Titan's claim is barred, in whole or in part, by failure to mitigate.

## IV.   SPECIAL EXCEPTIONS

4.      Pursuant to Rules 90 and 91 of the Texas Rules of Civil Procedure, Bell asserts the following special exceptions to Titan's Claim against Bell. "Special exceptions may be used to challenge the sufficiency of a pleading … If a party refuses to amend, or the amended pleading fails to state a cause of action, then summary judgment may be granted." *Friesenhahn v. Ryan*, 960 S.W.2d 656, 658 (Tex. 1998). Accordingly, Bell requests this Court to order Titan to re-plead to cure the following pleading defects:

A. <u>Breach of Contract</u>

5.      Bell specially excepts to Titan's claim for Breach of Contract in paragraphs 33-38 of Titan's Third-Party Claim because it fails to state the factual and legal basis for the cause and fails to give fair notice of the claim against Bell.

6.      In paragraph 37, Titan alleges Bell "breached the licensing provisions contained in the Bell MLA, which prohibits Bell from reselling, leasing, or otherwise transferring cutters and severing tools to any third parties except as to Schlumberger Limited." However, on its face, the Bell MLA only limits the re-selling, leasing, or otherwise transferring of specifically defined "Products." Within the APA and Bell MLA, "Products" is defined to be cutters and severing tools purchased by Titan from SCP, specifically cutters and severing tools covered by the Titan patents purchased from SCP in the APA. Neither WTBI nor Bell has re-sold, licensed, or otherwise transferred any "Products" as asserted by Titan. Indeed, this issue was resolved when the United States District Court for the Southern District of Texas entered a Final Judgment based on Titan's confirmation that WTBI's products do not infringe Titan's patents and therefore did not fall under the definition of "Products" as defined in the APA and MLA.[1] Therefore,

---

[1] *W.T. Bell International, Inc., et al v. Hunting Titan, et al.*, Civil Action No. 4:14-cv-2653, U.S. District Court for So. Dist. Texas – Houston Division, at Dkt. No. 37.

Titan's claim as presently pleaded is barred by *res judicata*. Titan has not alleged or given Bell notice of any facts that would show otherwise, specifically the "Products" sold by Bell in violation of any agreement.

7.      Further, Titan's claim is personal to Bell, as an individual.  Titan has not alleged that Bell has individually sold, licensed, manufactured, or otherwise transferred any goods or services, including any of the Products under the MLA and APA.  Titan has not alleged any facts that would make Bell, individually, liable for breach of the Bell MLA under any other theory. Bell cannot be liable for breach of the Bell MLA because WTBI is not a party to the Bell MLA, and is not an assignee of the Bell MLA. Titan admits in its pleadings that the Bell MLA is personal to Bell and is non-assignable. Titan's breach of contract claim therefore fails on its face, and Bell has no notice of the factual or legal basis for Titan's claim against him for breach of the MLA.

8.      Because Titan's Petition does not put Bell on notice of the factual and legal basis of its claim for Breach of the Bell MLA, Titan must re-pled or have its claim dismissed.

## V.      ATTORNEY'S FEES

9.      WTBI is entitled to recover any and all reasonable and necessary attorney's fees incurred as a result of Titan's conduct.

## VI.      PRAYER

10.      WHEREFORE, PREMISES CONSIDERED, Third-Party Defendant William T. Bell deny all allegations against him and pray that Third-Plaintiffs take nothing by their alleged cause of action against Third-Party Defendant, and for all further relief to which he may be justly entitled.

**THIRD-PARTY DEFENDANT'S ANSWER AND DEFENSES**

Respectfully submitted,

/s/*Terry B. Joseph*
Guy E. Matthews
Texas Bar No. 13207000
gmatthews@matthewsfirm.com
Terry Joseph
Texas Bar No. 11029500
tjoseph@matthewsfirm.com
Terry McCutcheon
Texas Bar No. 24039045
tmccutcheon@matthewsfirm.com
John D. Holman
Texas Bar No. 24082232
jholman@matthewsfirm.com
David M. Lodholz
Texas Bar No. 24070158
dlodholz@matthewsfirm.com
**MATTHEWS, LAWSON, MCCUTCHEON & JOSEPH PLLC**
2000 Bering Dr., Suite 700
Houston, Texas 77057
Telephone: (713) 355-4200
Facsimile:  (713) 355-9689

Bennie D. Rush
Texas Bar No. 17400425
bennie@bdrushlaw.com
**LAW OFFICES OF BENNIE D. RUSH, P.C.**
1300 11th Street, Suite 300
Huntsville, TX 77340

*ATTORNEYS FOR PLAINTIFF W.T. BELL INTERNATIONAL, INC.*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing document was served via email upon the following counsel on September 11, 2015:

Charles S. Baker
Matthew G. Reeves
Scarlett Collings
Ryan Homeyer
LOCKE LORD LLP
600 Travis, Suite 2800
Houston, TX 77002

Mance Michael Park
mpark@parkdurham.com
Park & Durham
1 Financial Plaza, Suite 530
Huntsville, Texas 77340

                                        */s/Terry B. Joseph*
                                        Terry B. Joseph

# EXHIBIT B.8

| CLERK OF THE COURT | PLAINTIFF OR ATTORNEY FOR PLAINTIFF |
|---|---|
| ROBYN FLOWERS, District Clerk<br>1100 University Ave, Suite 209<br>Huntsville, Texas  77340<br>(936) 436-4972 | CHARLES S. BAKER<br>600 TRAVIS, SUITE 2800<br>HOUSTON, TEXAS 77002<br>713-226-1200 |

### CAUSE NO.  1527367

### T H E S T A T E O F T E X A S
### CITATION FOR PERSONAL SERVICE

**NOTICE TO DEFENDANT:** "You have been sued.  You may employ an attorney.  If you or your attorney do not file a written answer with the clerk who issued this citation by Ten O'clock (10:00) A.M. on the Monday next following the expiration of twenty (20) days after you were served this citation and petition, a default judgment may be taken against you."

| | |
|---|---|
| T0: | DYNAENERGETICS HOLDING, GMBH- - - DEFENDANT<br>SERVED THROUGH THE TEXAS SECRETARY OF STATE, WITH ITS PRINCIPAL PLACE<br>OF BUSINESS AT KAISERSTRASSE 3, 53840 TROISDORF GERMANY |

**GREETINGS:** You are hereby commanded to appear before the **278th District Court** of Walker County, Texas, to be held at the Courthouse of said County in Huntsville, Walker County, Texas, by filing a written answer to Original Petition (OCA) at or before Ten o'clock (10:00) A.M. on the Monday next after the expiration of twenty (20) days after the date of service hereof, a copy of **DEFENDANTS HUNTING TITAN, LTD. AND HUNTING TITAN, INC.'S SECOND AMENDED ANSWER, SPECIAL EXCEPTIONS, COUNTERCLAIM, AND THIRD-PARTY CLAIM.** Which accompanies this citation in Cause Number 1527367, filed on the docket of said Court on this date: **April 07, 2015** , and styled,

### W.T. BELL INTERNATIONAL, INC. VS. HUNTING TITAN, LTD. AND HUNTING TITAN, INC.

The officer executing this writ shall serve the same according to the requirements of law, and the mandates thereof, and make due return as the law directs.

Issued and given under my hand and seal of said Court at Huntsville, Texas, this date: **October 21, 2015**

**ROBYN FLOWERS, DISTRICT CLERK**

WALKER COUNTY, TEXAS

By: ⟨signature⟩ Deputy

### S E R V I C E   O F   C I T A T I O N   R E T U R N

Came to hand on the _____ day of _____, 201___ , at _____ o'clock ____.M.
and, executed at _____, _____ County, Texas,  on the _____ day of
_____, 201___ at _____ o'clock ____.M., by delivering to the within-named  defendant, in person, a true copy of this Citation.

_____County, Texas

_____Constable/Deputy

**Verification of Return (If not served by Peace Officer)**

My name is_____ , my date of birth is _____ , and my address is _____
_____ , I declare under penalty of perjury that the foregoing is true and correct.

Executed in _____ County, State of _____ , on the _____ day of _____ , 20____

_____,Declarant

Certified Process Server ID #_____ , Expiration date_____

On this day personally appeared _____ known to me to be the person whose name is subscribed on the foregoing instrument and who has stated: upon penalty of perjury, I attest that the foregoing instrument has been executed by me in this cause pursuant to the TRCP. I am over the age of 18 years and I am not a party to or interested in the outcome of this suit, and have been authorized by the Walker County Courts to serve process.

Subscribed and sworn to me on this the_____ day of _____ , 20___.

_____

Notary Public

COPY

Cause No. 1527367

| | | |
|---|---|---|
| W.T. BELL INTERNATIONAL, INC. | § | IN THE DISTRICT COURT OF |
| | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| Plaintiff/Counter-Defendant, | § | |
| | § | |
| | § | |
| v. | § | |
| | § | |
| HUNTING TITAN, LTD. AND HUNTING TITAN, INC. | § | WALKER COUNTY, TEXAS |
| | § | |
| Defendants/Counter-Plaintiffs/Third-Party Plaintiffs, | § | |
| | § | |
| | § | |
| | § | |
| v. | § | |
| | § | |
| WILLIAM T. BELL, DYNAENERGETICS HOLDING, GMBH, AND DYNAENERGETICS USA, INC. | § | |
| | § | |
| Third-Party Defendants. | § | 278TH JUDICIAL DISTRICT |

_____

**DEFENDANTS HUNTING TITAN, LTD. AND HUNTING TITAN, INC.'S SECOND AMENDED ANSWER, SPECIAL EXCEPTIONS, COUNTERCLAIM, AND THIRD-PARTY CLAIM**
_____

Defendants Hunting Titan, Ltd. and Hunting Titan, Inc. (collectively, "Titan") file this Second Amended Answer, Special Exceptions, Counterclaim and Third-Party Claim:

## GENERAL DENIAL

1.      Titan generally denies each and every allegation set forth in Plaintiff W.T. Bell International, Inc.'s ("WTBI" or "Plaintiff") Original Petition (the "Petition"), and demand

1

strict proof thereof.  Titan reserves the right to amend this pleading before trial of this cause on the merits.

## AFFIRMATIVE DEFENSES

2.      Titan asserts the following affirmative defenses:

a.      WTBI's claims are barred, in whole or in part, by the statute of limitations.

b.      WTBI's claims are barred, in whole or in part, by laches.

c.      WTBI's claims are barred, in whole or in part, by estoppel and/or quasi-estoppel.

d.      WTBI's claims are barred, in whole or in part, by justification.

e.      WTBI's claims are barred, in whole or in part, by waiver.

f.      WTBI's claims are barred, in whole or in part, by its failure to state a claim upon which relief can be granted.

g.      WTBI's claims are barred, in whole or in part, because its alleged damages were caused and/or contributed to by third parties not under Titan's control.

h.      WTBI's claims are barred, in whole or in part, by a superseding and/or intervening cause.

i.      WTBI's claims are barred, in whole or in part, by the proportionate responsibility provisions of Chapter 33 of the Texas Civil Practices and Remedies Code.

j.      WTBI's claims are barred, in whole or in part, by privilege.

k.      WTBI's claims are barred against Hunting Titan, Ltd. because this entity has merged into Hunting Titan, Inc., and is therefore an improper party.

## SPECIAL EXCEPTIONS

3.      Pursuant to Rules 90 and 91 of the Texas Rules of Civil Procedure, Titan asserts the following special exceptions to the Petition.  *See Centennial Ins. Co. v. Comm. Union Ins. Co.*, 803 S.W.2d 479, 483 (Tex. App.—Houston [14th Dist.] 1991, no writ) (holding that "only after special exceptions have been sustained and a party has been given an opportunity to amend its pleadings may a case be dismissed for failure to state a cause of action").  Accordingly, Titan asks the Court to order WTBI to re-plead to cure its pleading defects:

**A.      Declaratory Judgment**

4.      Titan specially excepts to WTBI's claim for declaratory judgment in paragraphs 28 – 30 of the Petition because it fails to state a cause of action under Texas law and fails to give fair notice identifying the nature and issues surrounding this controversy. *See Moseley v. Hernandez*, 797 S.W.2d 240, 242 ("A special exception is the appropriate vehicle for urging that the plaintiff has failed to plead a cause of action . . .."); *see also Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 897 (Tex. 2000) ("Texas follows a 'fair notice standard' for pleading, which looks to whether the opposing party can ascertain from the pleading the nature and basic issues of the controversy and what testimony will be relevant").

5.      In paragraph 30, WTBI seeks a declaratory judgment from the Court "confirming that [Defendants do] not have any rights in WTBI's IP."  There is no justiciable conflict because Titan has not placed the question of whether it has any rights in "WTBI's IP" at issue.  Instead, WTBI unilaterally places the issue in controversy by alleging that Titan intentionally misrepresented that it had rights to WTBI's intellectual property in order to manufacture a claim for declaratory judgment. But the Petition does not give fair notice of what "WTBI IP" Titan supposedly claims it has rights in, or when, where, or to whom these

claims were made.  There is therefore no "uncertainty and insecurity with respect to rights, status, and other legal relations" that needs to be adjudicated.  *See* TEX. CIV. PRAC. & REM. CODE § 37.002(b).  As such, WTBI should be required to re-plead the allegations in paragraphs 28-30 because no controversy exists as to whether Titan has rights in "WTBI's IP," and WTBI has thereby failed to state a cause of action.

6.     WTBI should also be ordered to re-plead the allegations in paragraphs 28-30 because WTBI's request for declaratory judgment concerning Titan's rights to "WTBI's IP" is vague and fails to give fair notice of the specific intellectual property at issue.  WTBI's request also fails to specify which intellectual property rights Titan claims. Without further specification, this Court will be unable to adjudicate each party's rights, and Titan will be unable to seek proper evidence and testimony regarding this issue.  WTBI should be ordered to re-plead the allegations in paragraphs 28-30 to give Titan fair notice of its request for declaratory judgment.

**B.     Tortious Interference with Prospective Business Relations**

7.     Titan specially excepts to WTBI's claim for tortious interference with prospective business relations with Weatherford as set out in paragraphs 31-36 of the Petition because WTBI has done nothing more than plead its tortious interference claim in general terms. In paragraph 33, WTBI has not pled any facts in support of the allegation that Titan "intentionally interfered" with WTBI's prospective relationship with Weatherford, nor has WTBI pled any facts specifying what false and misleading statements were made by Titan, who made these statements, when and where these statements were made, and to whom these statements were made.  Further, WTBI fails to plead any facts in paragraph 35 supporting the conclusory allegation that Weatherford actually relied on any statements made by Titan when deciding not to move forward with the transaction at issue.  As such, WTBI should be ordered

to re-plead the allegations in paragraphs 31-36 to give Titan fair notice of its tortious interference with prospective business relations claim.

8.      Titan specially excepts to WTBI's claim for tortious interference with prospective business relations with Schlumberger as set out in paragraphs 37-39 of the Petition because WTBI has failed to plead all of the elements of this cause of action, and because WTBI has done nothing more than plead its tortious interference claim in general terms.  First, WTBI has failed to plead that there was a reasonable probability that it would have entered into a business relationship with Schlumberger, nor does WTBI plead any facts evidencing the same.  *See Richardson-Eagle, Inc. v. William M. Mercer, Inc.*, 213 S.W.3d 469, 475 (discussing the elements of tortious interference with prospective business relations).  Additionally, paragraph 37 is entirely devoid of facts supporting the allegation that Titan intentionally interfered with WTBI's prospective sale to Schlumberger, as well as facts specifying the contents of any false or misleading statements that Titan allegedly made, who made these statements, when and where these statements were made, and to whom these statements were made.  Further, paragraph 38 does not contain a single fact supporting the allegation that Schlumberger relied on any statements made by Titan when deciding not to move forward with the transaction at issue.  WTBI should be ordered to re-plead the allegations in paragraphs 37-39 so that it states each element of its claim for tortious interference with prospective business relations with Schlumberger, and so that Titan is put on fair notice of the same.

**C.      Unfair Competition**

9.      Titan specially excepts to WTBI's claim for unfair competition as detailed in paragraphs 41 – 48 of the Petition because WTBI fails to plead a viable cause of action.  Under Texas law, unfair competition is an *area of law* that encompasses various causes of

5

action, such as misappropriation, "palming off," and trade-secret law.  *See U.S. Sporting Products, Inc. v. Johnny Stewart Game Calls, Inc.*, 865 S.W.2d 214, 217 (Tex. App.—Waco 1993), *writ denied* (Mar. 30, 1994) (noting the difference between unfair competition as a general area of law and the specific causes of action that it subsumes).  Under federal law, the tort of unfair competition refers to the use of "another's good will with the public to gain a competitive advantage in the market place."  *Clark v. Dillard's, Inc.*, 2015 WL 1346099, at *8 (Tex. App.—Dallas Mar. 25, 2015, no. pet. h.) (citing *Nat'l Bank of Commerce v. Shaklee Corp.*, 503 F.Supp. 533, 541 (W.D. Tex. 1980)).  "Unfair competition" is also a term that is at times used interchangeably with the recognized tort of common law misappropriation.  *See BP Auto., L.P. v. RML Waxahachie Dodge, L.L.C.*, 448 S.W.3d 562, 572 (Tex. App.— Houston [1st Dist.] 2014), *reh'g overruled* (Dec. 2, 2014) (listing the elements of "unfair competition or common law misappropriation").

10.     WTBI fails to plead a cognizable cause of action for unfair competition.  In paragraph 42, WTBI claims that "Titan's actions are contrary to honest dealing and also contrary to honest practice in industrial and commercial matters, such that Titan's actions give rise to a civil cause of action."  WTBI subsequently repeats its allegations that Titan misled third parties in order to prevent WTBI from being able to compete with Titan in paragraphs 43 – 45.  The allegations in paragraphs 42 – 45 do not support a claim for unfair competition under Texas law because WTBI neither alleges that Titan used WTBI's good will with the public to gain a competitive advantage, nor that Titan misappropriated WTBI's product in competition with WTBI, thereby gaining a special advantage.  In paragraphs 46 – 47, WTBI alleges that Titan gained and used knowledge of WTBI's trade secrets through a "confidential relationship".   These allegations appear to attempt to plead a claim for trade secret

misappropriation, and any claim is thereby displaced by the Texas Uniform Trade Secrets Act ("TUTSA").   *See* TEX. CIV. PRAC. & REM. CODE § 134.007(a) ("this chapter displaces conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret").   In any event, WTBI's defective pleadings have left Titan guessing as to the precise cause of action that WTBI is attempting to assert.   Accordingly, WTBI has failed to state a viable claim, and should be ordered to re-plead this cause of action.

11.     Titan also specially excepts to WTBI's claim for unfair competition as detailed in paragraphs 41 – 48 of the Petition because WTBI has not pled facts that provide Titan fair notice of the issues surrounding the unfair competition claim.   Paragraphs 43 - 45 allege that Titan made misleading statements, but do not describe with specificity any statements that Titan allegedly made to mislead Weatherford and Schlumberger.   Namely, WTBI fails to explain what statements were made by Titan, who made the statements, when and where the statements were made, and to whom the statements were made.   Additionally, paragraphs 46 – 47 only make vague references to a "confidential relationship" between Titan and WTBI, but allege no specific facts supporting the existence of said relationship.   Paragraphs 46 – 47 also lack facts specifying the proprietary information that WTBI alleges Titan used to develop and manufacture its own products.   WTBI should be ordered to re-plead its unfair competition claim so that Titan is put on fair notice of the facts and circumstances surrounding this claim.

**D.     Negligent Misrepresentation**

12.     Titan specially excepts to WTBI's claim for negligent misrepresentation set forth in paragraphs 49 - 51 of the Petition because WTBI has only pled this cause of action in general terms.   Paragraph 50 alleges that Titan made statements to WTBI that misrepresented facts in a manner that was ultimately intended to benefit Titan's commercial position.   Instead of pleading specific facts detailing the misrepresentations that Titan allegedly made, WTBI

merely makes conclusory allegations that Titan "made statements to WTBI that misrepresented facts" during its business relationship with WTBI.  In paragraph 51, WTBI goes on to conclude that it relied to its detriment on these misrepresentations, and that this reliance caused it to lose "its potential sale to Schlumberger."  These statements are not backed by factual allegations.  Namely, WTBI fails to specify what misrepresentations were made by Titan, who made the representations, when and where these misrepresentations were made, and to whom these misrepresentations were made.  It follows that none of these statements from the Petition puts Titan on fair notice of the nature and issues surrounding this claim.  As such, WTBI should be ordered to re-plead its cause of action for negligent misrepresentation.

13.     Titan also specially excepts to WTBI's claim for negligent misrepresentation set forth in paragraphs 49  - 51 of the Petition because WTBI has failed to plead all of the requisite elements of negligent misrepresentation.  Specifically, WTBI fails to plead that the alleged misrepresentations were made *for the guidance of others*.  *See McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests*, 991 S.W.2d 787, 791 (Tex. 1999) (listing the elements of negligent misrepresentation).  Additionally, WTBI fails to plead that its reliance on Titan's alleged misrepresentations was *justifiable*.  *See id*.  Accordingly, WTBI should be ordered to re-plead its cause of action for negligent misrepresentation.

**E.     Confidential Relationship**

14.     Titan specially excepts to WTBI's claim for breach of confidential relationship set forth in paragraphs 52 – 57 of the Petition because WTBI has pled this cause of action in general terms and has failed to put Titan on notice of the nature and basic issues surrounding this claim.  To start, WTBI's Petition insinuates that Titan has somehow misused WTBI's trade secrets, but it fails to plead whether or not WTBI is asserting a claim under TUTSA.  If

WTBI is claiming misappropriation of trade secrets, then other claims in the Petition are likely displaced by operation of law under TUTSA. *See* TEX. CIV. PRAC. & REM. CODE § 134.007(a). If not, then the Petition fails to give fair notice of the legal basis for a claim of "breach of confidential relationship" that does not fall under TUTSA.

15.     Further, in paragraph 53, WTBI alleges that WTBI and Titan established a "confidential relationship" without pleading specific facts supporting the allegation that such a relationship ever existed. In paragraph 55, WTBI makes the conclusory allegation that Titan used the alleged confidential relationship to steal trade secrets and develop its own line of products. WTBI pleads no facts that support this claim, but rather states that "[o]n information and belief," the development of Titan's line of products was the result of Titan's misuse of WTBI's proprietary information. WTBI also fails to disclose the basis of this "confidential relationship." As such, Titan is not put on notice of precisely, or even generally, what proprietary information and/or trade secrets they are accused of misusing. WTBI should be required to re-plead its claim for breach of confidential relationship and allege facts that put Titan on notice of the nature and issues surrounding this claim.

16.     WHEREFORE, PREMISES CONSIDERED, Titan prays that WTBI takes nothing by way of this suit against them, that the Court grant judgment in Titan's favor, that Titan recovers its costs and attorney's fees expended in this cause, and that Titan recovers all other and further relief to which they may be entitled. Titan also respectfully requests that the Court sustain its Special Exceptions and order WTBI to amend its Original Petition. If the pleading defect is not one that WTBI can cure by amendment, Titan requests that the Court dismiss any incurable causes of action with prejudice.

## COUNTERCLAIM AND THIRD-PARTY CLAIM

17.     Hunting Titan, Inc. ("Titan") files this Counterclaim against W.T. Bell International, Inc. ("WTBI") and third-parties William T. Bell ("Bell"), DynaEnergetics Holding, GmbH ("Dyna Germany"), and DynaEnergetics USA, Inc. ("Dyna USA," and together with Dyna Germany, "Dyna").  Titan files this suit against WTBI and Bell because they have willfully and flagrantly breached their contractual obligations to Titan.  Titan files this suit against Dyna because they have tortiously interfered with the contracts between WTBI and Bell, on the one hand, and Titan, on the other hand. WTBI, Bell, and Dyna are illegally competing against Titan and selling products that they have no right to sell. In support of these claims, Titan respectfully shows the Court as follows:

## I.     DISCOVERY CONTROL PLAN

18.     Discovery in this case should be conducted under Level 2, Rule 190.3 of the Texas Rules of Civil Procedure.

## II.     PARTIES

19.     Counter-Plaintiff Hunting Titan, Inc. is a Texas corporation with its principal place of business located at 450 Gears Road, Houston, Texas 77067.

20.     Counter-Defendant W.T. Bell International, Inc. is a Texas corporation with its principal place of business located in Houston, TX.

21.     Third-Party Defendant William T. Bell is an individual who may be served with process at 8811 Emmott Road, Suite 1900, Houston, Texas 77040, or wherever he may be found.

22.     Third-Party Defendant DynaEnergetics Holding, GmbH is a private German company doing business in Texas with its principal place of business at Kaiserstrasse 3, 53840 Troisdorf Germany.  DynaEnergetics Holding, GmbH may be served with process

10

through the Texas Secretary of State pursuant to Texas Civil Practice & Remedies Code section 17.044 because DynaEnergetics Holding, GmbH (i) engages in business in Texas and the lawsuit arises from its business in Texas, (ii) does not maintain a regular place of business in Texas, and (iii) does not have a designated agent for service of process in Texas.

23.     Third-Party Defendant DynaEnergetics USA, Inc. is a Texas corporation and may be served with process through its registered agent for service of process, National Registered Agents, Inc., 1999 Bryan Street, Suite 900, Dallas Texas 75201.

### III.     JURISDICTION

24.     This Court has personal jurisdiction over Titan's claims because WTBI, Bell, and Dyna all do business in Texas.  Moreover, WTBI, Bell, and Dyna USA have multiple offices and employees in Texas.  WTBI, Bell, and Dyna all have minimum contacts in and/or with the State of Texas.

25.     This Court has subject matter jurisdiction because the amount in controversy exceeds this Court's minimum jurisdictional requirement.

### IV.     FACTUAL BACKGROUND

26.     Among other things, Titan's business involves the sale of tubular jet cutter tools used by oil field service companies and operators.  These service companies use explosive tubular jet cutters to cut tubular goods when oil companies encounter problems with a well, or when a well has to be plugged and abandoned after it stops producing.  Likewise, severing tools are used by oil field service companies for similar purposes when jet cutters, which are larger in diameter, cannot be used.

27.     This controversy centers around three agreements (the "Agreements") entered into between Titan's predecessor in interest, Titan Completion Products, Ltd. ("TCP"), WTBI's predecessor in interest, Specialty Completion Products, Ltd. ("SCP"), and Bell in

July 2002 relating to the sale of substantially all of the assets of SCP to TCP.  In particular, on or about July 15, 2002, TCP, SCP, and Bell executed an Asset Purchase Agreement (the "APA"), a true and correct copy of which is attached hereto as Exhibit A. On the same date, TCP entered into two separate Manufacturing and License Agreements - one with SCP (the "SCP MLA"), and one with Bell (the "Bell MLA"), true and correct copies of which are attached as Exhibit B, and Exhibit C, respectively.

28.     The APA, among other things, called for the sale to TCP of substantially all of the assets owned by SCP related to SCP's product line of tubular jet cutters and severing tools branded as the SPECTRA product line.[1]  It is undisputed that as a result of the APA, TCP became the owner of the all of the assets and technology owned by SCP with respect to SCP's line of tubular jet cutters and severing tools.

29.     Additionally, under Section 5.15 of the APA, SCP and Bell granted to TCP an exclusive right of first refusal for all new products developed by SCP, Bell, and their affiliates after July 15, 2002.  Importantly, the APA also contained a covenant against competition (Section 5.06) preventing SCP and Bell from directly or indirectly competing against TCP for a period of five years after the Manufacturing and License Agreements terminated, and prohibiting Bell and SCP from disclosing or using any of TCP's confidential information.

30.     In addition to the foregoing restrictions provided in the APA, both the SCP MLA and the Bell MLA granted a license to SCP to manufacture the SPECTRA products only to Schlumberger and no other third party.  The SCP MLA and Bell MLA further prohibited SCP from reselling or transferring these products except as to Schlumberger.

31.     Upon information and belief, in August 2002 Mr. Bell founded WTBI.  He, along with along his colleague James G. Rairigh, became the primary owners of WTBI and

---

[1] *See* Exhibit A.

through today have been principally responsible for managing its day-to-day operations, including the design and manufacturing of the SPECTRA line of tubular jet cutters and severing tools sold by Titan.  Originally, the plan was for SCP to continue to provide the SPECTRA tubular jet cutters and severing tools to TCP for six months after closing (July 15, 2002) and, thereafter, TCP would take over SCP's operations.  Instead, both parties agreed that SCP/WTBI would continue to manufacture those products past the six-month period.  Eventually, in July 2003, WTBI took over SCP's manufacturing operations, and also purchased all of SCP's remaining assets, thereby becoming the successor-in-interest to SCP and its duties and obligations under both the APA and the SCP MLA.

32.    Over the course of the next eleven (11) years, WTBI acted as and became SCP's successor in interest.  WTBI never made any representation implying that it and SCP were distinct and separate entities.  Rather, WTBI and TCP (and later Titan) carried on such that everything was "business as usual" between the parties.  WTBI continued to supply Titan with SCP products, and Titan continued to pay WTBI.  In fact, WTBI was paid millions of dollars for the manufacture and sale of those products under the name "WTBI," including royalty payments under the APA that SCP was originally entitled to receive.  At no point in time did WTBI ever claim that is was not the successor-in-interest to SCP until very recently, when a dispute arose between the parties that resulted in WTBI and Bell filing a lawsuit against Titan in Federal Court in Houston on September 15, 2014.  Due to this dispute, Titan ceased purchasing WTBI products in early 2015, and instead began selling its own proprietary line of tubular jet cutter tools known as "SPECTRA2".

33.    In May, 2015, WTBI and an industrial explosives company, Dyna USA (a subsidiary of Dynamic Materials Corporation), announced that the two parties had entered

13

into a distribution agreement (the "Distribution Agreement") under which Dyna became the exclusive distributor of WTBI's tubular jet cutter and severing tool products, in clear violation of Titan's right of first refusal provided for under Section 5.15 of the APA.  Additionally, by entering into the Distribution Agreement, both WTBI and Bell have violated the terms of the APA's covenant against competition and confidentiality provision, as WTBI and Bell will be acting in direct competition with Titan.  WTBI and Bell are also in violation of the SCP MLA and Bell MLA by allowing Dyna to resell WTBI's products.  By agreeing to become WTBI's exclusive distributor, which caused direct breach of the APA, SCP MLA, and Bell MLA, Dyna has tortiously interfered with the APA, SCP MLA and Bell MLA.

## V.      CONDITIONS PRECEDENT

34.     All conditions precedent to bringing this suit and to obtaining relief sought herein have been satisfied or have occurred.

## VI.     CAUSES OF ACTION

### A.     *Breach of Contract - Bell*

35.     Titan repeats and re-alleges all of the preceding paragraphs as if set forth fully herein.

36.     By executing both the APA and the Bell MLA, Bell and Titan entered into enforceable contracts.

37.     Titan is a proper party to sue for breach of the APA and the Bell MLA.

38.     Titan has performed, tendered performance of, or is otherwise excused from performing all of its requisite contractual obligations under the Agreements.

39.     By entering into the exclusive Distribution Agreement with Dyna, Bell breached the covenant against competition, right of first refusal, and confidentiality provisions of the APA.  Bell also breached the licensing provisions contained in the Bell MLA, which

14

prohibits Bell from reselling, leasing or otherwise transferring tubular jet cutters and severing tools to any third parties except as to Schlumberger Limited.

40.     Bell's breach of the APA and Bell MLA has caused Titan injury.

## B.     *Breach of Contract - WTBI*

41.     Titan repeats and re-alleges all of the preceding paragraphs as if set forth fully herein.

42.     By executing both the APA and the WTBI MLA, WTBI and Titan entered into enforceable contracts.

43.     Titan is a proper party to sue for breach of the APA and the WTBI MLA.

44.     Titan has performed, tendered performance of, or is otherwise excused from performing all of its requisite contractual obligations under the Agreements.

45.     By entering into the exclusive Distribution Agreement with DynaEnergetics, WTBI breached the covenant against competition, right of first refusal, and confidentiality provisions included in the APA.  WTBI also breached the licensing provisions contained in the WTBI MLA, which prohibits WTBI from reselling, leasing or otherwise transferring jet tubular cutters and severing tools to any third parties except as to Schlumberger Limited.

46.     WTBI's breach of the APA and WTBI MLA has caused Titan injury.

## C.     *Attorney's fees*

*47.*     In addition to damages caused by WTBI and Bell's breaches of contract, Titan is also entitled to recover any and all reasonable and necessary attorney's fees incurred as a result of WTBI and Bell's conduct.

## D.     *Injunctive Relief*

48.     Titan repeats and re-alleges all of the preceding paragraphs as if set forth fully herein.

15

49.     By the unlawful conduct of WTBI and Bell, Titan has suffered and continues to suffer immediate and irreparable harm that cannot be adequately compensated by an award of damages.

50.     Titan is entitled to obtain injunctive relief to force WTBI and Bell to refrain from continuation of such unlawful conduct.

51.     Titan has established a probable right to the relief sought.

52.     By the actual and potential unlawful conduct of WTBI and Bell, Titan will suffer immediate and irreparable harm that cannot be compensated by an award of damages in that Bell and WTBI will disclose Titan's confidential information, Titan will lose the exclusive use of its confidential information – and consequently the value and potential value of this information will be permanently harmed, WTBI and Bell will make use of Titan's confidential information to Titan's detriment and to improperly compete with Titan, WTBI and Bell will destroy goodwill developed by Titan with its customers, and Titan will suffer monetary damages that are difficult if not impossible to quantify.  In addition, if Bell and WTBI are allowed to continue to compete with Titan in violation of their non-compete obligations, Titan will suffer immediate and irreparable harm that cannot be compensated by an award of damages.  WTBI and Bell will destroy the goodwill developed by Titan and its customers, and Titan will suffer monetary damages that are difficult if not impossible to quantify.

53.     Titan is entitled to a temporary and permanent injunction pursuant to Texas Civil Practice and Remedies Code §§ 65.011(1)-(2).  A court should grant an injunction to preserve the subject matter of the suit until it is resolved by a judgment.  *City of Dallas v. Wright*, 36 S.W.2d 973, 975 (Tex. 1931); *see also Vannerson v. Vannerson*, 857 S.W.2d 659,

674 (Tex.App.—Houston [1st Dist.] 1993, writ denied).   Titan requests an injunction to prevent WTBI and Bell from continuing to improperly compete with Titan and its affiliates, and to prevent WTBI and Bell from benefitting from any disclosure and use of Titan's confidential information.

54.     Unless Bell and WTBI are restrained and enjoined from undertaking and maintaining its conduct and activities described above, Titan will continue to suffer irreparable harm for which Titan has no adequate remedy at law.   Accordingly, Titan requests that the Court immediately and temporarily restrain Bell, WTBI, and all those acting in concert with them from:

> a.     engaging or investing in, or owning, controlling, managing, or participating in the ownership, control or management of, or rendering services or advice to, any business engaged, or which WTBI and Bell reasonably know is undertaking to be engaged, in the design, development, manufacture, marketing, and sale of tubular jet cutters and severing tools (the "Business");
>
> b.     soliciting, or assisting in the solicitation of, any person to whom WTBI sold or provided any products or services related to the Business on, or during the two (2) year period prior to, the date of the closing, for the purpose of obtaining the patronage of such person for the purchase of any products or services competitive with the Business;
>
> c.     soliciting, or assisting in the solicitation of, any person employed by Titan (as an employee, independent contractor or otherwise), to terminate such employment, whether or not such employment is pursuant to a contract and whether or not such employment is at will; and
>
> d.     using, disclosing or revealing to any person any confidential information of Titan's.

55.     Upon information and belief, if WTBI and Bell are allowed to continue competing against Titan, Titan will continue to be adversely impacted until it will be very difficult, if not impossible, to restore the status quo.

56.     The harm done by issuing the injunctive relief prayed for herein does not outweigh the substantial loss to be caused by the continued unlawful acts of WTBI and Bell.

57.     The injunctive relief prayed for herein will do no more than restore the parties to the status as it existed prior to WTBI's and Bell's actual and threatened unlawful conduct.

58.     WTBI's and Bell's unlawful conduct is clearly actionable and the injunctive relief prayed for herein is reasonably calculated to abate such conduct.

59.     Once Titan's confidential information is used and disclosed, there is no adequate remedy at law that could address such damages.  The losses to Titan cannot be presently ascertained or readily calculated.

60.     In order to preserve the status quo and the rights of Titan during the pendency of this action, WTBI and Bell should be cited to appear and show cause why they should not be enjoined, during the pendency of this action, from engaging in any of the conduct described above.

61.     At this time, Titan respectfully requests the following relief:

    a.     A Temporary Restraining Order be issued, restraining WTBI and Bell and any and all others acting in concert with them from engaging in any of the conduct discussed above;

    b.     A Temporary Injunction be issued, after notice to WTBI and Bell and an evidentiary hearing, restraining WTBI and Bell from directly or indirectly engaging in any of the actions discussed above during the pendency of this case; and

    c.     After a final trial of this cause, WTBI and Bell and any and all others acting in concert with them be permanently enjoined from engaging in any of the conduct described above.

62.     Titan is willing and able to post bond in this matter.

### E.     *Tortious Interference with Contract*

63. Titan repeats and re-alleges all of the preceding paragraphs as if set forth fully herein.

64. Titan had a valid contract both with WTBI and Bell. By executing both the APA and the Bell MLA, Bell and Titan entered into enforceable contracts. By executing both the APA and the WTBI MLA, WTBI and Titan entered into enforceable contracts.

65. By entering into a distributorship agreement with WTBI and Bell, Dyna, knowingly, willfully and tortiously interfered with Titan's existing contractual rights. In particular, Dyna tortiously interfered with the covenant against competition, right of first refusal, and confidentiality provisions included in the APA, as well as the licensing provisions contained in the WTBI MLA and the SCP MLA.

66. Dyna's tortious interference with Titan's contractual rights has proximately caused Titan actual damage in the form of lost benefit of the bargain as well as economic injury.

67. As a result of Dyna's tortious conduct and damage to Titan, Titan seeks exemplary damages from Dyn.

## VII.   JURY DEMAND

68. Titan demands a jury trial and has paid the required fee concurrently with the filing of this Petition.

## VIII.   PRAYER FOR RELIEF

69. Titan prays that the Court grant its application for Permanent Injunction, and award a judgment for the following:

    a. Its actual damages;

    b. Exemplary damages;

    c. Prejudgment interest at the highest rate allowed by law;

19

d.      Post-judgment interest at the highest rate allowed by law;

e.      Costs;

f.      Attorney's fees; and

g.      All other relief to which it may be entitled.

Respectfully Submitted,
By:   /s/ Charles S. Baker

    Charles S. Baker
    Attorney in Charge
    cbaker@lockelord.com.
    Texas State Bar No. 01566200
    Matthew G. Reeves
    mreeves@lockelord.com
    Texas State Bar No. 00791498
    Scarlett Collings
    scarlett.collings@lockelord.com
    Texas State Bar No. 24001906
    Ryan Homeyer
    rhomeyer@lockelord.com
    Texas State Bar No. 24092534
    LOCKE LORD LLP
    600 Travis, Suite 2800
    Houston, TX 77002
    Telephone: (713) 226-1200
    Facsimile:  (713) 223-3717

    Mance Michael Park
    mpark@parkdurham.com
    Texas State Bar No. 15469500
    Park & Durham
    1 Financial Plaza, Suite 530
    Huntsville, Texas 77340
    Telephone: (936) 291-6660

**ATTORNEYS FOR HUNTING  TITAN, LTD.
AND HUNTING TITAN, INC.**

<u>**CERTIFICATE OF SERVICE**</u>

   I hereby certify that a true and correct copy of the above and foregoing document was served on counsel of record on October 20, 2015 via the electronic filing manager, or, if the email address of counsel is not on file with the electronic filing manager, as indicated below: ***Via Email***

Guy E. Matthews
Terry Joseph
Terry McCutcheon
John D. Holman
David M. Lodholz
Matthews, Lawson, McCutcheon & Joseph PLLC
2000 Bering Dr., Suite 700
Houston, Texas 77057

Bennie D. Rush
bennie@bdrushlaw.com
Law Offices of Bennie D. Rush, P.C.
1300 11th Street, Suite 300
Huntsville, Texas 77340

           /s/ Ryan Homeyer
          Ryan Homeyer

# EXHIBIT B.9

Cause No. 1527367

| | | |
|---|---|---|
| W.T. Bell International, Inc., | § | **IN THE DISTRICT COURT OF** |
| | § | |
| Plaintiff, | § | |
| | § | **WALKER COUNTY, TEXAS** |
| v. | § | |
| | § | |
| Hunting Titan, Ltd. and Hunting Titan, Inc., | § | **278th JUDICIAL DISTRICT** |
| | § | |
| Defendants/Counter-Plaintiffs/Third-Party Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | |
| William T. Bell, | § | |
| | § | |
| Third-Party Defendant. | § | |

---

## PLAINTIFF W.T. BELL INTERNATIONAL, INC.'S FIRSTAMENDED PETITION AND REQUEST FOR TEMPORARY AND PERMANENT INJUNCTION

---

TO THE HONORABLE COURT:

Plaintiff W.T. Bell International, Inc. ("Plaintiff" or "WTBI") complains of Defendants, Hunting Titan, Ltd. and Hunting Titan, Inc. (collectively "Titan" or "Defendants") through this First Amended Petition, and for its causes of action would respectfully show the following:

### I.   DISCOVERY CONTROL PLAN

1.      Plaintiff intends that discovery be conducted under Level 2 of the Texas Rules of Civil Procedure Rule 190.2 and affirmatively pleads that this suit is not governed by the expedited-actions process in Rule 169  because Plaintiff seeks damages in excess of $100,000.

## II.   PARTIES

2.      Plaintiff/Counter-Defendant, W.T. Bell International, Inc., is a Texas corporation whose principal place of business is located at 2534B FM 1375 E., Huntsville, Texas 77340.

3.      Defendant/Counter-Plaintiff, Hunting Titan, Ltd., has a place of business at 2 Northpoint Drive, Suite 400, Houston, Texas 77060-3236.

4.      Defendant/Counter-Plaintiff, Hunting Titan, Inc., does business as "Hunting Titan," and has a place of business at 450 Gears Road, Suite 200, Houston, Texas 77067. Hunting Titan's office in charge of dealing with issues related to Plaintiff is located at 143 Hill County Rd. 4361, Milford, Texas 76670, in Ellis County, Texas.  Hunting Titan's Principal Place of Business according to its Franchise Tax Reports is in Pampa, Gray County, Texas.

5.      Defendants Hunting Titan, Inc. and Hunting Titan, Ltd. have been served through their registered agent, CT Corporation System, 1999 Bryan St., Suite 900, Dallas, TX 75201.

6.      Third-Party Defendant William T. Bell is an individual residing in Texas, who can be found at 2534B FM 1375 E., Huntsville, Texas 77340.

## III.   JURISDICTION

7.      This Court has personal and subject matter jurisdiction over the case because Defendants have conducted business in this State and because the amount in controversy is in excess of the minimum jurisdictional limits of the Court and in excess of $1,000,000.

## IV.   VENUE

8.      Venue is proper in Walker County, Texas because all or a substantial part of the events giving rise to the claim occurred in Walker County. TEX. CIV. PRAC. & REM. CODE § 15.002(a)(1). Furthermore, Defendants' Motion to Transfer Venue was denied by this Court.

**PLAINTIFF'S FIRST AMENDED PETITION AND REQUEST FOR INJUNCTION**

## V.    FACTS

### A. Background

9.      WTBI's business in Walker County, Texas is designing, manufacturing, selling, and testing of jet cutters, severing tools, and firing heads used in oil field applications by a wide variety of oil field service companies and operators. WTBI tests and markets its jet cutters, severing tools, and firing heads from its Walker County location.

10.      Oil and gas wells owned by operators (e.g., Chevron, Exxon Mobil, etc.), employ service companies (e.g., Schlumberger, Weatherford, etc.) who use explosive jet cutters to cut tubulars. The jet cutters are generally lowered via wireline inside the tubular and detonated at the appropriate depth. The cuts are precise and saw-like in nature.  Jet cutters are used either when there is a problem in the well, or after the well stops producing and has to be plugged and abandoned.  Jet cutters are typically sold in a range of sizes depending upon the application.

11.      When larger diameter jet cutters cannot be used, due to well restrictions, service companies use explosive severing tools to sever down-hole tubulars. Like jet cutters, the severing tools are generally lowered via a wireline inside the tubular and detonated at the appropriate depth.  Severing tools have much larger explosive loads and tend to sever or blow the pipe in two rather than make a clean cut like a jet cutter.  Severing tools are used either when there are problems in the well or after the well stops producing and has to be plugged and abandoned.

12.      Until recently, Titan had been one of WTBI's primary customers and distributors of its jet cutters and severing tools. Titan has been a WTBI customer and distributor since at least 2003, when WTBI was formed. All Titan orders from WTBI were made to Walker County, Texas, and WTBI fulfilled all sales to Titan in Walker County, Texas.

**PLAINTIFF'S FIRST AMENDED PETITION AND REQUEST FOR INJUNCTION**

13.     Prior to WTBI's formation and its subsequent receipt of the appropriate ATF[1] licenses, Titan purchased its jet cutters and severing tools from Specialty Completion Products, Ltd. ("SCP"). In or around July of 2002, Titan's predecessor, Titan Completion Products, Ltd., entered into an Asset Purchase Agreement (the "APA") with SCP and its president, William T. Bell, to purchase substantially all of SCP's assets. Those assets included two specifically listed patent applications, SCP's working files, and inventory. The APA calls for the winding up of SCP's operations, which would be taken over by Titan within six months, including the manufacture of jet cutters and severing tools.

14.     On September 28, 2003, WTBI agreed to purchase specific assets and inventory from SCP totaling an amount of $4,868, but did not assume any of its obligations or liabilities. WTBI and SCP existed concurrently until SCP was dissolved in 2006. WTBI is not a successor in interest to SCP.

**B.  WTBI Owned Technology**

15.     In mid-2003, WTBI began manufacturing jet cutters and severing tools for and at the request of Titan because Titan did not have the capability to manufacture jet cutters and severing tools itself.

16.     WTBI has developed unique designs for jet cutters (for both tubing and casing) and severing tools, which are described and claimed in U.S. Patent Application Nos. 13/506,691, 14/120,528 and 14/605,829 and U.S. Patent No. 8,939,210 (the "WTBI Applications and Patent").

17.     WTBI applied for its U.S. Bureau of Alcohol, Tobacco, Firearms and Explosives High Explosives Manufacturing License, which it secured in June 2003. WTBI then began

---

[1] The United States Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") regulates the explosives contained within the relevant jet cutters, severing tools and firing heads.

selling its Jet Cutters and Severing Tools to Titan in the second half of 2003. Titan and WTBI had no written license agreement.

18.     WTBI is competitive in the field of jet cutters and explosive severing tools relating to the oil and gas industry because it is innovative and solves its customers' problems by designing, manufacturing, and using innovative and unique formulas, methods, processes and/or business information relating to technical aspects of the products. This effort, however, requires a significant investment of time, money, and experience.

19.     WTBI has made these investments as part of the cost and benefit of competing fairly in the marketplace and reasonably expects to reap the benefits of these investments. WTBI has spent a substantial amount of time, money, and resources in developing its confidential and proprietary information. This information is proprietary and exclusively the property of WTBI. Others should not be allowed to benefit from the costs borne by WTBI to take shortcuts and enrich themselves unfairly by using and/or disclosing WTBI's trade secrets without WTBI's consent. However, Titan has done just that and has published WTBI's trade secret information.

20.     In the competitive industry occupied by WTBI and Titan, the proprietary and confidential information that is created and maintained by WTBI for its business, in general and for each product in particular, from inception and design to development, testing, sale, and delivery is the mainstay of its business. The secrecy of WTBI's trade secrets, and the goodwill derived from such secrets, are valuable assets, and once disclosed, the value cannot ever be fully recovered. If WTBI's trade secrets and confidential and proprietary information are misappropriated or disseminated, WTBI will have no way to recover that information from any third party that receives it.

21.     WTBI does not publicly disclose its confidential and proprietary drawings which contain formulas, methods, processes and/or business information (collectively, "Trade Secret Drawings") that have been misappropriated by Titan. To the extent such information is disclosed, it is disclosed only within WTBI and/or to persons who are obliged to refrain from disclosing the information to others without WTBI's authorization.

22.     WTBI protects its Trade Secret Drawings by limiting third party access to its facilities, enabling only authorized individuals to receive the information, marking relevant documents, drawings, and formulas as "Confidential" and "Trade Secret," and/or restricting disclosure of the information. Titan had access to the WTBI's Trade Secret Drawings in the course and scope of its responsibility as a distributor of WTBI products. Titan's access to WTBI's Trade Secret Drawings was subject to common law duties not to disclose WTBI's Trade Secret Drawings or use that information to compete with WTBI. *Sharma v. Vinmar Int'l., Ltd.*, 231 S.W.3d 405, 424-25 (Tex. App.-Houston [14th Dist.] 2007, no pet.).

23.     While Titan had access to the Trade Secret Drawings, Titan did not have authority to access, obtain, possess, or disclose that information for its own use, the use of others, or benefit from that information in any manner not contemplated by its role as a product distributor for WTBI. Titan has, in spite of its duties and lack of authority, used the confidential information it obtained to both WTBI's detriment and Titan's own benefit.

24.     WTBI is constantly developing new products and improvements to the existing jet cutters and severing tools. These "WTBI Developments" are wholly owned, operated, developed, conceived of, and reduced to practice by WTBI. WTBI developed all of its technologies in Walker County, Texas.

**PLAINTIFF'S FIRST AMENDED PETITION AND REQUEST FOR INJUNCTION**

25.     Until November 2014, Titan continued to order and distribute WTBI's products. At all times, Titan knew and was actually or constructively aware that WTBI had no contractual obligations to Titan with respect to new product developments or new technologies that WTBI developed and provided to Titan, including, specifically and without limitation, know-how leading to new products, designs, and/or manufacturing techniques.

26.     Each order that Titan made to WTBI for WTBI's jet cutters or severing tools was made with knowledge that Titan was ordering a WTBI product for distribution.

27.     Titan never compensated WTBI for any new product development or marketing beyond buying products from WTBI. Titan wrote WTBI in 2012 and requested a meeting to discuss a possible purchase of the product improvements WTBI has made since 2002.

## C.  Titan's Tortious Interference and Unfair Competition

28.     In 2014, Weatherford approached WTBI about buying its business. Weatherford's interest was clear from the beginning, as it and WTBI entered a non-binding letter of intent and 90-day option period for Weatherford to conduct due diligence.  The letter of intent valued the business, including the WTBI Applications and the WTBI Developments, at $23 Million. *See* Exhibit A, Weatherford's Letter of Intent. Weatherford's due diligence included several meetings with Titan. After those meetings, and because of misrepresentations made by Titan at those meetings, Weatherford decided not to proceed with its efforts to purchase WTBI. Titan misrepresented to Weatherford that a sale to Weatherford would affect intellectual property rights owned by Titan. Titan intended to interfere with the prospective business relations with Weatherford in order for Titan to make sales of jet cutters and severing tools to Weatherford.

29.     Prior to Weatherford declining to purchase WTBI, in at least April 2014, Titan claimed that it "would consider waiving" its rights under agreements with WTBI.  Titan and WTBI have no agreements.

30.     With no authority for doing so, Titan demanded access to "all inventions conceived by Mr. Bell or any other W.T. Bell International principal or employee prior to the date of sale to Weatherford" in the event Weatherford bought WTBI.

31.     Titan demanded a "non-exclusive, perpetual, irrevocable, fully paid-up license to make, use, have made, sell, offer for sale, import, and export any invention or component of an invention claimed or described in any listed patent or as part of any listed patent" related to technology to be purchased by Weatherford.

32.     Titan also demanded "disclosure and license of all working files, trade secrets, and know-how related to the WTBI jet cutter products."

33.     Titan misrepresented to Weatherford that if Weatherford bought anything from WTBI, Titan would have an equal or greater right to it than would WTBI and Weatherford. Titan does not have any rights to assert against WTBI products, technologies, trade secrets, know-how or working files.

34.     Titan intentionally, or with reckless disregard for WTBI's rights, asserted rights it does not have with regard to WTBI, with the intention of blocking the sales of products and the company. As a direct result of Titan's unlawful and tortious communications, and only because of Titan's misrepresentations, Weatherford withdrew from the negotiations with WTBI. As a direct result of Titan's interference, WTBI suffered actual damage.

**PLAINTIFF'S FIRST AMENDED PETITION AND REQUEST FOR INJUNCTION**

### D. Titan's Misappropriation of WTBI's Trade Secrets

35.     WTBI provided certain information to Titan containing WTBI trade secrets relating to its jet cutters and severing tools. Specifically, WTBI provided Titan with its Trade Secret Drawings containing confidential information relating to WTBI jet cutters. These trade secrets are owned by WTBI. Titan had a duty to maintain the secrecy of WTBI's trade secrets. WTBI clearly marked each drawing as confidential and trade secret, and instructed the recipient not to disclose, use, or reproduce without prior written approval from WTBI, Inc.

36.     WTBI recently discovered that Titan published the drawings containing WTBI trade secrets on its website. *See* Exhibit B, WTBI Drawings Marked Trade Secret.[2] On September 28, 2015, Plaintiff informed Titan of its improper affiliation or association with WTBI and its use of WTBI trade secrets. *See* Exhibit C, Letter to Titan. Titan removed the identified drawings containing WTBI trade secrets, but refused to remove any other information or documentation relating to WTBI. *See* Exhibit D, Titan's Response; Exhibit E, October 6 Email; Exhibit F, Titan's October 7 Email.

37.     WTBI has suffered irreparable injury because of Titan's misappropriation of WTBI's trade secrets and Titan's public disclosure of these trade secrets.

### E. Titan's Unfair Competition by Palming Off

38.     In addition to WTBI's Trade Secret Drawings , Titan has posted, and continues to post, information relating to WTBI products, including WTBI applications to the Department of Transportation, creating the appearance of an association or affiliation between Titan and WTBI products, thereby palming off its products as WTBI products.

---

[2] Exhibit B is filed under seal due to the sensitive nature of the trade secrets and information contained on the drawings. The drawings filed under seal were found on Titan's website at www.hunting-intl.com/media/1110355/Cutters%20EX2000090136%202013-01-03.pdf

**PLAINTIFF'S FIRST AMENDED PETITION AND REQUEST FOR INJUNCTION**

39.     Titan is using WTBI's products and product information to benefit from WTBI's goodwill relating to its company and its products. WTBI has created tremendous goodwill with all customers in the jet cutter industry by designing, developing, and manufacturing the best and most efficient cutters on the market.

40.     Titan has refused to remove the WTBI product from its website. *See* Exhibit G, Titan's Jet Cutter Chart. However, Titan does not sell WTBI products and has no reason to have WTBI products on its website other than to unfairly compete, draw a false association or affiliation with WTBI, palm off their products as being WTBI products, and/or interfere with WTBI's ongoing business by falsely representing to the public an affiliation of Titan's products with WTBI.

41.     The product numbers listed on Titan's Jet Cutter Chart can be traced back to WTBI through the product number, the EX Number, and the CE Number. *See* Exhibit H, Titan's Shipping Classification Chart beginning on p. 14; Exhibit I, Department of Transportation Application; Exhibit J, Application for CE No. to the National Institute for Industrial Environment and Risk ("INERIS").[3]

## VI.     CAUSES OF ACTION

### A.     *Declaratory Judgment that WTBI is not a successor in interest to the APA or MLAs*

42.     Plaintiff repeats and re-alleges all preceding paragraphs as if set forth fully herein.

43.     In August 2002, WTBI was incorporated in the State of Texas, and is separate, independent, and distinct from SCP.

44.     WTBI purchased specific assets of SCP but did not assume any liabilities or obligations held by SCP. WTBI and SCP existed as separate legal entities and had separate

---

[3] Exhibits I and J can be publicly found on Titan's website at:
    www.hunting-intl.com/media/1967056/Cutters%20EX2000090136%20revised%202015-10-07.pdf.

**PLAINTIFF'S FIRST AMENDED PETITION AND REQUEST FOR INJUNCTION**

ownership for at least four years prior to SCP dissolution. Titan has and continues to assert that the APA applies to WTBI, including by attempting to enforce obligations from the APA against WTBI and potential purchasers of WTBI's business.

45.     WTBI has not expressly agreed to be bound by any of SCP's liabilities or obligations and is therefore not a successor in interest to SCP. WTBI has no rights or obligations under the APA or Manufacturing and License Agreement between Titan and SCP or Mr. Bell, individually. WTBI is not required to offer Titan any right of first refusal.

46.     Without a declaratory judgment stating that WTBI is not a successor in interest to SCP, Titan will continue to interfere with prospective and actual business relations by falsely asserting that it has rights a right of first refusal to any products sold by WTBI.

### B.     Declaratory Judgment that Titan has no Rights in WTBI's Intellectual Property

47.     Plaintiff repeats and re-alleges all preceding paragraphs as if set forth fully herein.

48.     Titan misrepresented to Weatherford in at least April 2014 that it had rights in WTBI's intellectual property, specifically with respect to the jet cutters. Among other things, Titan demanded access to all technologies as well as a license to use all technologies "conceived by Mr. Bell or any other W.T. Bell International principal or employee prior to the date of sale to Weatherford;" and "disclosure and license of all working files, trade secrets, and know-how related to the WTBI jet cutter products." Weatherford declined to purchase WTBI due to a "difference of opinion regarding some IP shared between Hunting Titan and WTBI."

49.     WTBI and Titan do not share intellectual property, nor does Titan have any rights to any products or inventions created or developed by WTBI.  Titan intentionally misrepresented that it had agreements in place with WTBI and rights in WTBI's intellectual property to interfere with the sale of WTBI to Weatherford.

50.     Without a declaratory judgment confirming that Titan does not have any rights in WTBI's intellectual property, including specifically the WTBI patents and patent applications and WTBI Developments, Titan will continue to interfere with prospective and actual business relations by falsely asserting rights it does not have.

## C.     *Tortious Interference with Prospective Business Relations*

51.     Plaintiff repeats and re-alleges all preceding paragraphs as if set forth fully herein.

52.     There was a reasonable probability that WTBI would have entered into a business relationship with Weatherford, as evidenced by the letter of intent and good faith negotiations between the parties, prior to Titan's involvement.

53.     Titan intentionally interfered with the relationship by making false, misleading, and material misrepresentations of fact to Weatherford related to, among other matters stated herein, Titan's rights to WTBI's intellectual property and rights under non-existent agreements between WTBI and Titan with the intent that Weatherford rely on those statements and not move forward with the purchase of WTBI.

54.     Titan's conduct was independently tortious or unlawful based upon the above intent to misrepresent material facts to Weatherford for the purpose of inducing Weatherford to rely on the statements and not move forward with the transaction.

55.     The interference proximately caused WTBI's injury, as Weatherford did in fact rely on the statements and did not move forward with the transaction following the misrepresentations.

56.     As a result of the interference, WTBI suffered actual damage or losses of not less than $23 Million.

57.     WTBI is entitled to recover the damages cause by Titan due to the intentional interference with WTBI's prospective business relationships with Weatherford.

**D.      Unfair Competition – Palming Off**

58.     Plaintiff repeats and re-alleges all preceding paragraphs as if set forth fully herein.

59.     Titan is liable for unfairly competing by palming off its products as those of WTBI's. Titan has refused to remove WTBI's products, shipping certifications, and other information from its website and marketing material. WTBI has created tremendous goodwill associated with its products in the industry. Titan is unfairly competing with WTBI by using WTBI's goodwill to gain a competitive advantage in the market.

60.     Titan's use of WTBI's information is likely to mislead customers into believing that Titan's products emanates or has been endorsed by or somehow connected to WTBI. Titan's palming off of its products as WTBI's products is likely to cause confusion to the public.

61.     Titan's unfair competition by palming off its products as WTBI's has caused, and continues to cause, injury or damages to WTBI in an amount to be proven at trial, and/or benefitted Titan by using WTBI's goodwill. WTBI will be irreparably harmed if Titan is allowed to continue or further benefit from their efforts. Accordingly, Titan must be temporarily and permanently restrained and/or enjoined.

**E.      Texas Statutory Trade Secret Misappropriation**

62.     Plaintiff repeats and re-alleges all preceding paragraphs as if set forth fully herein.

63.     Titan is liable for misappropriation of Plaintiff's trade secrets under the Texas Uniform Trade Secret Act, particularly Chapter 134A of the Texas Civil Practice & Remedies Code for misappropriations occurring after September 1, 2013.

64.     Titan acquired trade secret information relating to WTBI's jet cutters, including but not limited to formulas, methods, process and/or business information described hereinabove. WTBI's trade secrets are entitled to trade secret protection under Texas law. The trade secrets misappropriated by Titan are not generally known or readily available to the general public; the information gives WTBI a considerable advantage over its peers who do not have access to WTBI's confidential and trade secret information; and WTBI has taken reasonable steps to protect the secrecy of the information from disclosure to competitors by, but not limited to, limiting access to and disclosure of such information and marking the information as confidential and trade secret.

65.     Titan has misappropriated WTBI's trade secrets by using and publicly disclosing the trade secrets at least by publishing WTBI's trade secrets on Titan's website. WTBI did not approve or consent to Titan's use or disclosure of its trade secrets in this manner.

66.     As a result of Titan's misappropriation, WTBI has suffered irreparable injury, detriment, and harm for which a monetary award is an insufficient remedy. In addition to equitable damages, WTBI is entitled to recover actual and consequential damages, including all losses suffered by WTBI and unjust enrichment (disgorgement) acquired by Titan, exemplary damages, pre- and post-judgment interest, and costs. WTBI also seeks injunctive relief to restrain Titan from continued use of information gained through misappropriation.

## F.     *Unfair Competition - Generally*

67.     Plaintiff repeats and re-alleges all preceding paragraphs as if set forth fully herein.

68.     Titan's conduct, as alleged above, constitutes the tort of unfair competition, which, under Texas law, encompasses all statutory and non-statutory causes of action arising out of business conduct which is contrary to honest practice and/or which "contravene[s] any law or

violate[s] a definite legal right of [a] competitor." *Schoellkopf v. Pledger*, 778 S.W.2d 897, 904 (Tex.App. – Dallas 1989, writ denied).

69.     Titan engaged in unfair competition through conduct that violated WTBI's right to conduct business with its customers without having the relationship tortiously interfered with by or on behalf of third parties and violated WTBI's right to conduct business without having its formulas, products, or confidential proprietary business information misappropriated for the benefit of a competing business.

70.     With knowledge of WTBI's ownership and development of products and knowledge of WTBI's lack of any obligation to Titan with respect to those products, Titan acted to thwart WTBI's right to fairly compete with Titan in the jet cutter and severing tools market through efforts to mislead third parties about WTBI's rights in the technologies and products it was selling. Titan made these statements with actual or constructive knowledge that they were false, misleading and designed to prevent WTBI from entering into the market to compete against Titan.

71.     Titan also made statements to Weatherford with actual or constructive knowledge that they were false, misleading, likely to cause confusion, and designed to prevent Weatherford from purchasing WTBI, thereby preventing it from entering into the market to compete with Titan.

72.     Titan made these statements with the specific intent that WTBI and its customers would rely on them and not continue with a transaction or expand its customers beyond Schlumberger and Titan.

73.     Titan's unfair competition caused injury or damage to WTBI, in an amount to be proven at trial, and/or benefitted Titan by providing access to, and illegal use of, information

Titan had a duty to safeguard for WTBI. WTBI will be irreparably harmed if Titan is allowed to continue or further benefit from their efforts. Accordingly, Titan must be permanently restrained and/or enjoined.

### G.     *Quantum Meruit*

74.     Plaintiff repeats and re-alleges all preceding paragraphs as if set forth fully herein.

75.     Between 2003 and the present, WTBI provided valuable services and materials to Titan as stated above, including, but not limited to: marketing, customer development, product design, testing, commercial classifications and product development.

76.     Titan accepted the benefit of the services and materials and had reasonable notice that WTBI expected compensation for the services and materials, including multiple correspondences discussing the prospective possibility that Titan purchase the WTBI Developments or buy out WTBI.  Titan never compensated WTBI for any of its efforts.

77.     The above services and materials have been valued by an independent third party, at or near the time of suit, to have a fair market value at or around $23 Million, which comprises the minimum value in which Titan has been enriched and WTBI's resulting damages.

78.     WTBI is also entitled to recover its reasonable and necessary attorney fees for recovery under *quantum meruit*. Tex. Civ. Prac. & Rem. Code Ann. § 38.001, *et seq.*

### VII.    REQUEST FOR TEMPORARY AND PERMANENT INJUNCTION

79.     Plaintiff repeats and re-alleges all preceding paragraphs as if set forth fully herein.

80.     WTBI is entitled to a temporary injunction to preserve the status quo of the subject matter of this suit until a hearing can be held on its application for temporary injunction because it has set forth the grounds for injunctive relief, supported by verified facts. *See* Tex. Civ. Rem. & Prac. Code ("CRPC") § 16.011; *see also* CRPC § 134A.003 ("Actual or threatened

misappropriation [of a trade secret] may be enjoined.); *Texas St. Bd. of Medical Exam'rs v. McKinney*, 315 S.W.2d 387, 390 (Tex. App.-Waco 1958, no writ); *Cannan v. Green Oaks Apts., Ltd.*, 758 S.W.2d 753, 755 (Tex. 1988). WTBI seeks a temporary injunction that will be supported by WTBI's request for permanent relief, its probable right to relief and probable imminent harm, irreparable injury, and lack of remedy at law. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002).

81.     As explained above, unless Titan is temporarily enjoined, WTBI will be irreparably injured, suffer loss and damage by Titan's access, use, disclosure, and sale of its trade secrets and other information relating to WTBI,[4] as well Titan's palming off its products as WTBI products. Titan has improperly used and disclosed WTBI's trade secrets and product information on its website. WTBI further risks loss of this information to the general public and thus risks destruction of its trade secret entirely. Such harm is imminent because Titan continues to access, use, disclose, and publish WTBI's trade secrets and product information. This allows WTBI's competitors, such as Titan, to develop their overall competitive position at the expense of WTBI. WTBI faces imminent loss of the competitive advantage WTBI has gained by the extensive time and resources that it devoted toward the creation of its trade secrets relating to its jet cutters.

82.     In addition, the past and possible future use and disclosure of WTBI's Trade Secret Drawings and product information described herein, by Titan, for the purpose of the identification, design, manufacture, or sale of products to be used or sold in direct competition with WTBI and/or to solicit contracts in competition with WTBI has caused and/or will cause

---

[4] Although Titan has removed known drawings containing WTBI trade secrets, the fact that it has removed and then reposted WTBI information despite agreeing to remove the information requires WTBI to request this Court to enjoin Titan from posting on its website, or making publicly available, any WTBI trade secrets, including the drawings that were posted on its website previously.

irreparable harm, damage and injury to WTBI. The disclosure or use of such information by Titan will give it, and any company or person by whom they are employed and/or acting in concert with them, an unfair advantage over WTBI that will not be able to reversed or remedied with money damages. WTBI will be unable to recover the confidentiality and/or value or benefit of its trade secrets if Titan is allowed to continue to disclose the information to third parties and/or to use it in competition with WTBI.

83.    WTBI also suffers, and will continue to suffer, loss of goodwill because of Titan's unfair competition by palming off its products as WTBI products. Titan's palming off its products is likely to cause confusion among the public and dilute WTBI's goodwill within the industry if Titan is not temporarily enjoined. *Lifeguard Benefit Services, Inc. v. Direct Medical Network Solutions, Inc.*, 308 S.W.3d 102, 111 (Tex.App. – Fort Worth 2010) (Damages are an inadequate remedy if they are difficult to calculate, such as loss of goodwill.)

84.    WTBI has demonstrated a likelihood of success on the merits of its claim against Titan for misappropriation of trade secrets and unfair competition by palming off its products as WTBI products.

85.    Further, unless Titan is temporarily enjoined, WTBI will have no adequate remedy at law. Unless Titan is enjoined from retaining, accessing, using, disclosing, or selling WTBI's Trade Secret Drawings and product information inferring an affiliation between Titan and WTBI, WTBI will have no means by which to recover the information wrongfully misappropriated by Titan. In addition, WTBI's loss of goodwill due to Titan's palming off is causing irreparable harm, for which there is no adequate remedy at law.

86.    The precise value of the information misappropriated by Titan cannot be measured with precision or accuracy. As a result of the nature of the past and ongoing acts, there

is no readily available method by which to calculate money damages for the misappropriation or misuse of WTBI's trade secrets and product information, tortious interference with WTBI's prospective business relations, palming off, and/or from Titan's acts of unfair competition as alleged above. *See Sharma,* 231 S.W.3d 405 at 427 (misuse of trade secrets threatening destruction of business sufficiently established no adequate remedy at law).

87.    The balance of equities between WTBI and Titan favor the issuance of immediate injunctive relief. To find otherwise would, in effect, condone Titan's wrongful conduct. Injunctive relief is necessary for WTBI to preserve the status quo between the parties pending a final trial on the merits of the issues.

88.    WTBI has no adequate remedy at law due to the Titan's efforts to conceal their actions, the continuing nature of the damages, and the extreme difficulty inherent in quantifying such damages. If Titan is allowed to continue or further benefit from their efforts, WTBI will be irreparably harmed.

89.    There is an immediate need to protect and preserve the WTBI's Trade Secret Drawings that Titan has taken, copied, disclosed and/or threatened to disclose. Upon discovery of the Titan's actions, WTBI acted quickly and diligently to determine the scope of Titan's actions and to bring this matter to the Court. There is further an immediate need to remove the affiliation Titan is creating by refusing to remove WTBI product numbers and information from its website, and palming off its products as WTBI's. A temporary injunction is necessary to preserve the status quo, to prevent Titan from removing any evidence of the confidential and proprietary formulas, methods, processes and/or business information to a location outside of the jurisdiction of this Court and outside of the United States, to prevent Titan from destroying or modifying the electronic and physical evidence that is relevant in

this case, and to restore to WTBI its important and valuable confidential and proprietary formulas, methods, processes, and/or business information.

90.     For all of the reasons articulated and incorporated herein, WTBI respectfully requests that the Court enter a temporary restraining order requiring Titan to:

    a.   Immediately remove any and all WTBI trade secrets and products from public view, specifically those identified in WTBI's September 28, 2015 Letter (Attached hereto as Exhibit C);

    b.   Immediately return and cease the use and disclosure of all WTBI trade secrets and confidential and proprietary information, including but not limited to, WTBI's Trade Secret Drawings relating to jet cutters and/or severing tools in their possession that belong to or were taken or copied from WTBI;

    c.   Immediately return and cease the use and disclosure of all WTBI trade secrets and confidential and proprietary information, including but not limited to, WTBI's Trade Secret Drawings relating to jet cutters and/or severing tools that has been derived from any of WTBI's confidential and proprietary formulas, methods, processes and/or business information;

    d.   Immediately remove any association or affiliation between Titan and WTBI on Titan's website and all other marketing material relating to all WTBI products; and

    e.   Not use, disclose, or transfer to any third party any records, communications, documents, and/or electronic data which relates to WTBI's formulas, methods, processes and/or business information, identifies WTBI or was in any way derived from WTBI records, documents, and/or electronic data that is in their possession, for any purpose other than its return to WTBI, including but not limited to, WTBI's Trade Secret Drawings relating to jet cutters and/or severing tools that belongs to WTBI.

91.     As shown above, there is a substantial likelihood that WTBI will succeed on the merits of this case and there is no adequate remedy at law to compensate WTBI for the damage inflicted by Titan's actions. Accordingly, unless Titan is enjoined by this Court, WTBI will continue to be irreparably harmed. Therefore, WTBI requests that after providing Titan notice and an opportunity for a hearing, this Court enter a temporary injunction and, after trial on the merits, a permanent injunction as set forth in WTBI's request for temporary and permanent

injunction order be entered by this Court, enjoining Titan from engaging in the conduct described in paragraph 90(a)-(e) above.

92.     WTBI is not opposed to posting a bond if ordered to do so by the Court. WTBI asserts that no, or a low, bond is appropriate in this case, because Titan will suffer no monetary losses as a result of a grant of injunctive relief.

## VIII.   CONDITIONS PRECEDENT

93.     All conditions precedent to WTBI's right to recover as herein alleged, if any, have been performed, have occurred or have been waived.

## IX.   ATTORNEYS' FEES

94.     WTBI is entitled to an award of attorneys' fees pursuant to TEX. CIV. PRAC. & REM. CODE § 37.001 *et seq.* and/or § 38.001 *et seq.*

## X.   EXEMPLARY DAMAGES

95.     The tortious interference with WTBI's prospective business relations and unfair competition referenced herein was willful, fraudulent, outrageous, malicious, and morally culpable conduct.  Titan is therefore liable for exemplary damages as a result of its conduct.

96.     Additionally, Titan's violation of the Lanham Act and misappropriation of trade secrets was also willful and malicious, and WTBI is entitled to exemplary damages in an amount not exceeding twice any award for Titan's misappropriation.

## XI.   DEMAND FOR JURY

97.     Plaintiff demands a trial by jury.

## XII.   PRAYER

**WHEREFORE**, Plaintiff prays that Defendants be cited to appear and answer and that

W.T. Bell International, Inc., take judgment against Defendants for the following:

a) a temporary injunction, after notice and a hearing, enjoining Titan as set forth above;

b) a permanent injunction, after a full trial on the merits, enjoining Titan as set forth above;

c) a declaratory judgment that WTBI is not a successor in interest to SCP;

d) a declaratory judgment that Titan does not have any rights in WTBI's intellectual property;

e) a finding that Titan has tortiously interfered with WTBI's prospective business relationship with Weatherford, causing damage to WTBI;

f) a finding that Titan is liable for unfair competition by palming off its products as WTBI products;

g) a finding that Titan is liable for misappropriation of WTBI trade secrets;

h) a finding that Titan is liable for unfair competition by making knowingly false representations to prospective purchasers of WTBI, and misappropriating WTBI trade secrets;

i) restitution for Titan's unjust enrichment and compensation for the benefits received by Titan under quantum meruit;

j) all actual, consequential, enhanced, statutory and punitive damages resulting from Titan's conduct;

k) all pre-judgment and post-judgment interest as allowed by law; and

l) all other relief, at law and in equity, to which they may be entitled.

Respectfully submitted,

/s/*Terry B. Joseph* ____
Guy E. Matthews
Texas Bar No. 13207000
gmatthews@matthewsfirm.com
Terry Joseph
Texas Bar No. 11029500
tjoseph@matthewsfirm.com
Terry McCutcheon
Texas Bar No. 24039045
tmccutcheon@matthewsfirm.com
John D. Holman
Texas Bar No. 24082232
jholman@matthewsfirm.com
David M. Lodholz
Texas Bar No. 24070158
dlodholz@matthewsfirm.com
**MATTHEWS, LAWSON, MCCUTCHEON & JOSEPH PLLC**
2000 Bering Dr., Suite 700
Houston, Texas 77057
Telephone: (713) 355-4200
Facsimile:  (713) 355-9689

Bennie D. Rush
Texas Bar No. 17400425
bennie@bdrushlaw.com
**LAW OFFICES OF BENNIE D. RUSH, P.C.**
1300 11th Street, Suite 300
Huntsville, TX 77340

*ATTORNEYS FOR PLAINTIFF W.T. BELL INTERNATIONAL, INC.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the above and foregoing document was served via email upon the following counsel on October 23, 2015:

Charles S. Baker
Matthew G. Reeves
Scarlett Collings
Ryan Homeyer
LOCKE LORD LLP
600 Travis, Suite 2800
Houston, TX 77002

Mance Michael Park
mpark@parkdurham.com
Park & Durham
1 Financial Plaza, Suite 530
Huntsville, Texas 77340

/s/*Terry B. Joseph*___
Terry B. Joseph

**Cause No. 1527367**

| | | |
|---|---|---|
| W.T. Bell International, Inc., | § | **IN THE DISTRICT COURT OF** |
| | § | |
| Plaintiff/Counter-Defendant, | § | |
| | § | **WALKER COUNTY, TEXAS** |
| v. | § | |
| | § | |
| Hunting Titan, Ltd. and Hunting Titan, Inc., | § | **278th JUDICIAL DISTRICT** |
| | § | |
| Defendants/Counter-Plaintiffs/Third-Party Plaintiffs, | § | |
| | § | |
| | § | |
| v. | § | |
| | § | |
| William T. Bell, | § | |
| | § | |
| Third-Party Defendant. | § | |

## <u>VERIFICATION</u>

BEFORE ME, the undersigned notary public, on this day personally appeared James G. Rairigh, who after being duly sworn, stated under oath that he is a duly authorized agent for the Plaintiff in this action, that he has read the above First Amended Petition, that he has personal knowledge of the factual statements contained in the above First Amended Petition, or that they are true and correct based on his knowledge and investigation of the facts, that the same are true and correct, and that Exhibits A through J attached to the above First Amended Petition is a true and correct copy of the original.

Further affiant sayeth naught.

_____
James G. Rairigh

SWORN TO AND SUBSCRIBED BEFORE ME, on this the 22nd day of October 2015.

_____
Notary Public in and for
The State of T E X A S

TERRY LEE MCCUTCHEON
Notary Public, State of Texas
My Commission Expires
August 14, 2017

# EXHIBIT B.10

Cause No. 1527367

| | | |
|---|---|---|
| **W.T. BELL INTERNATIONAL, INC.,** | ( | **IN THE DISTRICT COURT** |
| | ( | |
| **Plaintiff/Counter-Defendant,** | ( | |
| | ( | |
| **v.** | ( | |
| | ( | |
| **HUNTING TITAN, LTD. and** | ( | |
| **HUNTING TITAN, INC.,** | ( | |
| | ( | |
| **Defendants/Counter-Plaintiffs/** | ( | |
| **Third-Party Plaintiffs,** | ( | **WALKER COUNTY, TEXAS** |
| | ( | |
| **v.** | ( | |
| | ( | |
| **WILLIAM T. BELL,** | ( | |
| **DYNAENERGETICS HOLDING,** | ( | |
| **GMBH, and DYNAENERGETICS** | ( | |
| **USA, INC.,** | ( | |
| | ( | |
| **Third-Party Defendants** | ( | **278th JUDICIAL DISTRICT** |

### THIRD-PARTY DEFENDANT DYNAENERGETICS US, INC.'S
### ORIGINAL ANSWER TO THIRD-PARTY CLAIM

DynaEnergetics US, Inc., Third-Party Defendant, ("DynaEnergetics, US"),

incorrectly joined as DynaEnergetics, USA, Inc., files this Original Answer to the Third-

Party Claim filed by Third-Party Plaintiffs Hunting Titan, Ltd. and Hunting Titan, Inc.,

and would respectfully show the Court the following.

### ORIGINAL ANSWER

1.       DynaEnergetics US generally denies each and every allegation of the

Third-Party Claim filed by Third-Party Plaintiffs Hunting Titan, Ltd. and Hunting Titan,

Inc., (collectively, "Third –Party Plaintiffs") and demands strict proof in accordance with

Texas Law.

**THIRD-PARTY DEFENDANT DYNAENERGETICS USA, INC.'S**
**ORIGINAL ANSWER TO THIRD-PARTY CLAIM - Page 1**

Filed: 11/13/2015 2:55:45 PM
Robyn M. Flowers
District Clerk
Walker County, Texas

Melissa Fuentes

## SPECIAL EXCEPTIONS

2.      DynaEnergetics, US has not been given fair notice of the factual or legal basis that it has any liability for tortious interference to Third-Party Plaintiffs as alleged in the Third-Party Claim.

3.      DynaEnergetics, US specially excepts to Paragraphs 63 through 67 of the Third-Party Claim as Third-Party Plaintiffs have not alleged facts which, if proven at trial, would establish that DynaEnergetics, US had specific knowledge of any existing and enforceable contract between Third-Party Plaintiffs and any party or predecessor in interest.

4.      DynaEnergetics, US specially excepts to Paragraphs 63 through 67 of the Third-Party Claim as Third-Party Plaintiffs have not alleged facts which, if proven at trial, would entitled them to exemplary damages.

## SPECIFIC DENIAL

5.      DynaEnergetics, US specifically denies that all conditions precedent have been satisfied or have occurred as alleged in Paragraph 34 of the Third-Party Claim.

## AFFIRMATIVE DEFENSES

6.      Third-Party Plaintiffs are barred from recovery because of their own wrongful conduct and unclean hands.

7.      Third-Party Plaintiffs' claims are barred by the applicable statutes of limitations.

8.      Third-Party Plaintiffs' claims are barred by laches.

9.      Third-Party Plaintiffs' claims are barred by estoppel.

10.     Third-Party Plaintiffs' claims are barred by business justification.

11.     Third-Party Plaintiffs have failed to mitigate their damages, if any.

12.     Third-Party Plaintiffs have not alleged any facts which if proven at trial would entitle them to exemplary damages under Texas law.

13.     Third-Party Plaintiffs have no evidence of, and cannot establish at trial that, DynaEnergetics, US acted with actual malice.

14.     Third-Party Plaintiffs' claims against DynaEnergetics, US are barred, in whole or in part, by their failure to state a claim upon which relief can be granted.

15.     In addition to the foregoing, DynaEnergetics, US reserves the right to assert any additional defenses available under Texas law.

## **PRAYER**

**WHEREFORE**, DynaEnergetics US, Inc., Third-Party Defendant, prays that Hunting Titan, Ltd. and Hunting Titan, Inc., Third-Party Plaintiffs, take nothing on their Third-Party Claim, and that DynaEnergetics US Inc. recover its costs of court, attorney's fees, and any other relief to which it may be entitled.

Respectfully submitted,


*/s/ Dan McElroy*
J. Daniel McElroy
Texas Bar No. 13586800
Sumner, Schick and Pace, LLP
3811 Turtle Creek Blvd., Suite 600
Dallas, Texas 75219
(214) 739-6733 - telephone
(214) 378-8290 - facsimile

**ATTORNEY FOR DYNAENERGETICS
US, INC., THIRD-PARTY DEFENDANT**

## CERTIFICATE OF SERVICE

This is to certify that a copy of Third-Party Defendant DynaEnergetics, USA, Inc.'s Original Answer to Third-Party Claim was served on the following counsel by email through on-line filing or directly by the undersigned on November 13, 2015.

Charles S. Baker
Matthew G. Reeves
Scarlett Collings
Ryan Homeyer
Locke Lord LLP
600 Travis St., Suite 2800
Houston, Texas 77002

Mance Michael Park
Park & Durham
1 Financial Plaza, Ste. 530
Huntsville, Texas 77340

Guy E. Matthews
Terry Joseph
Terry McCutcheon
John D. Holman
David M. Lodholz
Mathews, Lawson, McCutcheon & Joseph PLLC
2000 Bering Drive, Ste. 700
Houston, Texas  77057

Bennie D. Rush
Law Offices of Bennie D. Rush, P.C.
1300 11th Street, Ste. 300
Huntsville, Texas  77340

_/s/Dan McElroy_____
J. Daniel McElroy

# EXHIBIT B.11

Cause No. 1527367

| | | |
|---|---|---|
| **W.T. BELL INTERNATIONAL, INC.,** | ( | **IN THE DISTRICT COURT** |
| | ( | |
| **Plaintiff/Counter-Defendant,** | ( | |
| | ( | |
| **v.** | ( | |
| | ( | |
| **HUNTING TITAN, LTD. and** | ( | |
| **HUNTING TITAN, INC.,** | ( | |
| | ( | |
| **Defendants/Counter-Plaintiffs/** | ( | |
| **Third-Party Plaintiffs,** | ( | **WALKER COUNTY, TEXAS** |
| | ( | |
| **v.** | ( | |
| | ( | |
| **WILLIAM T. BELL,** | ( | |
| **DYNAENERGETICS HOLDING,** | ( | |
| **GMBH, and DYNAENERGETICS** | ( | |
| **USA, INC.,** | ( | |
| | ( | |
| **Third-Party Defendants** | ( | **278ᵗʰ JUDICIAL DISTRICT** |

### THIRD-PARTY DEFENDANT DYNAENERGETICS HOLDING, GMBH'S SPECIAL APPEARANCE TO PRESENT MOTION OBJECTING TO PERSONAL JURISDICTION AND SUBJECT THERETO ORIGINAL ANSWER TO THIRD-PARTY CLAIM

DynaEnergetics Holding, GmbH, Third-Party Defendant, ("DHGmbH"), pursuant to Rule 120a of the Texas Rules of Civil Procedure and prior to any other appearance in this action, files this Special Appearance to Present Motion Objecting to Personal Jurisdiction and Subject Thereto Original Answer to Third-Party Claim filed by Third-Party Plaintiffs Hunting Titan, Ltd. and Hunting Titan, Inc., and would respectfully show the Court the following.

## SPECIAL APPEARANCE

1.      This Special Appearance is made by DHGmbH to the entire proceeding and as to all claims asserted against it by Third-Party Plaintiffs Hunting Titan, Ltd. and Hunting Titan, Inc. in the Third-Party Claim.

2.      This Special Appearance is filed by DHGmbH prior to any motion to transfer venue or any other plea, pleading or motion.

3.      The courts of Texas do not have personal jurisdiction over DHGmbH or its property because DHGmbH is not amenable to process issued in Texas.

4.      DHGmbH is a foreign corporation and is not required to maintain a registered agent for service of process in Texas.  Further, DHGmbH does not maintain a place of business in Texas and does not have agents or employees in Texas.

5.      DHGmbH has neither engaged in business nor committed a tort in Texas. DHGmbH did not contract by mail or otherwise with a Texas resident where performance of the contract is to be in whole or in part by either party in Texas; commit a tort in Texas; or, recruit a Texas resident, directly or through an intermediary located in Texas, for employment in or out of Texas.

6.      DHGmbH has not purposefully availed itself of the benefits of Texas law nor does DHGmbH have minimum contacts with Texas which would subject it to general jurisdiction in Texas.  Accordingly, the assertion of personal jurisdiction over DHGmbH would offend traditional notions of fair play and substantial justice which Texas law and the Constitution of the United States seek to protect.

7.      This Special Appearance will be supported by the pleadings, any stipulations made by the parties, affidavits and attachments filed by DHGmbH, admissible discovery, and oral testimony, as provided by Rule 120a of the Texas Rules of Civil Procedure.

DHGmbH, Third-Party Defendant, requests that its Special Appearance be set for hearing, and after considering this Special Appearance and supporting affidavits, discovery, stipulations, and oral testimony that the Court grant the Special Appearance as to all claims asserted against DHGmbH and that it be dismissed from this action for lack of personal jurisdiction.

## ORIGINAL ANSWER

Subject to the foregoing Special Appearance to Present Motion Objecting to Personal Jurisdiction, DHGmbH files this Original Answer to the Third-Party Claim filed by Third-Party Plaintiffs Hunting Titan, Ltd. and Hunting Titan, Inc., and would respectfully show the Court the following.

## GENERAL DENIAL

8.      DHGmbH generally denies each and every allegation of the Third-Party Claim filed by Third-Party Plaintiffs Hunting Titan, Ltd. and Hunting Titan, Inc., (collectively, "Third –Party Plaintiffs") and demands strict proof in accordance with Texas Law.

## SPECIAL EXCEPTIONS

9.      DHGmbH specially excepts to the Third-Party Claim as it does not give fair notice of the factual or legal basis alleging that DHGmbH has any liability for tortious interference to Third-Party Plaintiffs as alleged in the Third-Party Claim.

10.     DHGmbH specially excepts to Paragraphs 63 through 67 of the Third-Party Claim as Third-Party Plaintiffs have not alleged facts which, if proven at trial, would establish that DHGmbH had specific knowledge of any existing and enforceable contract between Third-Party Plaintiffs and any party or predecessor in interest.

11.     DHGmbH specially excepts to Paragraphs 63 through 67 of the Third-Party Claim as Third-Party Plaintiffs have not alleged facts which, if proven at trial, would entitled them to exemplary damages.

## SPECIFIC DENIAL

12.     DHGmbH specifically denies that all conditions precedent have been satisfied or have occurred as alleged in Paragraph 34 of the Third-Party Claim.

## AFFIRMATIVE DEFENSES

13.     Third-Party Plaintiffs are barred from recovery because of their own wrongful conduct and unclean hands.

14.     Third-Party Plaintiffs' claims are barred by the applicable statutes of limitations.

15.     Third-Party Plaintiffs' claims are barred by laches.

16.     Third-Party Plaintiffs' claims are barred by estoppel.

17.     Third-Party Plaintiffs' claims are barred by business justification.

18.     Third-Party Plaintiffs have failed to mitigate their damages, if any.

19.     Third-Party Plaintiffs have not alleged any facts which if proven at trial would entitle them to exemplary damages under Texas law.

20.     Third-Party Plaintiffs have no evidence of, and cannot establish at trial that, DHGmbH acted with actual malice.

21.     Third-Party Plaintiffs' claims against DHGmbH are barred, in whole or in part, by their failure to state a claim upon which relief can be granted.

22.     In addition to the foregoing, DHGmbH reserves the right to assert any additional defenses available under Texas law.

## PRAYER

**WHEREFORE,** DynaEnergetics Holding, GmbH, Third-Party Defendant, prays that Hunting Titan, Ltd. and Hunting Titan, Inc., Third-Party Plaintiffs, take nothing on their Third-Party Claim, and that DynaEnergetics Holding GmbH, Inc. recover its costs of court, attorney's fees, and any other relief to which it may be entitled.

Respectfully submitted,

*/s/ Dan McElroy*
J. Daniel McElroy
Texas Bar No. 13586800
Sumner, Schick and Pace, LLP
3811 Turtle Creek Blvd., Suite 600
Dallas, Texas 75219
(214) 739-6733 - telephone
(214) 378-8290 - facsimile

**ATTORNEY FOR DYNAENERGETICS HOLDING GMBH, THIRD-PARTY DEFENDANT**

## VERIFICATION

STATE OF TEXAS

COUNTY OF DALLAS

BEFORE ME, the undersigned Notary Public, on this day personally appeared J. Daniel McElroy, attorney for DynaEnergetics Holding, GmbH, known by me to be the person whose name is subscribed below, and after being duly sworn, stated under oath that he is the attorney for DynaEnergetics Holding GmbH in the above-captioned cause, that he has read the Special Appearance to Present Motion Objecting to Personal Jurisdiction, that in such capacity he has personal knowledge of the fact statements stated therein, and that every factual statement is within his personal knowledge and is true and correct unless otherwise stated.


_____
J. Daniel McElroy


SUBSCRIBED AND SWORN TO before me on December 11, 2015.


_____
Notary Public in and for the
State of Texas


AMANDA J. DAVENPORT
Notary Public, State of Texas
My Commission Expires
December 11, 2018


**THIRD-PARTY DEFENDANT DYNAENERGETICS HOLDING, GMBH'S SPECIAL
APPEARANCE AND SUBJECT THERETO ORIGINAL ANSWER TO THIRD-PARTY CLAIM -
Page 6**

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing pleading was served on the following counsel by email through on-line filing or directly by the undersigned on December 11, 2015.

Charles S. Baker
Matthew G. Reeves
Scarlett Collings
Ryan Homeyer
Locke Lord LLP
600 Travis St., Suite 2800
Houston, Texas 77002

Mance Michael Park
Park & Durham
1 Financial Plaza, Ste. 530
Huntsville, Texas 77340

Guy E. Matthews
Terry Joseph
Terry McCutcheon
John D. Holman
David M. Lodholz
Mathews, Lawson, McCutcheon & Joseph PLLC
2000 Bering Drive, Ste. 700
Houston, Texas  77057

Bennie D. Rush
Law Offices of Bennie D. Rush, P.C.
1300 11th Street, Ste. 300
Huntsville, Texas  77340

_/s/Dan McElroy_____
J. Daniel McElroy

**THIRD-PARTY DEFENDANT DYNAENERGETICS HOLDING, GMBH'S SPECIAL APPEARANCE AND SUBJECT THERETO ORIGINAL ANSWER TO THIRD-PARTY CLAIM - Page 7**

# EXHIBIT B.12

Cause No. 1527367

| | | |
|---|---|---|
| W.T. BELL INTERNATIONAL, INC. | § § § § § § § | IN THE DISTRICT COURT OF |
| Plaintiff/Counter-Defendant, | § § § | |
| v. | § § § | |
| HUNTING TITAN, LTD. AND HUNTING TITAN, INC. | § § § | WALKER COUNTY, TEXAS |
| Defendants/Counter-Plaintiffs/Third-Party Plaintiffs, | § § § § § | |
| v. | § § § | |
| WILLIAM T. BELL, DYNAENERGETICS HOLDING, GMBH, AND DYNAENERGETICS USA, INC. | § § § § § | |
| Third-Party Defendants. | § § | 278TH JUDICIAL DISTRICT |

**ORDER GRANTING DEFENDANTS/COUNTER-PLAINTIFFS HUNTING TITAN, LTD.'S AND HUNTING TITAN, INC.'S MOTION FOR CONTINUANCE OF MOTION FOR PARTIAL SUMMARY JUDGMENT HEARING**

On the undersigned date, the Court considered the pleadings, motions, affidavits, arguments of counsel, and all other evidence before the Court and finds that the DEFENDANTS/COUNTER-PLAINTIFFS' MOTION FOR CONTINUANCE OF PARTIAL

FILED
TIME _____
_____ DAY OF _____ 20___
ROBYN FLOWERS
District Clerk Walker County
By _____
Deputy

SUMMARY JUDGMENT HEARING filed by Defendants/Counter-Plaintiffs Hunting Titan, Ltd. and Hunting Titan, Inc. has merit and should be **GRANTED** in all respects.

It is, therefore,

**ORDERED** that Defendants/Counter-Plaintiffs Hunting Titan, Ltd.'s and Hunting Titan, Inc.'s Motion for Continuance of Partial Summary Judgment Hearing is **GRANTED**.

It is further **ORDERED** that the hearing of Plaintiff/Counter-Defendant W.T. Bell International, Inc.'s Partial Motion for Summary Judgment is hereby continued from its current setting of December 28, 2015 and hearing on the same cannot be noticed until after January 21, 2016.

It is, therefore, **ORDERED** that the hearing of Plaintiff/Counter-Defendant W.T. Bell International, Inc.'s Partial Motion for Summary Judgment is hereby removed from the December 28, 2015 docket of this Court.

**SIGNED** this _17_ day of December, 2015.

JUDGE PRESIDING

# EXHIBIT B.13

**Cause No. 1527367**

| | | |
|---|---|---|
| W.T. Bell International, Inc., | § | **IN THE DISTRICT COURT OF** |
| | § | |
| Plaintiff/Counter-Defendant, | § | |
| | § | **WALKER COUNTY, TEXAS** |
| v. | § | |
| | § | |
| Hunting Titan, Ltd. and Hunting Titan, Inc., | § | **278th JUDICIAL DISTRICT** |
| | § | |
| Defendants/Counter-Plaintiffs/Third-Party Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | |
| William T. Bell, | § | |
| | § | |
| Third-Party Defendant. | § | |

---

**COUNTER-DEFENDANT W.T. BELL INTERNATIONAL, INC.'S
FIRST AMENDED ANSWER, DEFENSES, AND SPECIAL EXCEPTIONS**

---

TO THE HONORABLE COURT:

Counter-Defendant W.T. Bell International, Inc. ("WTBI"), by and through its counsel, hereby files this First Amended Answer, Defenses and Special Exceptions to the Second Amended Counterclaim and Third Party Claim filed by Third-Party Plaintiffs Hunting Titan, Ltd. and Hunting Titan, Inc. (collectively, "Titan"):

**I.     GENERAL DENIAL**

1.     WTBI generally denies each and every allegation set forth in Counter-Plaintiffs Hunting Titan, Ltd. and Hunting Titan, Inc.'s counterclaim, and demands strict proof thereof. WTBI reserves the right to amend this Answer and Defenses before trial of this cause on the merits.

## II.    SPECIFIC DENIAL

2.      WTBI specifically denies Titan's claim of breach of contract because Titan has not properly pled that WTBI is a successor in interest or a proper party to any contract claim.

3.      WTBI specifically denies that all conditions precedent have been satisfied or have occurred, as Titan alleges in paragraph 32 of its Counterclaims.

## III.    AFFIRMATIVE DEFENSES

4.      WTBI asserts the following affirmative defenses:

a.  Titan's claim is barred, in whole or in part, because WTBI is not a successor in interest to Specialty Completions Products, Ltd.

b.  Titan's claim is barred, in whole or in part, by statute of limitations.

c.  Titan's claim is barred, in whole or in part, by partial performance.

d.  Titan's claim is barred, in whole or in part, by res judicata.

e.  Titan's claim is barred, in whole or in part, by laches.

f.  Titan's claim is barred, in whole or in part, by estoppel and/or quasi-estoppel.

g.  Titan's claim is barred, in whole or in part, by justification and/or privilege.

h.  Titan's claim is barred, in whole or in part, by waiver.

i.  Titan's claim is barred, in whole or in part, by their failure to state a claim upon which relief can be granted.

j.  Titan's claim is barred, in whole or in part, by a superseding and/or intervening cause.

k.  Titan's claim is barred, in whole or in part, by accord and satisfaction.

l.  Titan's claim is barred, in whole or in part, by license.

m.  Titan's claim is barred, in whole or in part, by release.

n.   Titan's claim is barred, in whole or in part, by mistake.

o.   Titan's claim is barred, in whole or in part, by ratification.

p.   Titan's claim is barred, in whole or in part, by failure to mitigate.

q.   Titan's claim is barred, in whole or in part, because Titan committed the first material breach.

r.   Titan's claim is barred, in whole or in part, because WTBI has not expressly assumed liability.

s.   Titan's claim is barred, in whole or in part, because the covenant against competition is invalid and unenforceable as written.

t.   Titan's claim is barred, in whole or in part, because the covenant against competition is vague and ambiguous.

u.   Titan's claim is barred, in whole or in part, because one or more agreements lacked consideration, or are unenforceable due to failure of consideration.

## IV.     SPECIAL EXCEPTIONS

5.     Pursuant to Rules 90 and 91 of the Texas Rules of Civil Procedure, and subject to WTBI's Rule 91a Motion to Dismiss, WTBI asserts the following special exceptions to Third-Party Plaintiffs' Claim against WTBI. "Special exceptions may be used to challenge the sufficiency of a pleading…If a party refuses to amend, or the amended pleading fails to state a cause of action, then summary judgment may be granted." *Friesenhahn v. Ryan*, 960 S.W.2d 656, 658 (Tex. 1998). Accordingly, WTBI requests this Court to order Titan to re-plead to cure the following pleading defects:

A. Breach of Contract

6.      WTBI specially excepts to Titan's claim for Breach of Contract in paragraphs 39-44 of Titan's Counterclaim because it fails to state a cause of action under Texas law and fails to give fair notice identifying the contract WTBI allegedly breached or the facts and law supporting a cause for breach of contract against WTBI.

7.      In paragraph 40, Titan alleges, "By executing both the APA and the WTBI MLA, WTBI and Titan entered into enforceable contracts." However, WTBI did not exist in any form when the APA and the MLAs were executed – a fact that Titan acknowledges in their pleadings. Therefore, a "WTBI MLA," as pled, cannot factually or legally exist, nor could WTBI have executed the APA. Furthermore, Titan does not plead the existence of a "WTBI MLA" in its facts or any agreement entered into between WTBI and Titan. Titan pleads that two MLAs exist: the Bell MLA and the SCP MLA. And then in pleading their cause for breach of contract against WTBI, Titan conveniently folds one or both of these MLAs executed by a party other than WTBI into a "WTBI MLA." WTBI is not on fair notice as to the factual or legal basis of the existence of a "WTBI MLA," or how WTBI, without existing, could have executed the APA or any MLA with Titan. Titan has not pled the existence of, or attached to any pleading, any agreement that binds WTBI in a manner as to create liability on it.

8.      In addition, WTBI specifically excepts to Titan's allegations that WTBI is a successor in interest to SCP because Titan has failed to plead a successor in interest theory recognized in the State of Texas or any facts proving WTBI is liable as a successor in interest. Titan merely alleges that "[o]ver the course of…eleven (11) years, WTBI acted as and became SCP's successor in interest." In their response to WTBI's Rule 194 Request for Disclosures, Titan asserted that WTBI is the *"de facto"* successor in interest because it purchased specific assets

from SCP's over a decade ago. Texas does not recognize *de facto* successor as a legal theory. Under Texas law, WTBI may not be held responsible or liable for a liability or obligation of SCP unless WTBI expressly assumes the obligation. Texas Bus. Org. Code 10.254(b). "In Texas, the successor incurs no liability of the predecessor unless the successor **expressly assumes that liability**." *Lockheed Martin Corp. v. Gordon*, 16 S.W.3d 127, 135 (Tex. App.—Houston [1st Dist.] 2000, pet. denied) (emphasis added).

9.      The "de facto merger" doctrine imposing liability of a corporation on the purchaser of its assets, and the "mere continuation" doctrine imposing liability on successor corporations <u>cannot</u> be applied under Texas law, regardless of the manner in which the assets are acquired. *Mudgett v. Paxson Mach. Co.*, 709 S.W.2d 755, 758 (Tex. App.—Corpus Christi 1986, <u>writ refused NRE</u>) (Feb. 11, 1987). The legislature eliminated the doctrine of implied successor liability in the codification of a statute as article 5.10 of the Business Corporation Act – the current version is Tex. Bus. Org. Code Ann. § 10.254. *Motor Components, LLC v. Devon Energy Corp.*, 338 S.W.3d 198, 205 (Tex. App.—Houston [14th Dist.] 2011, no pet.).

10.     WTBI is not on fair notice as to a factual or legal basis supporting Titan's allegation that WTBI is SCP's successor in interest. Absent proof of a written instrument showing that WTBI has *expressly* agreed to be bound by SCP's liabilities and obligations, WTBI cannot be held liable or responsible for a liability or obligation of SCP under Texas law and Titan has failed to state a cause of action for breach of the APA, Bell MLA, or SCP MLA against WTBI.

11.     Titan's allegations in paragraphs 39-44 do not put WTBI on notice as to the factual or legal basis for the breach of contract claim and Titan's petition on this cause of action must be re-pled or dismissed.

## V.   ATTORNEY'S FEES

12.     WTBI is entitled to recover any and all reasonable and necessary attorney's fees incurred as a result of Titan's conduct.

## VI.   PRAYER

13.     WHEREFORE, PREMISES CONSIDERED, Counter-Defendant W.T. Bell International, Inc. denies all allegations against it and pray that Counter-Plaintiffs take nothing by their alleged cause of action against Counter-Defendant, and for all further relief to which it may be justly entitled.

Respectfully submitted,

/s/     *David Lodholz*
Guy E. Matthews
Texas Bar No. 13207000
gmatthews@matthewsfirm.com
Terry Joseph
Texas Bar No. 11029500
tjoseph@matthewsfirm.com
Terry McCutcheon
Texas Bar No. 24039045
tmccutcheon@matthewsfirm.com
John D. Holman
Texas Bar No. 24082232
jholman@matthewsfirm.com
David M. Lodholz
Texas Bar No. 24070158
dlodholz@matthewsfirm.com
**MATTHEWS, LAWSON, MCCUTCHEON & JOSEPH PLLC**
2000 Bering Dr., Suite 700
Houston, Texas 77057
Telephone: (713) 355-4200
Facsimile:  (713) 355-9689

Bennie D. Rush
Texas Bar No. 17400425
bennie@bdrushlaw.com
**LAW OFFICES OF BENNIE D. RUSH, P.C.**

1300 11th Street, Suite 300
Huntsville, TX 77340

*ATTORNEYS FOR PLAINTIFF W.T. BELL*
*INTERNATIONAL, INC.*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document was

served via email upon the following counsel on February 15, 2016:

Charles S. Baker
Matthew G. Reeves
Scarlett Collings
Ryan Homeyer
LOCKE LORD LLP
600 Travis, Suite 2800
Houston, TX 77002

Mance Michael Park
mpark@parkdurham.com
Park & Durham
1 Financial Plaza, Suite 530
Huntsville, Texas 77340

*/s/ David Lodholz*
David Lodholz

# EXHIBIT B.14

Cause No. 1527367

| | | |
|---|---|---|
| W.T. Bell International, Inc., | § | **IN THE DISTRICT COURT OF** |
| | § | |
| Plaintiff/Counter-Defendant, | § | |
| | § | **WALKER COUNTY, TEXAS** |
| v. | § | |
| | § | |
| Hunting Titan, Ltd. and Hunting Titan, Inc., | § | **278th JUDICIAL DISTRICT** |
| | § | |
| Defendants/Counter-Plaintiffs/Third-Party Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | |
| William T. Bell, | § | |
| | § | |
| Third-Party Defendant. | § | |

---

### THIRD-PARTY DEFENDANT WILLIAM T. BELL'S
### FIRST AMENDED ANSWER, DEFENSES, AND SPECIAL EXCEPTIONS

---

TO THE HONORABLE COURT:

Third-Party Defendant William T. Bell ("Bell"), by and through his counsel, hereby files this First Amended Answer, Defenses, and Special Exceptions to the Second Amended Counterclaim and Third Party Claim filed by Third-Party Plaintiffs Hunting Titan, Ltd. and Hunting Titan, Inc. (collectively, "Titan"), and Third Party Claim Against Titan:

#### I.    GENERAL DENIAL

1.      Bell generally denies each and every allegation set forth in Titan's Third Party Claim and demand strict proof thereof. Bell reserves the right to amend this Answer and Defenses before trial of this cause on the merits.

## II.    SPECIFIC DENIALS

2.     Bell specifically denies that all conditions precedent have been satisfied or have

occurred, as Titan alleges in paragraph 32 of its Counterclaims.

## III.    AFFIRMATIVE DEFENSES

3.     Bell asserts the following affirmative defenses:

a.  Titan's claim is barred, in whole or in part, by a statute of limitations.

b.  Titan's claim is barred, in whole or in part, by laches.

c.  Titan's claim is barred, in whole or in part, by res judicata.

d.  Titan's claim is barred, in whole or in part, by estoppel and/or quasi-estoppel.

e.  Titan's claim is barred, in whole or in part, by justification and/or privilege.

f.  Titan's claim is barred, in whole or in part, by waiver and/or acceptance.

g.  Titan's claim is barred, in whole or in part, by partial performance.

h.  Titan's claim is barred, in whole or in part, by their failure to state a claim
     upon which relief can be granted.

i.  Titan's claim is barred, in whole or in part, by a superseding and/or
     intervening cause.

j.  Titan's claim is barred, in whole or in part, by accord and satisfaction.

k.  Titan's claim is barred, in whole or in part, by license.

l.  Titan's claim is barred, in whole or in part, by release.

m. Titan's claim is barred, in whole or in part, by mistake.

n.  Titan's claim is barred, in whole or in part, by ratification.

o.  Titan's claim is barred, in whole or in part, by failure to mitigate.

p.  Titan's claim is barred, in whole or in part, because Titan committed the first
     material breach.

q.  Titan's claim is barred, in whole or in part, because the covenant against competition is invalid and unenforceable as written.

r.  Titan's claim is barred, in whole or in part, because the covenant against competition is vague and ambiguous.

s.  Titan's claim is barred, in whole or in part, because one or more agreements lacked consideration, or are unenforceable due to failure of consideration.

## IV.   SPECIAL EXCEPTIONS

4.      Pursuant to Rules 90 and 91 of the Texas Rules of Civil Procedure, Bell asserts the following special exceptions to Titan's Claim against Bell. "Special exceptions may be used to challenge the sufficiency of a pleading … If a party refuses to amend, or the amended pleading fails to state a cause of action, then summary judgment may be granted." *Friesenhahn v. Ryan*, 960 S.W.2d 656, 658 (Tex. 1998). Accordingly, Bell requests this Court to order Titan to re-plead to cure the following pleading defects:

### A.  Breach of Contract

5.      Bell specially excepts to Titan's claim for Breach of Contract in paragraphs 33-38 of Titan's Third-Party Claim because it fails to state the factual and legal basis for the cause and fails to give fair notice of the claim against Bell.

6.      In paragraph 37, Titan alleges Bell "breached the licensing provisions contained in the Bell MLA, which prohibits Bell from reselling, leasing, or otherwise transferring cutters and severing tools to any third parties except as to Schlumberger Limited." However, on its face, the Bell MLA only limits the re-selling, leasing, or otherwise transferring of specifically defined "Products." Within the APA and Bell MLA, "Products" is defined to be cutters and severing tools purchased by Titan from SCP, specifically cutters and severing tools covered by the Titan patents purchased from SCP in the APA. Neither WTBI nor Bell has re-sold, licensed, or

otherwise transferred any "Products" as asserted by Titan. Indeed, this issue was resolved when the United States District Court for the Southern District of Texas entered a Final Judgment based on Titan's confirmation that WTBI's products do not infringe Titan's patents and therefore did not fall under the definition of "Products" as defined in the APA and MLA.[1] Therefore, Titan's claim as presently pleaded is barred by *res judicata*. Titan has not alleged or given Bell notice of any facts that would show otherwise, specifically the "Products" sold by Bell in violation of any agreement.

7.     Further, Titan's claim is personal to Bell, as an individual.  Titan has not alleged that Bell has individually sold, licensed, manufactured, or otherwise transferred any goods or services, including any of the Products under the MLA and APA.  Titan has not alleged any facts that would make Bell, individually, liable for breach of the Bell MLA under any other theory. Bell cannot be liable for breach of the Bell MLA because WTBI is not a party to the Bell MLA, and is not an assignee of the Bell MLA. Titan admits in its pleadings that the Bell MLA is personal to Bell and is non-assignable. Titan's breach of contract claim therefore fails on its face, and Bell has no notice of the factual or legal basis for Titan's claim against him for breach of the MLA.

8.     Because Titan's Petition does not put Bell on notice of the factual and legal basis of its claim for Breach of the Bell MLA, Titan must re-pled or have its claim dismissed.

## V.     ATTORNEY'S FEES

9.     Bell is entitled to recover any and all reasonable and necessary attorney's fees incurred as a result of Titan's conduct.

---

[1] *W.T. Bell International, Inc., et al v. Hunting Titan, et al.*, Civil Action No. 4:14-cv-2653, U.S. District Court for So. Dist. Texas – Houston Division, at Dkt. No. 37.

## VI.    PRAYER

10.    WHEREFORE, PREMISES CONSIDERED, Third-Party Defendant William T. Bell deny all allegations against him and pray that Third-Plaintiffs take nothing by their alleged cause of action against Third-Party Defendant, and for all further relief to which he may be justly entitled.

Respectfully submitted,

/s/David Lodholz
Guy E. Matthews
Texas Bar No. 13207000
gmatthews@matthewsfirm.com
Terry Joseph
Texas Bar No. 11029500
tjoseph@matthewsfirm.com
Terry McCutcheon
Texas Bar No. 24039045
tmccutcheon@matthewsfirm.com
John D. Holman
Texas Bar No. 24082232
jholman@matthewsfirm.com
David M. Lodholz
Texas Bar No. 24070158
dlodholz@matthewsfirm.com
**MATTHEWS, LAWSON, MCCUTCHEON & JOSEPH PLLC**
2000 Bering Dr., Suite 700
Houston, Texas 77057
Telephone: (713) 355-4200
Facsimile:  (713) 355-9689

Bennie D. Rush
Texas Bar No. 17400425
bennie@bdrushlaw.com
**LAW OFFICES OF BENNIE D. RUSH, P.C.**
1300 11th Street, Suite 300
Huntsville, TX 77340

*ATTORNEYS FOR PLAINTIFF W.T. BELL INTERNATIONAL, INC.*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing document was served via email upon the following counsel on February 16, 2016:

Charles S. Baker
Matthew G. Reeves
Scarlett Collings
Ryan Homeyer
LOCKE LORD LLP
600 Travis, Suite 2800
Houston, TX 77002

Mance Michael Park
mpark@parkdurham.com
Park & Durham
1 Financial Plaza, Suite 530
Huntsville, Texas 77340

*/s/David Lodholz*
David Lodholz

# EXHIBIT B.15

Cause No. 1527367

| | | |
|---|---|---|
| W.T. BELL INTERNATIONAL, INC. | § | IN THE DISTRICT COURT OF |
| | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| Plaintiff/Counter-Defendant, | § | |
| | § | |
| | § | |
| v. | § | |
| | § | |
| | § | |
| HUNTING TITAN, LTD. AND HUNTING | § | WALKER COUNTY, TEXAS |
| TITAN, INC. | § | |
| | § | |
| Defendants/Counter- | § | |
| Plaintiffs/Third-Party | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | |
| | § | |
| WILLIAM T. BELL, DYNAENERGETICS | § | |
| HOLDING, GMBH, AND | § | |
| DYNAENERGETICS USA, INC. | § | |
| | § | |
| Third-Party Defendants. | § | 278TH JUDICIAL DISTRICT |
| | § | |

FILED
TIME 9:15
22 DAY OF FEB 20 10
ROBYN FLOWERS
District Clerk, Walker County
By _____ Deputy

---

## ORDER DENYING W.T. BELL INTERNATIONAL, INC. AND WILLIAM T. BELL'S SPECIAL EXCEPTIONS TO DEFENDANTS/COUNTER-PLAINTIFFS' SECOND AMENDED COUNTERCLAIMS

---

On the undersigned date, the Court considered Plaintiff/Counter-Defendant W.T. Bell International, Inc. and Third-Party Defendant William T. Bell's Special Exceptions to the Counterclaims alleged by Defendants/Counter-Plaintiffs' Hunting Titan, Ltd. and Hunting Titan, Inc. in their Second Amended Answer, Special Exceptions, Counterclaim, and Third-Party Claim

(the "Special Exceptions"). After considering the Special Exceptions, the pleadings, the evidence, the response, and the argument of counsel, if any, this Court is of the opinion that the Special Exceptions are without merit.  It is, therefore,

**ORDERED** that Plaintiff/Counter-Defendant W.T. Bell International, Inc. and Third-Party Defendant William T. Bell's Special Exceptions are **DENIED**.

SIGNED this _22_ day of _Feb_____, 2016.

_____
JUDGE PRESIDING

# EXHIBIT B.16

Cause No. 1527367

| | | |
|---|---|---|
| W.T. Bell International, Inc., | § | **IN THE DISTRICT COURT OF** |
| | § | |
| Plaintiff, | § | |
| | § | **WALKER COUNTY, TEXAS** |
| v. | § | |
| | § | |
| Hunting Titan, Ltd. and Hunting Titan, Inc., | § | **278th JUDICIAL DISTRICT** |
| Richard W. Bradley | § | |
| | § | |
| Defendants/Counter-Plaintiffs/Third- | § | |
| Party Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | |
| William T. Bell, | § | |
| | § | |
| Third-Party Defendant. | | |

## ORDER GRANTING PLAINTIFFS W.T. BELL INTERNATIONAL, INC.'S AND WILLIAM T. BELL'S MOTION FOR CONTINUANCE OF DEFENDANTS HUNTING TITAN, LTD., AND HUNTING TITAN, INC.'S TEMPORARY INJUNCTION HEARING

Before the Court is Plaintiffs W.T. Bell International, Inc. and William T. Bell's Motion for Continuance of Defendants Hunting Titan, Ltd.'s and Hunting Titan, Inc.'s April 26, 2016 Hearing on their Request for Temporary Injunction. After considering the pleadings, motions, affidavits, arguments of counsel, and all other evidence of record, this Court finds that the PLAINTIFFS' MOTION FOR CONTINUANCE OF TEMPORARY INJUNCTION HEARING filed by Plaintiffs W.T. Bell International, Inc. and William T. Bell has merit and should be **GRANTED** in all respects.

It is therefore,

**ORDERED** that Plaintiffs W.T. Bell International, Inc. and William T. Bell's Motion for Continuance of Defendants' Temporary Injunction Hearing is **GRANTED**.

FILED
TIME 4 18
20 DAY OF APR 20 16
ROBYN FLOWERS
District Clerk, Walker County
By

It is further **ORDERED** that the hearing of Defendants Hunting Titan, Ltd.'s and Hunting Titan, Inc.'s Request for Temporary Injunction is hereby continued from its current setting of April 26, 2016.

It is, therefore, **ORDERED** that the hearing of Defendants Hunting Titan, Ltd.'s and Hunting Titan, Inc.'s Request for Temporary Injunction is hereby removed from the April 26, 2016 docket of this Court.

**SIGNED** this _20_ day of April, 2016.

_____

JUDGE PRESIDING

# EXHIBIT B.17

Cause No. 1527367

| | | |
|---|---|---|
| W.T. BELL INTERNATIONAL, INC. | § | IN THE DISTRICT COURT OF |
| | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| Plaintiff/Counter-Defendant, | § | |
| | § | |
| | § | |
| v. | § | |
| | § | |
| HUNTING TITAN, LTD. AND HUNTING | § | WALKER COUNTY, TEXAS |
| TITAN, INC. AND RICHARD BRADLEY | § | |
| | § | |
| Defendants/Counter- | § | |
| Plaintiffs/Third-Party | § | |
| Plaintiffs, | § | |
| | § | |
| | § | |
| v. | § | |
| | § | |
| WILLIAM T. BELL, DYNAENERGETICS | § | |
| HOLDING, GMBH, AND | § | |
| DYNAENERGETICS USA, INC. | § | |
| | § | |
| Third-Party Defendants. | § | 278TH JUDICIAL DISTRICT |

---

## DEFENDANT RICHARD BRADLEY'S ORIGINAL ANSWER

---

TO THE HONORABLE COURT:

Defendant Rick Bradley ("Defendant"), by and through his counsel, files this Original Answer, Affirmative Defenses, and Special Exceptions, and respectfully show the Court as follows:

Filed: 4/25/2016 9:28:42 AM
Robyn M. Flowers
District Clerk
Walker County, Texas

Melissa Fuentes

## I.   **GENERAL DENIAL**

1.      Defendant generally denies each and every allegation set forth in the Plaintiff

W.T. Bell International, Inc.'s ("WTBI" or "Plaintiff") Third Amended Petition (the "Petition"),

and demands strict proof thereof.  Defendant reserves the right to amend this pleading before

trial of this cause on the merits.

## II.   **AFFIRMATIVE DEFENSES**

2.      Defendant asserts the following affirmative defenses:

    a.      Plaintiff's claims are barred, in whole or in part, by the statute of limitations.

    b.      Plaintiff's claims are barred, in whole or in part, by laches.

    c.      Plaintiff's claims are barred, in whole or in part, by estoppel and/or quasi-estoppel.

    d.      Plaintiff's claims are barred, in whole or in part, by justification.

    e.      Plaintiff's claims are barred, in whole or in part, by waiver.

    f.      Plaintiff's claims are barred, in whole or in part, by its failure to state a claim upon which relief can be granted.

    g.      Plaintiff's claims are barred, in whole or in part, because its alleged damages were caused and/or contributed to by third parties not under Defendant's control.

    h.      Plaintiff's claims are barred, in whole or in part, by a superseding and/or intervening cause.

    i.      Plaintiff's claims are barred, in whole or in part, by the proportionate responsibility provisions of Chapter 33 of the Texas Civil Practices and Remedies Code.

    j.      Plaintiff's claims are barred, in whole or in part, by privilege.

## III.   **SPECIAL EXCEPTIONS**

3.      Pursuant to Rules 90 and 91 of the Texas Rules of Civil Procedure, Defendant

asserts the following special exceptions to the Petition.  *See Centennial Ins. Co. v. Comm. Union*

*Ins. Co.*, 803 S.W.2d 479, 483 (Tex. App.—Houston [14th Dist.] 1991, no writ) (holding that "only after special exceptions have been sustained and a party has been given an opportunity to amend its pleadings may a case be dismissed for failure to state a cause of action"). Accordingly, Defendant asks the Court to order Plaintiff to re-plead to cure its pleading defects:

### A.    *Slander of Title*

4.    Defendant specially excepts to Plaintiff's claim for slander of title in paragraphs 52-55 of the Petition because it fails to plead facts giving rise to this cause of action under Texas law.

5.    In paragraph 54, WTBI asserts that Defendant published disparaging statements to Weatherford regarding WTBI's title to its assets, including products and intellectual property. WTBI, however, does not describe with sufficient factual detail the products that Defendant disparaged. The facts alleged by WTBI only detail statements made regarding WTBI's intellectual property.  Review of Texas case law yields no situation in which a cause of action for slander of title to intellectual property has been brought, however.  Accordingly, WTBI should be ordered to replead with sufficient detail the property that Defendant allegedly published disparaging statements about.   WTBI also states in paragraph 54 that Defendant made the disparaging remarks with legal malice, but has not pled any facts indicating that any statements made by Defendant were "deliberate and without reasonable cause." *Preston Gate, LP v. Bukaty*, 248 S.W.3d 892, 896 (Tex.App—Dallas 2008, no pet.) (defining legal malice for purposes of slander of title).  In paragraph 55, WTBI claims that Defendant's alleged statements caused Weatherford to withdraw its offer to purchase WTBI, resulting in special damages. WTBI pleads no facts, however, that indicate Weatherford's withdrawal from the transaction at

issue was caused by any statement made by Defendant.  Accordingly, WTBI should be ordered to replead alleging sufficient facts that give rise to each element of slander of title.

**B.      *Tortious Interference with Prospective Business Relations***

6.      Defendant specially excepts to WTBI's claim for tortious interference with prospective business relations with Weatherford as set out in paragraphs 56-60 of the Petition because WTBI has done nothing more than plead its tortious interference claim in general terms, and has not adequately pled all of the elements of this cause of action.  In paragraph 57, WTBI has not pled any facts in support of the allegation that Defendant "intentionally interfered" with the relationship between Weatherford and WTBI.  Further, WTBI has failed to provide details regarding to whom Defendant made the statements at issue, and where Defendant made these statements.   Additionally, in paragraph 57, WTBI asserts that Defendant's conduct was independently tortious based upon slander of title to WTBI's assets and unfair competition.  Because WTBI does not have viable causes of action, however, for slander of title and unfair competition, it is unable to sustain a cause of action for tortious interference because it cannot establish independently tortious conduct.  *See Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 713 (Tex. 2001) (to establish liability for interference with a prospective business relation, plaintiff must prove that defendant's conduct was independently tortious or unlawful).  Further, WTBI fails to plead any facts that support the allegation in paragraph 58 that Weatherford actually relied on any of the alleged statements made by Defendant when deciding not to move forward with the transaction at issue.  As such, WTBI should be ordered to re-plead the allegations in paragraphs 56-60.

### B.    *Unfair Competition – Generally*

7.    Defendant specially excepts to WTBI's general claim for unfair competition as detailed in paragraphs 70-76  because WTBI fails to plead a viable cause of action.  Under Texas law, unfair competition is an area of law that encompasses various causes of action, such as misappropriation, "palming off," and trade-secret law.  *See U.S. Sporting Products, Inc. v. Johnny Stewart Game Calls, Inc.*, 865 S.W.2d 214, 217 (Tex. App.—Waco 1993), *writ denied* (Mar. 30, 1994) (noting the difference between unfair competition as a general area of law and the specific causes of action that it subsumes).  Under federal law, the tort of unfair competition refers to the use of "another's good will with the public to gain a competitive advantage in the market place."  *Clark v. Dillard's, Inc.*, 2015 WL 1346099, at *8 (Tex. App.—Dallas Mar. 25, 2015, no. pet. h.) (citing *Nat'l Bank of Commerce v. Shaklee Corp.*, 503 F.Supp. 533, 541 (W.D. Tex. 1980)).  "Unfair competition" is also a term that is at times used interchangeably with the recognized tort of common law misappropriation.  *See BP Auto., L.P. v. RML Waxahachie Dodge, L.L.C.*, 448 S.W.3d 562, 572 (Tex. App.—Houston [1st Dist.] 2014), *reh'g overruled* (Dec. 2, 2014) (listing the elements of "unfair competition or common law misappropriation").  Accordingly, WTBI should be ordered to re-plead a viable cause of action under Texas law.

8.    WTBI fails to plead a cognizable cause of action for unfair competition.  The allegations in paragraphs 70-76 do not support a claim for unfair competition under Texas law because WTBI neither alleges that Defendant used WTBI's good will with the public to gain a competitive advantage, nor that Defendant misappropriated WTBI's product in competition with WTBI, thereby gaining a special advantage.  WTBI's defective pleadings have left Defendant guessing as to the precise cause of action that WTBI is attempting to assert.  Accordingly, WTBI has failed to state a viable claim for "unfair competition – generally," and should be ordered to re-plead this cause of action.

WHEREFORE, PREMISES CONSIDERED, Defendant prays that WTBI takes nothing by way of this suit against them, that the Court grant judgment in Defendant's favor, that Defendant recovers his costs and attorney's fees expended in this cause, and that Defendant recovers all other and further relief to which he may be entitled.  Defendant also respectfully requests that the Court sustain its Special Exceptions and order WTBI to amend the Petition.  If the pleading defect is not one that WTBI can cure by amendment, Defendant requests that the Court dismiss any incurable causes of action with prejudice.

Respectfully Submitted,

By:   */s/ Charles S. Baker*

Charles S. Baker
Attorney in Charge
cbaker@lockelord.com.
Texas State Bar No. 01566200
Scarlett Collings
scarlett.collings@lockelord.com
Texas State Bar No. 24001906
Ryan Homeyer
rhomeyer@lockelord.com
Texas State Bar No. 24092534
LOCKE LORD LLP
600 Travis, Suite 2800
Houston, TX 77002
Telephone: (713) 226-1200
Facsimile:  (713) 223-3717

Mance Michael Park
mpark@parkdurham.com
Texas State Bar No. 15469500
Park & Durham
1 Financial Plaza, Suite 530
Huntsville, Texas 77340
Telephone: (936) 291-6660

***ATTORNEYS FOR HUNTING  TITAN, LTD.
AND HUNTING TITAN, INC.***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the above and foregoing document was served on counsel of record on April 25, 2016 via the electronic filing manager, or, if the email address of counsel is not on file with the electronic filing manager, as indicated below:
***Via Email***

Guy E. Matthews
Terry Joseph
Terry McCutcheon
John D. Holman
David M. Lodholz
Matthews, Lawson, McCutcheon & Joseph PLLC
2000 Bering Dr., Suite 700
Houston, Texas 77057

Bennie D. Rush
bennie@bdrushlaw.com
Law Offices of Bennie D. Rush, P.C.
1300 11th Street, Suite 300
Huntsville, Texas 77340

Dan McElroy
dan@mcelroy-law.com
Sumner, Schick & Pace, LLP
3811 Turtle Creek Blvd., Suite 600
Dallas, Texas 75219

  /s/ Ryan Homeyer
Ryan Homeyer

7